CHARLES D. SWIFT (D.C. ID No. 987353)
    cswift@clcma.org
CHRISTINA A. JUMP (D.C. ID No. TX151)
    cjump@clcma.org
Constitutional Law Center for Muslims in America (CLCMA)
833 E. Arapaho Rd., Ste. 102
Richardson, TX 75081
Tel: (972) 914-2507; Fax: (972) 692-7454

*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT

## COURT FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **AHMED ALI MUTHANA, individually, and as next friend of Hoda Muthana and Minor John Doe** [initials A.M.]<br>133 Pine Rock Lane, Hoover, AL 35226<br><br>    *Plaintiff/Petitioner,*<br><br>    vs.<br><br>**Michael Pompeo, in his official capacity as Secretary of the Department of State,** whose official address is 2201 C St., NW Washington, DC 20520;<br>**Donald J. Trump, in his official capacity as President of the United States;** and<br>**William Pelham Barr in his official capacity as Attorney General.**<br><br>    *Defendants/Respondents.* | Cause No. _____<br><br><br>CIVIL ACTION |

## EXPEDITED COMPLAINT FOR DECLARATORY JUDGMENT, INJUNCTIVE RELIEF AND PETITION FOR WRIT OF MANDAMUS

Plaintiff Ahmed Ali Muthana, individually and as Next Friend of Hoda Muthana and Minor John Doe, by and through undersigned counsel, files this Expedited Complaint for Declaratory Judgment and Injunctive Relief against Michael Pompeo, in his official capacity as Secretary of the Department of State, Donald J. Trump, in his official capacity as President of the United States, and William Pelham Barr, in his official capacity as Attorney General. This Complaint is supported by the following factual background and claims for relief:

## I.    RELIEF SOUGHT

1.   Ahmed Ali Muthana, as next friend of Hoda Muthana and Minor John Doe, seeks declaratory relief recognizing the citizenship of his daughter and grandson until and such time as her citizenship is validly revoked in accordance with the Constitution and United States statutes. Additionally, Plaintiff seeks injunctive and mandamus relief obligating the United States to accept Ms. Muthana and her son back into the United States and to use all available means to do so. Finally, he seeks a declaratory judgment that Plaintiff Ahmed Ali Muthana is entitled to send his daughter money to ensure the survival of his daughter and grandson, and enable them safe passage home, without subjecting himself to criminal liability under 18 U.S.C. § 2339B.

## II. PARTIES

2.   Plaintiff Ahmed Ali Muthana is a naturalized United States citizen living in the United States and domiciled in Alabama.  He is the father of Hoda Muthana, and the grandfather of Minor John Doe Muthana.

3.   Hoda Muthana is a United States citizen by birthright, and is currently detained in Syria by Kurdish forces at Camp al-Hawl.  Her interests in this matter are represented by her father, Ahmed Ali Muthana, as Next Friend.

4.   Minor John Doe is a United States citizen by acquisition as the natural child of his mother, Hoda Muthana, who had resided in the United States for more than five years prior to his birth. Minor John Doe is currently detained with his mother in Syria by Kurdish forces at Camp al-Hawl. His interests in this matter are represented by his grandfather, Ahmed Ali Muthana, as Next Friend.

5.   Defendant Michael Pompeo is sued in his official capacity as Secretary of the Department of State.

6.   Defendant Donald J. Trump is sued in his official capacity as President of the United States.

7.   Defendant William Pelham Barr is sued in his official capacity as Attorney General of the United States.

### III.   NEXT FRIEND STATUS

8.   Next Friend status on behalf of Hoda Muthana and Minor John Doe is appropriate because Ms. Muthana and Minor John Doe are interred in a Kurdish camp in Syria, with limited and inconsistent access to the internet or other communications, and have had difficulty communicating with counsel.

9.   Ahmed Ali Muthana, as father to Hoda Muthana and grandfather to Minor John Doe, has interests in having his daughter and grandson declared to be United States citizens and returned to the United States, which are aligned with theirs.  Further, both counsel and Mr. Muthana have received communications from Ms. Muthana indicating her desire to return, despite being advised that a successful result of declaratory relief of citizenship will likely result in her being subject to criminal prosecution for alleged conduct for which she otherwise could not be charged, absent the relief sought in this Complaint.  Therefore, Mr. Muthana serves as an appropriate representative for their interests.

## IV.    JURISDICTION

10. The District Court for the District of Columbia has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, which states that "the district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws or treaties of the United States."

11. Jurisdiction is further proper under the general equity jurisdiction granted by 28 U.S.C. § 1331(a), where, as here, a case is brought by an aggrieved party against a federal agency. *See Fort Sumter Tours, Inc.* v. *Andrus,* 564 F.2d 1119 (4th Cir. 1977).

12. Jurisdiction is also proper in this Court under the terms of 18 U.S.C. § 2339, which specifically provide that there will be "jurisdiction over an offense under subsection (a) if…the offense occurs in whole or in part within the United States."[1]

13. This Court further has jurisdiction under the authority of 28 U.S.C. § 1361.

14. Expedited consideration is appropriate in this matter pursuant to Federal Rule of Civil Procedure 57, due to the harm set forth below which, without the expeditious ruling of this Court, will result and damage the interests of Plaintiff Ahmed Ali Muthana, and the interests of Hoda Muthana and Minor John Doe (brought via Ahmed Ali Muthana, as Next Friend).

## V.  EXPEDITED RELIEF

15. This Expedited Complaint for Declaratory Judgment, Injunctive Relief and Petition for Writ of Mandamus requests that the United States facilitate the return of its citizens, Hoda Muthana and her son Minor John Doe, in conformity with their legal rights to return both under United States law and applicable international law. Expedited relief is appropriate here because of the precarious position of Plaintiff Muthana's daughter and grandson in Camp al-Hawl in Syria, under the authority of Kurdish forces.  The President of the United States has announced his intent to

---

[1] 18 U.S.C. § 2339B(d)(1).

withdraw U.S. forces from the Syrian conflict, and upon information and belief this withdrawal has commenced.  Upon withdrawal, the ability of the United States to obtain military cooperation from the Kurdish forces, with which they have been previously aligned, will be greatly diminished if even possible.  Accordingly, as set forth below, the failure of the United States to facilitate the return of Ms. Muthana and her son as it is obligated to do under the Constitution and the Fourth Geneva Convention will cause immediate and irreparable harm by jeopardizing their ability in the future to return to the United States.[2]

## VI.    VENUE

16. Venue is proper in this Court under §1391(e)(1), which states in relevant part that "a civil action in which a defendant is an officer or employee of the United States or an agency thereof acting in his official capacity…may…be brought in any judicial district in which (A) a defendant in the action resides."

## VII.        STATEMENT OF FACTS

17. Ahmed Ali Muthana is a naturalized United States citizen.  He is also the father of Hoda Muthana, and the grandfather of Minor John Doe.  Accordingly, he brings this action on his own behalf for declaratory judgment, and as proper Next Friend of Hoda Muthana and Minor John Doe for injunctive and mandamus relief.

---

[2] "The Planned U.S. Troop Withdrawal from Syria: Here's the Latest," The New York Times, January 16, 2019 (https://www.nytimes.com/2019/01/16/world/middleeast/syria-us-troops-timeline.html) (last accessed January 20, 2019).

18. Prior to his daughter's birth, Ahmed Ali Muthana worked as a diplomat for the United Nations.  Declaration of Ahmed Ali Muthana, attached hereto as Exhibit A.  On June 2, 1994, the Yemeni Ambassador Al-Aashtal required Mr. Muthana to surrender his diplomatic identity card.

19. Anticipating the loss of diplomatic status, Mr. Muthana's wife (Ms. Muthana's mother) applied for permanent residency status in the United States in early 1994, based on her own father's United States citizenship. She was granted admission to the United States on July 7, 1994, pending permanent residency.  Her permanent residency, along with Mr. Muthana's, was subsequently granted.

20. Hoda Muthana was born in the state of New Jersey on October 28, 1994. *See* Ex. B.

21. Utilizing his daughter's birth certificate, Mr. Muthana applied for a passport for his minor daughter Hoda Muthana in 2004.  After receiving this application, officials from the United States State Department initially questioned whether Ms. Muthana was eligible for a U.S. passport, based on their records showing her father's diplomatic status remained in effect until February 6, 1995. In response, Ahmed Ali Muthana provided the government with Exhibit C, a letter from the United States Mission to the United Nations, signed by Russell F. Graham, Minister Counselor for Host Country Affairs, and addressed to Bureau of Citizenship and Immigration Services, which confirms that the diplomatic status he had due to his employment at the U.N. was terminated prior to the time of Ms. Muthana's birth. The United States accepted this documentation and issued Hoda Muthana the requested passport on January 24, 2005.  Exhibit D.  The United States also later renewed Ms. Muthana's passport on February 21, 2014.  *Id.*

22. In November 2014, Ms. Muthana, now a student at University of Alabama at Birmingham, told her parents that she was going to Atlanta, Georgia as part of a field trip; instead she withdrew

from school and used her tuition reimbursement to purchase a plane ticket to Turkey.  From Turkey, she traveled to Syria.

23. After arriving in Syria, Ms. Muthana made her way to ISIS-controlled territory, and less than a month after her arrival married Suhan Rahaman, now deceased.  Suhan Rahaman was a citizen of Australia. Suhan Rahaman was killed 87 days after his marriage to Ms. Muthana.[3]

24. Shortly thereafter, Ms. Muthana married her second husband, a Tunisian fighter. She became pregnant during that marriage, and is now traveling with her young son (herein referenced as "Minor John Doe").  Minor John Doe was facially eligible for acquired United States citizenship at birth via his United States citizen mother.  8 U.S.C. § 1401(g). Her second husband was also killed.

25. On January 15, 2016, the United States issued a letter addressed to Ms. Muthana at her parents' residence, purporting to revoke her passport under 22 C.F.R. 51.7 and 51.66.  Exhibit D. In the revocation letter, the government again acknowledged that her father's diplomatic position ended on September 1, 1994, but now asserted for the first time that because the U.S. Permanent Mission to the United Nations, Host Country Affairs Section, had not been officially notified of his termination until February 6, 1995, she was not "within the jurisdiction of the United States" at the time of her birth, and therefore not a United States citizen pursuant to the Fourteenth Amendment to the Constitution.

26. The Section cited by the government in its January 15, 2016 letter is the U.S. Permanent Mission to the United Nations, Host Country Affairs Section.  This is the same Section which signed the letter attached hereto at Exhibit C and provided by Mr. Muthana in 2005 to the United

---

[3] https://www.theguardian.com/world/2019/feb/17/us-woman-hoda-muthana-deeply-regrets-joining-isis-and-wants-return-home?CMP=fb_gu (last viewed February 19, 2019).

States Department of State: the United States Mission to the United Nations, Host Country Affairs. Despite claiming in 2016 that the Host Country Affairs Section did not have knowledge of Mr. Muthana's termination from his diplomatic position until February 1995, the Minister Counselor for Host Country Affairs, Russell F. Graham, signed the letter at Exhibit C on October 18, 2004, recognizing that the records of the United States Mission to the United Nations reflect that Mr. Muthana's diplomatic position ended on September 1, 1994. *See* Ex. C.

27. The United States State Department's position in its January 15, 2016 letter regarding the termination of diplomatic immunity contradicts its prior interpretations of the Vienna Convention on Diplomatic Relations that diplomatic immunity terminates at the time the diplomat's position is terminated. *United States v. Guinand*, 688 F. Supp. 774, 775 (D.D.C. 1988) (quoting a declaration of the legal adviser of the Department of State Judge Abraham Sofaer, that "[t]he United States Government has consistently interpreted Article 39 of the [Vienna Convention on Diplomatic Relations] to permit the exercise of U.S. jurisdiction over persons whose status as members of the diplomatic mission has been terminated[,] for acts they committed during the period in which they enjoyed privileges and immunities, except for acts performed in the exercise of the functions as a member of the mission.").

28. Plaintiff Muthana responded at the time that his daughter was not in the country, and reiterated that at the time of his initial application for a passport for Ms. Muthana, Plaintiff Ahmed Ali Muthana had provided proof that he was no longer a diplomat when Ms. Muthana was born.

29. Plaintiff Ahmed Ali Muthana also clarified in the same correspondence that he had been terminated from his position as a diplomat on June 1, 1994, as a result of the Civil War in Yemen at the time.  On June 2, 1994, he surrendered all of his UN identification to the Yemen Mission to the United Nations at the request of then-Ambassador Al-Aashtal, with the understanding that the

same information was communicated to the United Nations and the United States Permanent Mission to the United Nations.  *See* Exhibit A, Declaration of Ahmed Ali Muthana.

30. Ms. Muthana fled ISIS-controlled territory beginning on or about December 16, 2018, which upon information and belief was after several months of looking for opportunities, and more than one failed escape attempt. Initially, she fled to the village of Susa.

31. She subsequently surrendered to Kurdish forces, who transferred her to Camp Al-Hawl in northeast Syria, about 25 miles east of al-Hasakah. Upon information and belief, Ms. Muthana and her son are both currently located at Camp Al-Hawl.

32. At the time of her surrender, Ms. Muthana identified herself and her son as United States citizens. Despite this identification, she was not interred with other persons believed to be United States citizens.

33. On January 15, 2019, the undersigned counsel wrote to the United States Attorney for the Northern District of Alabama (the district from which Ms. Muthana left the country), asserting her status as a United States citizen and communicating her desire to return as well as her willingness to surrender to United States authorities for any contemplated charges.

34. On January 24, 2019, the United States Attorney responded that he had referred the matter to the State Department.  Undersigned counsel received no further communication from the United States regarding Ms. Muthana.

35. On February 20, 2019, the United States State Department declared on its website that "Ms. Hoda Muthana is not a U.S. citizen and will not be admitted into the United States. She does not

have any legal basis, no valid U.S. passport, no right to a passport, nor any visa to travel to the United States."[4]

36. Later on February 20, 2019, President Donald J. Trump tweeted that "I have instructed Secretary of State Mike Pompeo, and he fully agrees, not to allow Hoda Muthana back into the Country!"[5]

37. Prior to the above proclamations, the United States has not initiated any action in the courts of the United States to revoke Ms. Muthana's citizenship.[6]

38. Ahmed Ali Muthana, as next friend of Hoda Muthana and Minor John Doe, seeks to exercise their rights as United States citizens to return to their home country. Ms. Muthana has repeatedly and openly renounced ISIS in all recent statements, and is no longer in any ISIS-controlled area. Minor John Doe is also no longer in ISIS-controlled territory.

---

[4] Press Release dated February 20, 2019, located on Department of State website (https://www.state.gov/secretary/remarks/2019/02/289558.htm) (last visited February 20, 2019).
[5] https://twitter.com/realdonaldtrump/status/1098327855145062411?s=21 (last visited February 20, 2019).

[6] Birthright citizenship may be revoked under 8 U.S.C. § 1481 for "formal declaration of allegiance to a foreign state or a political subdivision thereof." However, none of the circumstances set out in § 1401 is facially applicable to the facts of this case, as ISIS is not and has not been recognized as a state by the United States, or any country. And, Ms. Muthana's actions do not meet the definition of treason as required by the statute. Apart from § 1481, counsel is not aware of any statutory process to revoke recognized birthright citizenship.

## VIII.       CLAIMS FOR RELIEF

**a. Count 1: Mr. Muthana, on behalf of his daughter, seeks injunctive relief preventing the United States' unlawful attempt to rescind her citizenship in violation of the United States Constitution, as she became a United States citizen at the time of her birth in the United States due to her father no longer serving as a diplomat.**

39. The Fourteenth Amendment to the U.S. Constitution declares that "all persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and the State wherein they reside."[7]

40. The question of whether a diplomat and/or family members are immune from the jurisdiction of the United States is a question of fact for the Court to decide, and is not subject to unilateral determination by the government. *See United States ex rel. Casanova v. Fitzpatrick*, 214 F. Supp. 425, 433 (S.D.N.Y. 1963) (holding that "[w]hether, upon the facts presented by both the Government and the individual involved or his government, immunity exists by reason of the agreement, is not a political question, but a justiciable controversy involving the interpretation of the agreement and its application to the particular facts. In this instance the decision is for the Court and it is not concluded by the unilateral statement of the Government, a party to that agreement").

41. Immunity for a diplomat and family members lasts only as long as the diplomatic position itself. "[C]onsular and diplomatic immunity expire after the officer's appointment has been terminated and she has departed the United States, or after a reasonable time for departure has passed." *United States v. Khobragade*, 15 F. Supp. 3d 383, 386 (S.D.N.Y. 2014); *see also United States v. Guinand*, 688 F. Supp. 774, 775 (D.D.C. 1988) (quoting a declaration of the legal adviser of the Department of State Judge Abraham Sofaer, that "[t]he United States Government has consistently interpreted Article 39 of the [Vienna Convention on Diplomatic Relations] to permit

---

[7] U.S. Const. Amend. XIV.

the exercise of U.S. jurisdiction over persons **whose status as members of the diplomatic mission has been terminated**") (emphasis added). A "reasonable time" is usually interpreted as thirty days. *Guinand*, 668 F. Supp. at 774.

42. As a matter of law, Mr. Muthana's termination from his diplomatic position no later than September 1, 1994 and his subsequent decision to remain in the United States within a reasonable period of time terminated his diplomatic immunity and therefore that as to his family, subjecting both he and his family members to the jurisdiction of the United States at the time of Ms. Muthana's birth on October 28, 1994.

43. Where an individual was born in the United States, and is therefore an American citizen, "neither the Congress, nor the Executive, nor the judiciary, nor all three in concert" is able to strip away that right. *Mitsugi Nishikawa v. Dulles*, 356 U.S. 129, 138, 78 S. Ct. 612, 618, 2 L. Ed. 2d 659 (1958).

44. Accordingly, the decision by the Secretary of the Department of State and President Trump to unilaterally declare Hoda Muthana no longer a citizen of the United States is unconstitutional, and therefore impermissible.

45. If this Court were to decline injunctive relief, Mr. Muthana's daughter would suffer irreparable harm from the loss of her U.S. citizenship, and the rights and constitutional guarantees that attend that citizenship.

46. Injunctive relief would not substantially injure other interested parties. Mr. Muthana's daughter's status as a citizen is guaranteed under the U.S. Constitution. Accordingly, the government's obligation to respect and preserve her constitutional rights cannot, and should not, be construed as causing injury to other parties or in any way outweighing these inalienable rights.

12

47. Public interest is furthered by this Court's granting of injunctive relief. U.S. citizenship is guaranteed to all individuals born within the United States, as well as those born to United States citizen parents; allowing the U.S. government to unilaterally strip citizens of that right via administrative action, without legally required due process, endangers the rights of all United States birthright citizens and citizens by acquisition.

48. Accordingly, Mr. Muthana, on behalf of his daughter, respectfully requests that this Court grant relief enjoining the U.S. from disputing or rescinding her established citizenship.

> **b. Count 2: Mr. Muthana, on behalf of his daughter, seeks injunctive relief preventing the United States' unlawful attempt to rescind her citizenship in violation of the United States Constitution, as she became a United States citizen at the time of her birth in the United States due to her mother's pending legal residency and prior legal entry into the United States.**

49. The Fourteenth Amendment to the U.S. Constitution declares that "all persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and the State wherein they reside."[8]

50. The U.S. Supreme Court has held that where an individual was born in the United States, and is therefore an American citizen, "neither the Congress, nor the Executive, nor the judiciary, nor all three in concert" is able to strip away that right.[9]

51. Prior to Ms. Muthana's birth, her mother applied for permanent residency status, and on or about July 7, 1994 was granted entry.  This was over three months prior to Ms. Muthana's birth on U.S. soil.

52. Ms. Muthana's mother's request for permanent residency and legal admission to the United States was separate and apart from her prior admission to the United States as a family member of

---

[8]  U.S. Const. Amend. XIV.
[9] *Mitsugi Nishikawa v. Dulles*, 356 U.S. 129, 138, 78 S. Ct. 612, 618, 2 L. Ed. 2d 659 (1958).

a diplomat under diplomatic visa. Her application for legal admission status subjected her to the jurisdiction of the laws of the United States. *See* 8 C.F.R. 264.2; *see also* Form I-508. Ms. Muthana was therefore the natural child born to a person subject to the laws of the United States as of the date of her birth, rather than the family member of a diplomat.

53. If this Court were to decline injunctive relief, Mr. Muthana's daughter would suffer irreparable harm from the loss of her U.S. citizenship, and the rights and constitutional guarantees that attend that citizenship.

54. Injunctive relief would not substantially injure other interested parties. Mr. Muthana's daughter's status as a citizen is guaranteed under the U.S. Constitution. Accordingly, the government's obligation to respect and preserve her constitutional rights cannot, and should not, be construed as causing injury to other parties or in any way outweighing these inalienable rights.

55. Public interest is furthered by this Court's granting of injunctive relief. U.S. citizenship is guaranteed to all individuals born within the United States; allowing the U.S. government to unilaterally strip citizens of that right via unilateral action, without legally required due process, endangers the rights of all United States birthright citizens.

56. Accordingly, Mr. Muthana, on behalf of his daughter, respectfully requests that this Court grant relief enjoining the U.S. from disputing or rescinding her established citizenship.

**c.  Count 3: Mr. Muthana, on behalf of his daughter, seeks a declaratory judgment that his daughter has been wrongfully denied due process by the government in its determination that she is not a United States citizen, in violation of the Fifth Amendment.[10]**

57. For the reasons stated in the preceding paragraphs and incorporated herein by reference, Plaintiff seeks declaratory judgment that the United States has failed to provide her with the due process for which she is entitled under the Fifth Amendment to the United States Constitution.

58. The Due Process Clause of the Fifth Amendment prohibits the Federal government from depriving individuals of liberty interests without due process of law.  "The requirement of 'due process' is not a fair-weather or timid assurance. It must be respected in periods of calm and in times of trouble; it protects aliens as well as citizens." *Joint Anti-Fascist Refugee Committee v. McGrath*, 341 U.S. 123, 162, 71 S. Ct. 624, 643, 95 L. Ed. 817, 849 (1951).

59. While passports may be suspended without a pre-suspension hearing, citizenship is a different matter.  *See Haig v. Agee*, 453 U.S. 280, 309 (1981) (holding that passports may be revoked without a pre-deprivation hearing, reasoning that the critical government national security issues warranted pre-hearing deprivation of the right to travel).

60. Unlike the right to travel, "citizenship  -- particularly American citizenship, … is 'one of the most valuable rights in the world today'". *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 160, 83 S. Ct. 554, 563, 9 L. Ed. 2d 644, 656 (1963)

61. For such rights, the Due Process Clause "guarantees minimum procedural protections, typically notice and an evidentiary hearing, when the individual is deprived of the benefit." *Kizas*

---

[10] This claim for relief is brought by Mr. Muthana on behalf of his daughter, Hoda Muthana, and also has implications for and impacts Mr. Muthana's grandson.  To the extent the actions of Defendants which violate the Fifth Amendment to the Constitution as set out in this claim for relief need to be brought individually on behalf of his grandson, Mr. Muthana hereby asserts those claims here as well.

*v. Webster*, 707 F.2d 524, 539 (D.C. Cir. 1983).   "When the Government acts to take away the fundamental right of citizenship, the safeguards of the Constitution should be examined with special diligence."  *Trop v. Dulles*, 356 U.S. 86, 103, 78 S. Ct. 590, 599, 2 L. Ed. 2d 630, 644 (1958).

62. "[T]he deprivation of citizenship is not a weapon that the Government may use to express its displeasure at a citizen's conduct, however reprehensible that conduct may be. As long as a person does not voluntarily renounce or abandon his citizenship, and this petitioner has done neither, [the] fundamental right of citizenship is secure."  *Trop*, 356 U.S. at 92-93.

63. Even when crimes or other misconduct is alleged, "guilt should be determined in a civilian court of justice where all the protections of the Bill of Rights guard the fairness of the outcome." *Trop*, 356 U.S. at 104.

64. In this case, the United States has recognized Ms. Muthana to be a United States citizen by birthright since 2005.  That recognition cannot be withdrawn, if at all, without affording Ms. Muthana the due process of law in a federal court, which protects the rights guaranteed in the Fifth Amendment to the Constitution.

65. Through their actions as described in the preceding paragraphs and incorporated herein by reference, Defendants have violated the Procedural Due Process guarantees of the Fifth Amendment.

66. Defendants' violations of the Fifth Amendment inflict ongoing harm upon Ms. Muthana, as well as her son.

**d. Count 4: Mr. Muthana, on behalf of his daughter, seeks injunctive relief preventing the United States' unlawful attempt to rescind her citizenship in violation of the United States Constitution, because the United States is equitably estopped from now asserting she has never had citizenship, because it has not given her notice or opportunity to challenge the process, nor did it permit her the opportunity to pursue legal residency as an alternative when she could have done so, had she known of any need.**

67. For the reasons stated in the preceding paragraphs and incorporated herein by reference, the United States is equitably estopped from now asserting that Ms. Muthana is not a United States citizen.

68. The doctrine of estoppel requires a showing that: (1) there was a "definite" representation to the party claiming estoppel; (2) the party relied on its adversary's conduct to his detriment; and (3) the reliance on the representation was "reasonable." *Graham v. SEC*, 222 F.3d 994, 1007, 343 U.S. App. D.C. 57 (D.C. Cir. 2000) (quoting *Heckler v. Community Health Servs.*, 467 U.S. 51, 59, 81 L. Ed. 2d 42, 104 S. Ct. 2218 (1984)).

69. Equitable estoppel is available against the government in the extraordinary circumstances presented here.  The case for estoppel against the government requires proof of both the traditional elements of the doctrine as well as "a showing of an injustice . . . and lack of undue damage to the public interest." *Hertzberg v. Veneman*, 273 F. Supp 2d 67, 83, 2003 U.S. Dist. LEXIS 12830, quoting *ATC Petroleum, Inc. v. Sanders*, 860 F.2d 1104, 1111 (D.C. Cir. 1988).  A showing of injustice requires a demonstration that the government and/or its agents "engage[d] -- by commission or omission -- in misrepresentation or concealment, or, at least, behave[d] in ways that have or will cause an egregiously unfair result." *Grumman Ohio Corp. v. Dole*, 776 F.2d 338, 347 (D.C. Cir. 1985) (quoting *General Accounting Office v. General Accounting Office Personnel Appeals Board*, 225 U.S. App. D.C. 350, 698 F.2d 516, 526 n.57 (D.C. Cir. 1983)).

70. As set forth in further detail above, the United States, in recognition of Ms. Muthana's birthright citizenship, granted Ms. Muthana a United States passport in January 2005.  Prior to issuing her passport, the United States questioned her eligibility for citizenship by birthright based on her father's prior diplomatic status, and required Mr. Muthana to provide proof that he was not a diplomat at the time of her birth.  He did. *See* Exhibit A, c. The United States thereafter issued a passport for Ms. Muthana as a United States citizen.  The United States subsequently renewed her passport, thereby reaffirming its recognition of her United States citizenship.

71. The United States definitively represented to Plaintiff that Ms. Muthana was a United States citizen when it issued her a passport.

72. Plaintiff and his daughter relied on the representation by the United States that his daughter was a United States citizen, and as a result did not take further action to procure or clarify her status in the United States.

73. Reliance on the issuance of a United States passport, issued by the United States government, was reasonable on the part of Plaintiff and Ms. Muthana.

74. The letter revoking Ms. Muthana's passport in 2016 does not assert that Mr. Muthana, or his daughter (who was a minor at the time relevant to this claim) acted in bad faith or presented anything but accurate information to the United States.

75. To rely on the United States' purported reason for claiming Ms. Muthana is not a citizen of the United States, that it did not receive official notice of the end of Mr. Muthana's diplomatic position until February 1995, creates misrepresentation by omission on the part of the United States, and creates an egregiously unfair result.

76. To the extent that any delay in notifying the United States of the termination of Mr. Muthana's diplomatic position until February 1995 may bar Ms. Muthana's claim to birthright

citizenship, as the United States asserted in 2016 (*see* Ex. D), the United States was necessarily already aware of those facts at the time that it issued her a U.S. passport in January 2005.[11]

77. The failure of the United States to raise a specific objection that Mr. Muthana maintained diplomatic status because the United States had not been officially notified of his termination from his diplomatic position until after the time of her birth prevented Ms. Muthana's parents from applying further for legal residency and eventual citizenship for Ms. Muthana, as they had done for her older siblings, born prior to their father's loss of diplomatic status. Had Ms. Muthana or her parents known of the need to similarly apply for permanent residency for her, they would have undoubtedly taken the same steps for her as they took for her siblings.  Since she and her parents were not made aware of any need to take these steps, they did not take them on her behalf.

78. Therefore, the United States is equitably estopped from now claiming that Mr. Muthana's daughter was never a United States citizen or that she therefore does not have the rights of United States citizens.

79. If this Court were to decline injunctive relief, Mr. Muthana's daughter would suffer irreparable harm from the loss of her U.S. citizenship, and the rights and constitutional guarantees that attend that citizenship.

---

[11] As noted above, the letter provided in October 2004 came from the United States Mission to the United Nations, Host Country Affairs Section, and was signed by the Minister Counselor for that Section.  Ex. C.  The correspondence from the government revoking Ms. Muthana's passport in 2016 likewise refers to the Host Country Affairs Section of the United States Permanent Mission to the United Nations, but contrary to the earlier representation that termination of Mr. Muthana's diplomatic position was reflected in the records of the United States Mission as terminating September 1, 1994, the United States stated in 2016 that the Mission's records indicated the Section was not officially notified of his termination under February 6, 1995.  The 2016 letter also recognizes, however, that Mr. Muthana's diplomatic position ended no later than September 1, 1994.  Ex. D.

80. Injunctive relief would not substantially injure other interested parties. Mr. Muthana's daughter's status as a citizen is guaranteed under the U.S. Constitution. Accordingly, the government's obligation to respect and preserve her constitutional rights cannot, and should not, be construed as causing injury to other parties or in any way outweighing these inalienable rights.

81. Public interest is furthered by this Court's granting of injunctive relief. U.S. citizenship is guaranteed to all individuals born within the United States; allowing the U.S. government to unilaterally strip citizens of that right via administrative action, without legally required due process, endangers the rights of all United States birthright citizens.

82. Accordingly, Mr. Muthana, on behalf of his daughter, respectfully requests that this Court grant relief enjoining the U.S. from disputing or rescinding her established citizenship, based on equitable estoppel for the reasons set forth above.

    e. **Count 5: Mr. Muthana, on behalf of his daughter, seeks injunctive relief preventing the United States' unlawful attempt to administratively rescind her citizenship in violation of the United States Constitution, as the United States is equitably estopped from now asserting she has never had citizenship, because it has not given her notice or opportunity to challenge the process, nor did it permit her the opportunity to pursue legal residency as an alternative when she could have done so, had she known of any need.**

83. For the reasons stated in the preceding paragraphs and incorporated herein by reference, the United States is equitably estopped from now asserting that Ms. Muthana is not a United States citizen.

84. The United States granted Ms. Muthana a United States passport and recognized her citizenship in 2005.  Prior to issuing her passport, the United States questioned her eligibility for citizenship by birthright based on her father's prior diplomatic status and required Mr. Muthana to provide proof that he was not a diplomat at the time of her birth.  He did. *See* Exhibit A. The United States thereafter issued a passport for Ms. Muthana as a United States citizen.  The United States

subsequently renewed her passport, thereby reaffirming its recognition of her United States citizenship.

85. There has been no showing or indication that Mr. Muthana, or his daughter (who was a minor at the time relevant to this claim) acted in

> **f. Count 6: Mr. Muthana, on behalf of his grandson, seeks injunctive relief preventing the United States' unlawful attempt to administratively rescind his citizenship in violation of the United States Constitution, as he became a United States citizen by acquisition at the time of his birth, due to his mother being a United States citizen at the time of his birth.**

86. For the reasons stated above and incorporated herein by reference, Mr. Muthana's daughter was a United States citizen at the time of her birth.[12]

87. Mr. Muthana's grandson, therefore, became a United States citizen by acquisition at the time of his birth. 8 USC § 1401(g).

88. Stripping U.S. citizens of their citizenship is one of the most serious steps the U.S. government can take, and in the case of birthright citizens, is both unconstitutional and impermissible.

89. If this Court were to decline injunctive relief, Mr. Muthana's daughter would suffer irreparable harm from the loss of her U.S. citizenship, and the rights and constitutional guarantees that attend that citizenship.

90. Injunctive relief would not substantially injure other interested parties. Mr. Muthana's daughter's status as a citizen is guaranteed under the U.S. Constitution. Accordingly, the government's obligation to respect and preserve her constitutional rights cannot, and should not, be construed as causing injury to other parties or in any way outweighing these inalienable rights.

---

[12] U.S. Const. Amend. XIV; *Mitsugi Nishikawa v. Dulles*, 356 U.S. 129, 138, 78 S. Ct. 612, 618, 2 L. Ed. 2d 659 (1958).

91. Public interest is furthered by this Court's granting of injunctive relief. U.S. citizenship is guaranteed to all individuals born within the United States, as well as those born to United States citizen parents; allowing the U.S. government to unilaterally strip citizens of that right via administrative action, without legally required due process, endangers the rights of all United States birthright citizens and citizens by acquisition.

92. Accordingly, Mr. Muthana, on behalf of his daughter, respectfully requests that this Court grant relief enjoining the U.S. from disputing or rescinding her established citizenship.

**e. Count 7: Plaintiff Ahmed Ali Muthana, on behalf of his daughter and grandson, seeks a writ of mandamus instructing the United States to uphold the rights of its citizens, and aid in the return of his daughter and grandson to the United States.**

93. Plaintiff Ahmed Ali Muthana, on behalf of his daughter and grandson, hereby alleges and incorporates by reference all facts contained in the sections above.

94. Plaintiff's claims on behalf of his daughter and grandson are clear and certain: the rights of United States citizens to return to the United States, as well as to retain their citizenships, are clearly protected by the United States Constitution.

95. Defendant's official duty to act is required by the Constitution, its own stated policies, and international law; it has even recognized and promoted this duty in its recent press releases.

96. No other adequate remedy is available beyond those sought here, and both Mr. Muthana's daughter and grandson will suffer immediate and irreparable harm if they are not permitted their rights as United States citizens to return home.

97. Therefore, while "[t]he remedy of mandamus "is a drastic one, to be invoked only in extraordinary circumstances",[13] mandamus is properly available if: "(1) the plaintiff has a clear

---

[13] *Allied Chemical Corp. v. Daiflon, Inc.*, 449 U.S. 33, 34 (1980).

right to relief; (2) the defendant has a clear duty to act; and (3) there is no other adequate remedy available to plaintiff."[14]

98. On behalf of his daughter and grandson, Plaintiff here satisfies all three criteria, and a request for a writ of mandamus is appropriate.  Plaintiff Ahmed Ali Muthana, on behalf of his daughter and grandson, therefore seeks a writ of mandamus under the authority of 28 U.S.C. § 1361, instructing the United States government to uphold its duties to these two United States citizens and assist them in returning to the United States.

> **g. Count 8: As United States Citizens, Ms. Muthana and her minor child have the right to return to the United States under international law, and the United States government has a vested interest in assisting U.S. citizens who flee armed conflict on foreign soil.**

99. The preceding paragraphs are incorporated herein by reference.

100.     Ms. Muthana and her young son have succeeded in escaping ISIS-controlled territory; however, they are still located in an area of Syria which is riddled by conflict and violence.

101.     Ahmed Ali Muthana, as next friend of his daughter and grandson, now reasserts their desire to return home and for Hoda Muthana to surrender to the United States justice system. In accordance with their status as United States citizens and their rights under international humanitarian law, Mr. Muthana requests, on behalf of his daughter and grandson, assistance from the U.S. government in securing them safe passage out of Syria.

102.     The Fourth Geneva Convention, signed by the United States in 1949 and ratified in 1955, outlines the conduct that signatory nations are required to adhere to during times of war.[15]

---

[14] *Northern States Power Co. v. U.S. Dep't of Energy*, 128 F.3d 754, 758 (D.C. Cir. 1997) (quoting *Council of and for the Blind of Delaware Cty. Valley, Inc. v. Regan*, 709 F.2d 1521, 1533 (D.C. Cir. 1983) (en banc)).
[15] http://www.un.org/en/genocideprevention/documents/atrocity-crimes/Doc.33_GC-IV-EN.pdf

103.     Article 2 of that Convention specifies that it "shall apply to all cases of declared war or of any other armed conflict which may arise between two or more of the High Contracting Parties, even if the state of war is not recognized by one of them."[16]

104.     Since 2011, "fighting in Syria has killed an estimated 465,000 people, injured more than one million, and forced about 12 million people - or half the country's pre-war population - from their homes."[17] Although the degree of involvement of each of the parties presently in Syria has shifted over time, the fact remains that there are still several conflicting international forces at play within the Syrian border, including Israel, government forces backed by Russia and Iran, Turkey, Kurdish forces, Syrian rebel groups, and Syrian forces loyal to Assad.[18]

105.     Over 130 countries have signed the Geneva Convention, including Syria, Iran, Turkey, Russia and the United States, all of whom have taken part in the Syrian conflict; accordingly, this conflict falls within the contemplated international scope of the Geneva Conventions.

106.     In addition to other relevant articles of the Convention, Article 48 of the Fourth Geneva Convention specifically addresses how aliens in occupied territories are to be treated during times of conflict, stating that "protected persons who are not nationals of the Power whose territory is occupied, may avail themselves of the right to leave the territory subject to the provisions of Article 35, and decisions thereon shall be taken according to the procedure which the Occupying Power shall establish in accordance with the said article."[19]

---

[16] *Id.*

[17] *See* https://www.aljazeera.com/indepth/interactive/2015/05/syria-country-divided-150529144229467.html for a breakdown of where and who is currently occupying Syria.

[18] https://www.bloomberg.com/news/articles/2019-01-14/who-s-still-fighting-in-the-syrian-war-and-why-quicktake-jqwig5e7.

[19] Article 35, in relevant part, states that "all protected persons who may desire to leave the territory at the outset of, or during a conflict, shall be entitled to do so, unless their departure is contrary to

107.    Mr. Muthana's daughter and grandson qualify as protected persons under the definition contained in Article 4 of the Fourth Geneva Convention, which states that "persons protected by the Convention are those who at a given moment and in any manner whatsoever, find themselves, in case of a conflict or occupation, in the hands of a Party to the conflict or Occupying Power of which they are not nationals."[20]

108.    The United States Supreme Court has previously acknowledged the legitimacy of invoking the Geneva Convention in order to challenge wartime conduct and sustain fundamental liberties. *See Hamdan v. Rumsfeld,* 548 U.S. 557, 126 S.Ct. 2749, 164 L.Ed. 2d 723 (2006) (recognizing that it is permissible for an alien to invoke the Geneva Conventions in order to challenge procedures used by military commissions during his criminal trial).

109.    Although Mr. Muthana's daughter has at times been in the company of ISIS fighters and present in ISIS-controlled territory, there is no evidence to suggest that she has taken part in any armed combat or hostilities.

110.    There is no evidence, nor can there conceivably be any evidence, that Mr. Muthana's minor grandson, who is less than two years old at the time of the filing of this Complaint, took part in any armed combat or hostilities.

---

the national interests of the State. The applications of such persons to leave shall be decided in accordance with regularly established procedures and the decision shall be taken as rapidly as possible…if any such person is refused permission to leave the territory, he shall be entitled to have such refusal reconsidered as soon as possible by an appropriate court or administrative board designated by the Detaining Power for that purpose."

111.    Neither Mr. Muthana's daughter nor his grandson is a national of Syria, or any of the parties to the current conflict taking place on Syrian soil, other than the United States; therefore, they have the right to safely exit the area of conflict and return to their home country.[21, 22]

112.    On February 4, 2019, the U.S. Department of State published a press release stating that "the United States calls upon other nations to repatriate and prosecute their citizens detained by the [Syrian Democratic Forces]."[23] Although Mr. Muthana's daughter and grandson are not presently detained by the SDF, this demonstrates the United States' specific policy position on the repatriation of American citizens who have previously been affiliated with ISIS.

113.    Consistent with the United States' policy position, stated above, Mr. Muthana's daughter remains entirely willing to surrender to the United States Department of Syria upon her return; however, she requires the assistance of her government in securing her own repatriation and that of her minor son, in accordance with international law and U.S. policy.

114.    In addition to International law, American citizens have an absolute right to return to their home country. *See Tuan Anh Nguyen v. I.N.S.*, 533 U.S. 53, 67, 121 S. Ct. 2053, 2062, 150 L. Ed. 2d 115 (2001) (acknowledging the absolute right of United States citizens to enter its borders); *see also Worthy v. United States,* 328 F.2d 386, 394 (5th Cir. 1964) ("We think it is inherent in the concept of citizenship that the citizen, when absent from the country to which he owes allegiance, has a right to return, again to set foot on its soil").

115.    Although this right does not in and of itself confer an obligation on the United States to do more than refrain from obstructing a citizen's ability to return, when viewed in conjunction

---

[21] *See* https://www.npr.org/2019/01/17/686207495/how-strong-is-the-islamic-state-in-syria for an updated overview of the current state of ISIS in Syria (last visited on February 4, 2019).
[22] http://www.syrianlawjournal.com/index.php/main-legislation/nationality-law/#l18-1
[23] https://www.state.gov/r/pa/prs/ps/2019/02/288735.htm (last visited on February 5, 2019).

with applicable international humanitarian law and stated U.S. policy, it confers upon the United States a responsibility proactively preserve the fundamental rights of its citizens.

116.      United States citizens possess the fundamental right to return home, and the Geneva Convention outlines in great detail the right of aliens to leave an occupied area of armed conflict. As a party to this treaty, the United States therefore has a vested interest in facilitating its implementation, particularly where the treaty coincides with the safety of its own citizens and the preservation of their absolute right to return home.

   **h. Count 9: Ahmed Ali Muthana is entitled to a declaratory judgment, under the Declaratory Judgment Act, 28 U.S.C. 2201-2202, that he may send money to ensure the survival of his daughter and grandson, while they secure their return to the United States, without incurring liability under § 2339B.**

117.      The facts from the foregoing paragraphs are incorporated herein by reference.

118.      Plaintiff Ahmed Ali Muthana respectfully requests a declaration from this Court that he may send money to his daughter and grandson, in order to ensure their survival, without committing a violation of § 2339B.

119.      Mr. Muthana has an actual controversy, as required by the Declaratory Judgment Act, because this case involves a substantial and concrete controversy, touches the legal relations of the parties with adverse interests, and is subject to specific relief through a declaratory judgment. *See Aetna Life Insurance Company v. Haworth*, 300 U.S. 227, 240-41 (1937).

120.      This Complaint satisfies the requirement for an actual controversy because Mr. Muthana has been informed by the FBI, during his recent communications with them, that sending money to his daughter and grandson would constitute material support and a violation of 18 U.S.C. § 2339B. *See* Ex. A, Decl. of Ahmed Ali Muthana.

121.     18 U.S.C. § 2339B prohibits providing material support or resources to designated terrorist organizations.[24, 25] The statute states, in relevant part, that it is unlawful to "knowingly provide material support or resources to a foreign terrorist organization, or attempt or conspire to do so…a person must have knowledge that the organization is a designated terrorist organization…that the organization has engaged or engages in terrorist activity…or that the organization has engaged or engages in terrorism."[26]

122.     The leading case interpreting 18 U.S.C. § 2339B comes from the United States Supreme Court, in *Humanitarian Law Project*.[27] The plaintiffs in that case were a collective of advocacy groups that sought to provide the Partiya Karkeran Kurdistan ("PKK") and the Liberation Tigers of Tamil Eelam ("LTTE"), both designated terrorist organizations, with training on how to use humanitarian and international law for peaceful conflict resolution, as well as how to petition the UN for humanitarian relief.[28]   The plaintiffs challenged § 2339B as unconstitutionally vague on its face, under the due process clause of the Fifth Amendment.[29] The Supreme Court ruled against the plaintiffs, finding that those plaintiffs did not concretely demonstrate the degree to which they might provide material support or resources.[30] Specifically, the Supreme Court held that "with respect to these claims that gradations of fact or charge would make a difference as to criminal liability, and so adjudication of the reach and constitutionality of

---

[24] 18 U.S.C. § 2339B.
[25] 18 U.S.C. § 2339A is not applicable in this situation because Mr. Muthana seeks only to provide resources to his daughter to help her and his grandson get home safely, and not to aid in a conspiracy to damage or destroy property outside the United States.
[26] *Id.*
[27] *Holder v. Humanitarian Law Project*, 561 U.S. 1 (2010).
[28] *Id.* at 10.
[29] *Id.* at 18.
[30] *Id.* at 25.

the statute must await a concrete fact situation."[31] The holding in *Humanitarian Law* left the door

open for future fact situations which may not constitute material support under § 2339B, such as

the one in this instant matter.

123.    In this case, Mr. Muthana seeks to provide his daughter and grandson with

emergency monetary support in order to ensure their survival, until they can return home.

124.    As of January 15, 2019, Ms. Muthana and her son successfully escaped ISIS-

controlled territory in Syria and made their way to Kurdish-controlled lands in northeast Syria,

where they await passage back to the United States.

125.    Ms. Muthana has openly and repeatedly disavowed ISIS, and is focused solely on

returning to the United States with her son, to ensure the safety of her young child. Upon

information and belief, she is further willing to surrender to the United States justice system should

the United States deem that necessary.

126.    Mr. Muthana has cooperated with the instructions given to him by the FBI; however,

at this time he requests a declaratory judgment finding that, based on the facts of this case, he will

not commit a violation of § 2339B by providing support for his daughter and grandson to return

home.

127.    The monetary support Mr. Muthana seeks to provide would solely support his

daughter and his grandson, and would be of no benefit to ISIS, as they are both physically separated

from the group, and are no longer subject to its control.

128.    Holding that Mr. Muthana would violate § 2339B by sending money for his

daughter and grandson, for this limited purpose at a location outside the control of ISIS, would

effectively render criminal any attempts to send money overseas to any individuals who had, at

---

[31] *Id.*

any point in their past, had contact with a designated terrorist organization in a different geographic area than where they are when they receive the money at issue.   Doing so is inconsistent with the stated intent of § 2339B, which is "…to provide the Federal Government the fullest possible basis, consistent with the Constitution, to prevent persons within the United States, or subject to the jurisdiction of the United States, from providing material support or resources to foreign organizations that engage in terrorist activities." *Id*.   Here, Mr. Muthana is at no risk of providing material support or resources to any foreign terrorist organization. There is no logical way that any funds could be used to engage in any terrorist activities, given the present location of Mr. Muthana's daughter and grandson outside of ISIS-controlled territory.

## IX.   CONCLUSION

For the reasons set forth above, Plaintiff Ahmed Ali Muthana hereby requests that the United States issue a declaratory judgment finding that he will not be in violation of 2339B if he provides his daughter and grandson with financial support to aid their survival and return to the United States.  Plaintiff Ahmed Ali Muthana, as Next Friend of his daughter Hoda Muthana and grandson Minor John Doe, further seeks injunctive relief preventing the United States government from unconstitutionally robbing them of their rights as United States citizens, as well as a writ of mandamus instructing the United States government to uphold its duties to these two United States citizens. Counsel for Plaintiff further respectfully requests this Court find the U.S. government has an obligation to assist in the return of its citizens from areas of armed conflict, based on U.S. law regarding the rights of citizenship, applicable international law, and the United States' own publically stated policies regarding the repatriation of American citizens. As stated above, upon her return to the United States, Mr. Muthana's daughter is prepared and willing to surrender to any charges the United States Justice Department finds appropriate and necessary; she simply requires

the assistance of her government in facilitating that return for herself and her young son Minor John Doe.

Respectfully submitted,

/s/ *Charles D. Swift*
Charles D. Swift
D.C. ID No. 987353
Texas Bar No. 24091964
cswift@clcma.org
Christina A. Jump
D.C. ID No. TX151
Texas Bar No. 00795828
cjump@clcma.org
Constitutional Law Center for
Muslims in America
833 E. Arapaho Rd, Suite 102
Richardson, TX  75081
Phone: (972) 914-2507
Fax: (972) 692-7454

## VERIFICATION OF COMPLAINT

I, Ahmed Ali Muthana, declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed on this 21st day of February, 2019.