## IN THE UNITED STATES DISTRICT

## COURT FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **AHMED ALI MUTHANA, individually, and as next friend of Hoda Muthana and Minor John Doe** [initials A.M.]<br><br>*Plaintiff/Petitioner,*<br><br>vs.<br><br>**Michael Pompeo, in his official capacity as Secretary of the Department of State, Donald J. Trump, in his official capacity as President of the United States; and William Pelham Barr in his official capacity as Attorney General.**<br><br>*Defendants/Respondents.* | Cause No. <u>1:19-cv-00445-RBW</u><br><br>CIVIL ACTION |

### PLAINTIFF'S MOTION FOR LEAVE TO FILE MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S EXPEDITED COMPLAINT FOR DECLARATORY, INJUNCTIVE AND MANDAMUS RELIEF

Plaintiff Ahmed Ali Muthana, individually and as Next Friend of Hoda Muthana and Minor John Doe, by and through undersigned counsel, files this Motion for Leave to File Memorandum of Law in Support of Plaintiff's Expedited Complaint for Declaratory, Injunctive and Mandamus Relief against Michael Pompeo, in his official capacity as Secretary of the Department of State, Donald J. Trump, in his official capacity as President of the United States, and William Pelham Barr, in his official capacity as Attorney General.

Plaintiff respectfully moves this Honorable Court to grant Plaintiff leave to file the attached Memorandum of Law in Support of Plaintiff's Expedited Complaint for Declaratory, Injunctive and Mandamus Relief, which is attached to this instant Motion as "Exhibit A." Plaintiff only seeks

to supplement the record with information that further supports Plaintiff's Expedited Complaint for Declaratory, Injunctive and Mandamus Relief (Dckt. 1). This supporting Memorandum, if leave to file is granted, provides additional information that is intended to be a helpful resource for this Honorable Court to understand the issues raised by Plaintiff, and to assist this Court in the issuance of a ruling on Plaintiff's Expedited Complaint for Declaratory, Injunctive and Mandamus Relief (Dckt. 1). This Memorandum in Support will not prejudice the Defendants, as the Defendants will thereby also be able to prepare their defenses related to these legal issues ahead of the expedited hearing set for this matter. Granting this Motion is in the interests of judicial economy and is supported by good cause. For the reasons set forth above, Plaintiff respectfully requests that his Motion for Leave be granted.

Respectfully submitted,

/s/ *Charles D. Swift*
Charles D. Swift
D.C. ID No. 987353
Texas Bar No. 24091964
cswift@clcma.org
Christina A. Jump
D.C. ID No. TX151
Texas Bar No. 00795828
cjump@clcma.org
Constitutional Law Center for
Muslims in America
833 E. Arapaho Rd, Suite 102
Richardson, TX  75081
Phone: (972) 914-2507
Fax: (972) 692-7454

## CERTIFICATE OF SERVICE

The undersigned counsel hereby affirms that the foregoing will be served on all counsel of record via ECF filing on all listed Defendants.

/s/ *Charles D. Swift*
Charles D. Swift

## IN THE UNITED STATES DISTRICT

## COURT FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **AHMED ALI MUTHANA, individually, and as next friend of Hoda Muthana and Minor John Doe** [initials A.M.] | Cause No. <u>1:19-cv-00445-RBW</u> |
| *Plaintiff/Petitioner,* | CIVIL ACTION |
| vs. | |
| **Michael Pompeo, in his official capacity as Secretary of the Department of State, Donald J. Trump, in his official capacity as President of the United States;** and **William Pelham Barr in his official capacity as Attorney General.** | |
| *Defendants/Respondents.* | |

### [PROPOSED] ORDER

Upon consideration of Plaintiff's Motion for Leave to File Memorandum of Law in Support of Plaintiff's Expedited Complaint for Declaratory, Injunctive and Mandamus Relief, it is hereby ORDERED that Plaintiff's Motion for Leave is GRANTED.

SO ORDERED on this _____ day of _____, 2019.

_____
REGGIE B. WALTON
United States District Judge
for the District of Columbia

# EXHIBIT A

# IN THE UNITED STATES DISTRICT

# COURT FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **AHMED ALI MUTHANA, individually, and as next friend of Hoda Muthana and Minor John Doe** [initials A.M.] | Cause No. 1:19-cv-00445 |
| *Plaintiff/Petitioner,* | Judge: Reggie B. Walton |
| vs. | CIVIL ACTION |
| **Michael Pompeo, in his official capacity as Secretary of the Department of State, Donald J. Trump, in his official capacity as President of the United States;** and **William Pelham Barr in his official capacity as Attorney General.** | |
| *Defendants/Respondents.* | |

## PLAINTIFF'S MEMORANDUM OF LAW
## IN SUPPORT OF EXPEDITED COMPLAINT FOR
## DECLARATORY, INJUNCTIVE AND MANDAMUS RELIEF

/s/ *Charles D. Swift*
Charles D. Swift
D.C. ID No. 987353
Texas Bar No. 24091964
cswift@clcma.org
Christina A. Jump
D.C. ID No. TX151
Texas Bar No. 00795828
cjump@clcma.org
Constitutional Law Center for
Muslims in America
833 E. Arapaho Rd, Suite 102
Richardson, TX 75081
Phone: (972) 914-2507
Fax: (972) 692-7454

# TABLE OF CONTENTS

I.      Brief Factual Background ................................................................................................... 1

II.     The Relief Sought is Appropriate in this Matter.................................................................. 4

III.    Arguments and Authorities ................................................................................................. 6

   A.  Ms. Muthana's Birthright Citizenship May Only Be Revoked by Judicial Proceeding...... 6

      1.  Ms. Muthana is Entitled to a Presumption of United States Citizenship ........................ 6

      2.  Issuance of a Passport to Ms. Muthana Constitutes de facto Recognition of Her

      Citizenship ..................................................................................................................... 8

      3.  Absent Judicial Process and Clear and Convincing Evidence, Ms. Muthana is a United

      States Citizen .................................................................................................................. 9

         a.  22 C.F.R. § 51.62 Provides Insufficient Due Process for Revocation of Citizenship... 11

   B.  This Action Does Not Serve as an Appropriate Vehicle for Determining Citizenship .......13

   C.  Ms. Muthana's Son is Entitled to a Presumption of Citizenship .........................................19

   D.  Mandamus Relief is Appropriate to Return Ms. Muthana and her Son to the U.S. ............20

      1.  The U.S. Must Assist in Ms. Muthana's Return Since it Revoked her Passport .............20

      2.  Detention in a Refugee Camp Does Not Excuse the United States from its Obligations

      to its Citizens ................................................................................................................21

   E.  Mr. Muthana is Entitled to Declaratory Relief that He Will Not be in Violation of § 2339B

   by Providing Funds to His Daughter.........................................................................................23

IV.    Conclusion ......................................................................................................................24

## <u>TABLE OF AUTHORITIES</u>

**U.S. SUPREME COURT CASES**

*Allied Chemical Corp. v. Daiflon, Inc.*, 449 U.S. 33 (1980)............................................................ 6

*Chin Yow v. United States*, 208 U.S. 8 (1908)............................................................................... 11

*Haig v. Agee*, 453 U.S. 280 (1981)................................................................................................ 13

*Hamdan v. Rumsfeld*, 548 U.S. 557 (2006) ................................................................................... 24

*Holder v. Humanitarian Law Project*, 561 U.S. 1 (2010) ............................................................. 26

*Kennedy v. Mendoza-Martinez*, 372 U.S. 144 (1963)................................................................... 10

*Klapprott v. United States*, 335 U.S. 601 (1949) (J. Rutledge, Concurring) ............................... 10

*Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270 (1941) ...................................... 4

*Mitsugi Nishikawa v. Dulles*, 356 U.S. 129 (1958). ....................................................................... 7

*Ng Fung Ho v. White,* 259 U.S. 276 (1922)....................................................................... 11, 13, 22

*Nguyen v. Immigration and Naturalization Serv.*, 533 U.S. 53 (2001) ........................................ 23

*Schneiderman v. United States*, 320 U.S. 118 (1947)....................................................... 9, 11, 22

*Sessions v. Morales-Santana*, 582 U.S. ___, 137 S.Ct. 1678 (2017).......................................... 22

*Trop v. Dulles*, 356 U.S. 86 (1958)............................................................................................... 21

*Tuan Anh Nguyen v. I.N.S.*, 533 U.S. 53 (2001) ........................................................................... 22

*Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995) ............................................................................. 4

**CIRCUIT AND DISTRICT COURT CASES**

*Ali v. Dist. Dir.*, 209 F. Supp. 3d 1268 (S.D. Fla. 2016)............................................................... 17

*Citizens for Responsibility and Ethics in Washington v. United States Dep't of Justice*, 846 F.3d
    1235 (D.C. Cir. 2017)............................................................................................................. 5

*Council of and for the Blind of Delaware Cty. Valley, Inc. v. Regan*, 709 F.2d 1521 (D.C. Cir.
    1983) (en banc)....................................................................................................................... 6

*Doe v. Mattis*, 889 F.3d 745 (D.C. Cir. 2018) ............................................................................. 25

*English v. District of Columbia*, 815 F. Supp. 2d 254 (D.D.C. 2011)............................................ 4

*General Accounting Office v. General Accounting Office Personnel Appeals Board*, 225 U.S.
    App. D.C. 350 (D.C. Cir. 1983) ........................................................................................... 19

*Grumman Ohio Corp. v. Dole*, 776 F.2d 338 (D.C. Cir. 1985).................................................... 19

*Hertzberg v. Veneman*, 273 F. Supp 2d 67, 83 (D.D.C. 2003) .................................................... 19

*Iceland S.S. Co. v. United States Dep't of the Army*, 201 F.3d 451 (D.C. Cir. 2000) .................. 17

*Kelso v. United States Dep't of State*, 13 F. Supp. 2d 1 (D.D.C. 1998) .......................................... 9

*Larry Flynt & L.F.P., Inc. v. Rumsfeld*, 355 F.3d 697, 701, 705 (D.C. Cir. 2004) ....................... 4

*Mohamed v. Holder,* 995 F. Supp. 2d 520 (D. Or. 2014) .............................................................. 24

*Newton v. INS*, 736 F.2d 336 (6th Cir. 1984) ............................................................................... 23

*Northern States Power Co. v. U.S. Dep't of Energy,* 128 F.3d 754 (D.C. Cir. 1997) ................... 6

*Raya* v. *Clinton*, 703 F. Supp. 2d 569 (W.D. Va. 2010) .................................................................. 8

*SEC v. Savoy Indus., Inc.*, 587 F.2d 1149 (D.C. Cir. 1978) ........................................................... 5

*Study of Servs. v. U.S. Dep't of Health & Human Servs. & Ctrs. for Medicare & Medicaid Servs.*,
    874 F.3d 287 (D.C. Cir. 2017) ................................................................................................... 5

*Swarna v. Al-Awadi*, 607 F. Supp. 2d 509 (S.D.N.Y. 2009) ........................................................ 17

*United States v. Guinand*, 688 F. Supp. 774 (D. D.C. 1988) ......................................................... 8

*United States v. Philip Morris USA Inc.*, 566 F.3d 1095 (D.C. Cir. 2009) ................................... 5

*United States v. Regenerative Scis.*, LLC, 741 F.3d 1314 (D.C. Cir. 2014) ................................... 5

*Vulcan Iron Works v. Polish American Machinery Corp.*, 479 F. Supp. 1060 (S.D.N.Y. 1979) . 17

*Worthy v. United States*, 328 F.2d 386 (5th Cir. 1964) .......................................................... 22, 23

## STATUTES

8 U.S.C. § 1401 ............................................................................................................. 7, 12, 21, 22

8 U.S.C. § 1481 ......................................................................................................................... 12

18 U.S.C. § 1544 ....................................................................................................................... 23

18 U.S.C. § 2339A .................................................................................................................... 26

18 U.S.C. § 2339B .................................................................................................................... 26

22 U.S.C. § 212 ........................................................................................................................... 9

22 U.S.C. § 2705 ......................................................................................................................... 9

22 U.S.C.A. § 254a ................................................................................................................... 16

## REGULATIONS

22 C.F.R. § 51.62 ................................................................................................................. 12, 13

# I.   BRIEF FACTUAL BACKGROUND

Plaintiff Ahmed Ali Muthana is a naturalized United States citizen.  He is also the father of Hoda Muthana, and the grandfather of Minor John Doe.  He brings this action on his own behalf for declaratory judgment, and as proper Next Friend of Hoda Muthana and Minor John Doe for injunctive and mandamus relief.  Plaintiff Muthana's daughter and grandson are currently in a precarious position by way of their present location in Camp al-Hawl in Syria, under the authority of Syrian Democratic forces.  The President of the United States has announced his intent to withdraw U.S. forces from the Syrian conflict, and upon information and belief this withdrawal has commenced.[1]  Upon withdrawal, the ability of the United States to obtain military cooperation from the Syrian Democratic forces, with which they have been previously aligned, will be greatly diminished if even possible.  As set forth further in Plaintiff's Complaint and below, the failure of the United States to facilitate the return of Ms. Muthana and her son as it is obligated to do under the Constitution and the Fourth Geneva Convention will cause immediate and irreparable harm by jeopardizing their ability in the future to return to the United States.

Prior to his daughter's birth, Ahmed Ali Muthana worked as a diplomat for the Yemen Permanent Mission to the United Nations.  On June 2, 1994, the Yemeni Ambassador Al-Aashtal required Mr. Muthana to surrender his diplomatic identity card.    Anticipating the loss of diplomatic status, Mr. Muthana's wife (Hoda Muthana's mother) applied for permanent residency status in the United States in early 1994, based on her own father's United States citizenship. She was granted lawful admission to the United States on July 7, 1994, pending permanent residency. Her permanent residency, along with Mr. Muthana's, was subsequently granted.

---

[1] "The Planned U.S. Troop Withdrawal from Syria: Here's the Latest," The New York Times, January 16, 2019 (https://www.nytimes.com/2019/01/16/world/middleeast/syria-us-troops-timeline.html) (last accessed January 20, 2019).

Hoda Muthana was born in the state of New Jersey on October 28, 1994.[2] Utilizing his daughter's birth certificate, Mr. Muthana applied for a passport for his minor daughter Hoda Muthana in 2004.   After receiving this application, officials from the United States State Department initially questioned whether Ms. Muthana was eligible for a U.S. passport, based on their records showing her father's diplomatic status remained in effect until February 6, 1995.  In response, Ahmed Ali Muthana provided the government with a letter from the United States Mission to the United Nations, signed by Russell F. Graham, Minister Counselor for Host Country Affairs, and addressed to Bureau of Citizenship and Immigration Services, which confirms that the diplomatic status he had due to his employment at the U.N. was terminated prior to the time of Ms. Muthana's birth.[3]  The United States accepted this documentation and issued Hoda Muthana the requested passport on January 24, 2005.[4]  The United States also later renewed Ms. Muthana's passport on February 21, 2014.[5]

Ms. Muthana traveled to Syria beginning in November 2014, unbeknownst to her family at the time.  Plaintiff Ahmed Ali Muthana immediately began working with the FBI to find her, and kept them up to date on his communications with her.   In or about November 2018, Ms. Muthana communicated that she was trying to escape ISIS-controlled Syria.  By December 2018 she had left her home in Syria with her young son, hoping to turn herself in to American forces. By January 2019, she approached Syrian Democratic forces, and has since been at Camp al-Hawl.[6] Ms. Muthana identified herself and her son as United States citizens. Despite this identification, she was not interred with other persons believed to be United States citizens.

---

[2] *See* Doc. 1-4, Ex. B to Plaintiff's Complaint.
[3] Doc. 1-5, Exhibit C to Plaintiff's Complaint.
[4] Doc. 1-6, Exhibit D to Plaintiff's Complaint.
[5] *Id.*
[6] Mr. Muthana received information from a third party, who had been detained with Ms. Muthana that she and her son have been relocated to Camp Roj in Syria, but as of this filing the report is not confirmed.

She has repeatedly articulated her desire to return to the United States, her remorse over her prior actions, and her willingness to surrender to United States authorities for any criminal consequences she may face.  On January 15, 2019, the undersigned counsel wrote to the United States Attorney for the Northern District of Alabama (the district from which Ms. Muthana left the country), asserting her status as a United States citizen and communicating her desire to return as well as her willingness to surrender to United States authorities for any contemplated charges.[7] On January 24, 2019, the United States Attorney responded that he had referred the matter to the State Department.[8]  Undersigned counsel received no further communication from the United States regarding Ms. Muthana.  On February 20, 2019, the United States Department of State declared on its website that "Ms. Hoda Muthana is not a U.S. citizen and will not be admitted into the United States. She does not have any legal basis, no valid U.S. passport, no right to a passport, nor any visa to travel to the United States."[9]  Later on February 20, 2019, President Donald J. Trump tweeted that "I have instructed Secretary of State Mike Pompeo, and he fully agrees, not to allow Hoda Muthana back into the Country!"[10] Secretary of State Pompeo also appeared on national television, proclaiming that "she is a terrorist.  She is not a United States citizen.  She ought not return to this country."[11]  After prompting that she had been born in the United States, Secretary Pompeo averred that "she may have been born in the United States", but nonetheless made the conclusory assertion that "she is not a U.S. citizen, nor is she entitled to U.S. citizenship."[12]

---

[7] Doc. 1-7, Ex. E to Plaintiff's Complaint.
[8] Doc. 1-8, Ex. F to Plaintiff's Complaint.
[9] Press Release dated February 20, 2019, located on Department of State website (https://www.state.gov/secretary/remarks/2019/02/289558.htm) (last visited February 20, 2019).
[10] https://twitter.com/realdonaldtrump/status/1098327855145062411?s=21 (last visited February 20, 2019).
[11] https://www.today.com/video/mike-pompeo-on-hoda-muthana-she-is-not-a-us-citizen-1446009923715 (last visited February 27, 2019).
[12] Id.

Prior to the above proclamations, the United States has not initiated any action in the courts of the United States to revoke Ms. Muthana's citizenship.

## II.    THE RELIEF SOUGHT IS APPROPRIATE IN THIS MATTER

In this action, Plaintiff seeks declaratory, injunctive and mandamus relief.  *See* Doc. 1. Each of these forms of relief is appropriate in this matter.

To issue declaratory relief, a court must determine "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."[13] The Declaratory Judgment Act gives the district courts "unique and substantial discretion in deciding whether to declare the rights of litigants."[14]  "The difference between an abstract question and a 'controversy' contemplated by the Declaratory Judgment Act is necessarily one of degree, and it would be difficult, if it would be possible, to fashion a precise test for determining in every case whether there is such a controversy. Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."[15]  The facts presented in this matter and set forth below establish the immediacy and controversy needed to warrant a declaratory judgment.  By virtue of the passport previously issued to Hoda Muthana by the Department of State, she retains a presumption of United States citizenship unless and until the United States initiates and obtains a favorable ruling in a judicial proceeding challenging her citizenship.  That has not happened; nonetheless, the Defendants have publicly stated their conclusions to the contrary.  Plaintiff therefore seeks

---

[13] *English v. District of Columbia*, 815 F. Supp. 2d 254, 268-69 (D.D.C. 2011) (internal citations omitted).
[14] *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286, 115 S. Ct. 2137, 132 L. Ed. 2d 214 (1995); *see also Larry Flynt & L.F.P., Inc. v. Rumsfeld*, 355 F.3d 697, 701, 705, 359 U.S. App. D.C. 402 (D.C. Cir. 2004).
[15] *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273, 61 S. Ct. 510, 512, 85 L. Ed. 826 (1941).

declaratory relief that Ms. Muthana is a United States citizen entitled to the presumption of citizenship absent an appropriate judicial proceeding to revoke it, as well as declaratory relief that Ms. Muthana's young son is entitled to a presumption of citizenship by acquisition.

Injunctive relief is also appropriate in this instance for many of the same reasons. Injunctive relief is appropriate where the actions of the government are likely to infringe on the rights of the plaintiff in the future, and are not speculative.[16] As with the standard for declaratory relief, there is a real and live controversy, between the parties to this suit who have adverse legal positions, and where Defendants' current legal positions will irreparably harm Plaintiff Ahmed Ali Muthana, his daughter and his minor grandson in the immediate or near future. A party seeking injunctive relief "must demonstrate a 'reasonable likelihood of further [harm] in the future.'"[17] Hoda Muthana and her son will be harmed should the United States be permitted to formally revoke her citizenship, and consequently deny the citizenship of her young son, without the required due process of proving its right to do so by clear and convincing evidence in a judicial proceeding. Therefore, Plaintiff seeks an injunction preventing the United States from taking any further action to deny their rights to citizenship.

Finally, mandamus relief is appropriate here as well. While "[t]he remedy of mandamus "is a drastic one, to be invoked only in extraordinary circumstances",[18] mandamus is properly available if: "(1) the plaintiff has a clear right to relief; (2) the defendant has a clear duty to act; and (3) there is no other adequate remedy available to plaintiff."[19] There are no other parties who

---

[16] *Citizens for Responsibility and Ethics in Washington v. United States Dep't of Justice*, 846 F.3d 1235 (D.C. Cir. 2017); *Ctr. for the Study of Servs. v. U.S. Dep't of Health & Human Servs. & Ctrs. for Medicare & Medicaid Servs.*, 874 F.3d 287 (D.C. Cir. 2017).

[17] *United States v. Philip Morris USA Inc.*, 566 F.3d 1095, 1132 (D.C. Cir. 2009) (per curiam) (quoting *SEC v. Savoy Indus., Inc.*, 587 F.2d 1149, 1168 (D.C. Cir. 1978)) *United States v. Regenerative Scis.*, LLC, 741 F.3d 1314 (D.C. Cir. 2014).

[18] *Allied Chemical Corp. v. Daiflon, Inc.*, 449 U.S. 33, 34 (1980).

[19] *Northern States Power Co. v. U.S. Dep't of Energy*, 128 F.3d 754, 758 (D.C. Cir. 1997)

can provide the relief sought, of aiding Ms. Muthana, as a United States citizen, in her return to the United States with her young son.  Therefore, where mandamus action is sought in this matter, it is appropriate because the United States government is the only one able to provide the remedy needed, and to which Plaintiff shows his daughter and minor grandson are justly entitled.

## III.   ARGUMENTS AND AUTHORITIES

### A.  Having previously recognized Hoda Muthana as a citizen by birthright, the United States may only revoke its recognition of her citizenship through judicial proceedings.

The Fourteenth Amendment to the U.S. Constitution declares that "all persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and the State wherein they reside."[20]  The U.S. Supreme Court has held that where an individual is born in the United States, and is therefore an American citizen, "neither the Congress, nor the Executive, nor the judiciary, nor all three in concert" is able to strip away that right.[21]

1.   Under the plain language of the Fourteenth Amendment, Ms. Muthana should be presumed by the Court to be a United States citizen.

Hoda Muthana was born in Hackensack, New Jersey on October 28, 1994, satisfying the requirement under the Fourteenth Amendment of birth "in the United States". The only conceivable bar to her citizenship is the question of whether she met the second prong of the Fourteenth Amendment, the jurisdictional prong, at the time of her birth.

Prior to her birth, her father Ahmed Ali Muthana served as a diplomat to the United Nations for the Permanent Mission of Yemen from October 15, 1990 to September 1, 1994.[22]  During his

---

(quoting *Council of and for the Blind of Delaware Cty. Valley, Inc. v. Regan*, 709 F.2d 1521, 1533 (D.C. Cir. 1983) (en banc)).

[20]  U.S. Const. Amend. XIV.

[21]  *Mitsugi Nishikawa v. Dulles*, 356 U.S. 129, 138, 78 S. Ct. 612, 618, 2 L. Ed. 2d 659 (1958).

[22]  Mr. Muthana stated in his Declaration that he was required to return his diplomatic credentials and perform no further duties after June 1, 1994.  The United States Permanent Mission to the United Nations, however, indicated in

service as a diplomat, Mr. Muthana and the family members of his household enjoyed full diplomatic immunity and thus were not within the jurisdiction of the United States.[23]   However, after Mr. Muthana's discharge from his diplomatic position, Mr. Muthana and the members of his household chose to remain in the United States and seek lawful permanent admission, thereby subjecting himself and his household members to United States jurisdiction.[24]

Under the Vienna Convention for Diplomatic Relations ("VCDR"), which is applicable to the United Nations diplomats,[25] a diplomat's immunity ceases upon termination from the position. Interpretations of Article 15 and Article 39.2, however, provide that the diplomatic immunity extends until the diplomat leaves the country after termination, or after a reasonable amount of time for the diplomat's exit from the country has expired.[26] Ordinarily, 30 days is considered a reasonable amount of time to leave the country if the diplomat so intends.[27]   This 30 day time period expired for Mr. Muthana and his family no later than October 1, 1994.  The intent of this provision is to provide the opportunity for the diplomat to leave the country without prosecution. It is not intended to be long term.[28]   In Mr. Muthana's case, his actions evidence that he had no intent to leave the country, nor did any of his family members, so arguably his diplomatic immunity would end with the termination of his position and end of his official duties, since extending it would not serve the intended purpose of protecting diplomats for the duration of acts carried out

---

October 2004 that the Mission's records show that Mr. Muthana continued to hold a diplomatic position until September 1, 1994.
[23] *See* Doc. 1-6; *see also* 8 U.S.C. § 1401(a); Section 15 of the Headquarters Agreement between the United States and the United Nations (Public Law 357 – 80th Congress).
[24] Mr. Muthana's spouse had previously subjected herself to jurisdiction of the United States on July 7, 1994 by way of application for lawful permanent resident status pending adjudication, which was separate and apart from her prior diplomatic entrance. *See* 8 C.F.R. § 264.2; *see also* USCIS Form I-508.
[25] http://legal.un.org/ilc/texts/instruments/english/conventions/9_1_1961.pdf (last visited February 26, 2019).
[26] *Id.* at Articles 15, 39.2 (creating residual immunity for a reasonable amount of time after a diplomat's position ends).
[27] *United States v. Guinand*, 688 F. Supp. 774, 775 (D.D.C. 1988).
[28] *See, e.g.*, *Raya* v. *Clinton*, 703 F. Supp. 2d 569 (W.D. Va. 2010).

in their official capacity.  In any event, Mr. Muthana's diplomatic immunity expires no later than October 1, 1994.

Accordingly, at the time of Hoda Muthana's birth on October 28, 1994, she was subject to the jurisdiction of the United States, thereby fulfilling the second prong of the requirement for birthright citizenship under the Fourteenth Amendment.

2. The United States' subsequent issuance of a passport to Ms. Muthana in 2005 constitutes de facto recognition by the United States of her birthright citizenship under the Fourteenth Amendment.

In the fall of 2004, Mr. Muthana applied for a passport for his then minor daughter Hoda.[29] In order to issue a passport, the United States Department of State had to be satisfied that Hoda Muthana was a United States citizen entitled to a U.S. passport.[30]   The Department of State was not immediately satisfied as to Ms. Muthana's right to citizenship based solely on her birth certificate, because of her father's previous diplomatic status.  Accordingly, prior to issuing her a passport, the United States required Mr. Muthana to provide additional documentation proving he was not serving in a diplomatic position for which immunity attached at the time of her birth.  To satisfy this requirement, Mr. Muthana sought and obtained a letter from the United States Permanent Mission to the United Nations[31]  indicating its knowledge that the term of his service had ended no later than September 1, 1994.[32]   In January 2005, the United States issued Ms. Muthana a United States passport. In 2014, it renewed her United States passport.

---

[29] At this time, Ahmed Ali Muthana and his wife, as well as Ms. Muthana's older siblings, had been granted permanent residency in the United States, but retained Yemeni passports.  They later became naturalized citizens, in or about 2009.

[30] 22 U.S.C. § 212: "No passport shall be granted or issued to or verified for any other persons than those owing allegiance, whether citizens or not, to the United States." See also 26 Ops. U.S. Att'y Gen. 376, 377 (1907).

[31] The United States Mission to the United Nations ("USUN") serves as the United States' delegation to the United Nations. USUN was created in 1947 to assist the President and the Department of State in conducting United States policy at the United Nations.  https://usun.state.gov/ (last visited February 28, 2019).

[32] Doc. 1-5, October 18, 2004 Letter from the Minister Counselor, Host Country Affairs, United States Mission to the United Nations (stating that information officially provided by the United Nations Office of Protocol and reflected in the USUN records indicates that Mr. Muthana's diplomatic position ended September 1, 1994).

Under 22 U.S.C. § 2705, issuance of Ms. Muthana's passport had the "same force and effect as proof of United States citizenship as certificates of naturalization or of citizenship issued by the Attorney General or by a court having naturalization jurisdiction."[33] "To be sure, 22 U.S.C. § 2705 provides that a passport has the "same force and effect as proof of United States citizenship as certificates of naturalization or of citizenship issued by the Attorney General or by a court having naturalization jurisdiction."[34]

> 3. <u>Ms. Muthana must be considered a United States citizen absent judicial process initiated by the United States and supported by clear and convincing evidence.</u>

The U.S. Supreme Court has long recognized the core liberty and property interests inherent in the loss of U.S. citizenship.  "To take away a man's citizenship deprives him of a right no less precious than life or liberty, indeed of one which today comprehends those rights and almost all others."  *Klapprott v. United States*, 335 U.S. 601, 616, 69 S. Ct. 384, 391, 93 L. Ed. 266, 278 (1949) (J. Rutledge, Concurring).

As explained by Justice Goldberg in *Kennedy v. Mendoza-Martinez,*

> [d]eprivation of citizenship -- particularly American citizenship, which is "one of the most valuable rights in the world today," – has grave practical consequences. An expatriate who … had no other nationality becomes a stateless person -- a person who not only has no rights as an American citizen, but no membership in any national entity whatsoever. Such individuals as do not possess any nationality enjoy, in general, no protection whatever, and if they are aggrieved by a State they have no means of redress, since there is no State which is competent to take up their case.[35]

---

[33] *Id.*; *see also Kelso v. United States Dep't of State*, 13 F. Supp. 2d 1, 3-4 (D.D.C. 1998).

[34] *Id.* The undisputed fact that Ms. Muthana was issued a passport by the United States distinguishes the facts of her situation from other cases in which individuals have asserted their rights to citizenship, but where that assertion has not been previously recognized by the United States as it has with Ms. Muthana. *See, e.g., Schneiderman v. United States*, 320 U.S. 118, 122-123, 63 S. Ct. 1333, 1335, 87 L. Ed. 1796, 1800-1801 (1947) (addressing the need for substantial due process and clear and convincing evidence, where "the Government seeks to turn the clock back twelve years after full citizenship was conferred upon petitioner by a judicial decree, and to deprive him of the priceless benefits that derive from that status").

[35] *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 160-161, 83 S. Ct. 554, 563, 9 L. Ed. 2d 644, 656 (1963).

The due process afforded under the Fifth Amendment to persons claiming deprivation of the rights of United States citizenship is dependent upon whether the citizenship at issue has been previously recognized by the government, or is being asserted by the individual for the first time.[36] Persons seeking recognition of their citizenship for the first time by the United States, to prevent bar of entry or removal, may raise these issues in administrative hearings, with the right to contest their detention through a habeas corpus claim. In these claims, the individuals bear the burden of establishing their eligibility.

By contrast, the Supreme Court has held, with respect to individuals whose citizenship has been previously recognized by the United States, that

> it does not follow that rights attaching to admitted citizenship may be forfeited without a judicial hearing. To deny the rights of citizenship to one who previously enjoyed them obviously deprives him of liberty . . . . It may result also in loss of both property and life; or of all that makes life worth living. Against the danger of such deprivation without the sanction afforded by judicial proceedings, the Fifth Amendment affords protection in its guarantee of due process of law. The difference in security of judicial over administrative action has been adverted to by this court.[37]

The burdens of proof also differ for those whose citizenship has been previously recognized by the United States. In judicial proceedings seeking revocation of naturalization based on an erroneous grant of the citizenship, the government must show evidence of fraud or misrepresentation of a material fact underlying the applicant's right to citizenship, by clear and convincing evidence.[38] The Supreme Court has also recognized that both birthright and

---

[36] *Chin Yow v. United States*, 208 U.S. 8, 13, 28 S. S. Ct. 201 (1908) (ordering writ of habeas corpus for plaintiff who claimed rights to citizenship); *cf. Ng Fung Ho v. White,* 259 U.S. 276, 284-85, 42 S. Ct. 492, 495 (1922) (articulating the difference in standards for two plaintiffs who were not citizens, with two whose citizenship had been previously recognized by the government) and *Schneiderman*, 320 U.S. at 165 (holding that where citizenship "is granted and where all the express statutory conditions precedent are satisfied we should adhere to the view that the judgment of naturalization is final and conclusive except for fraud").

[37] *Ng Fung Ho*, 259 U.S. at 284-285 (internal citations omitted) (holding that the two petitioners who "arrived at San Francisco, a regularly designated port of entry, were duly taken to the immigration station, and, after a protracted personal examination, supplemented by the hearing of witnesses and the examination of reports of immigration officials, were ordered admitted as citizens" were entitled to judicial proceedings on their citizenship).

[38] *Schneiderman*, 320 U.S. at 123.

naturalized citizens may have their citizenship revoked in a very limited set of circumstances for acts committed as a U.S. citizen,[39] by a preponderance of the evidence.

> a. The process afforded in 22 C.F.R. 51.62(a)(2) provides insufficient due process for revocation of citizenship.

On January 15, 2016, the United States issued a letter addressed to Ms. Muthana at her parents' residence, purporting to revoke her passport pursuant to 22 C.F.R. § 51.62(a)(2).[40]   In purporting to revoke Ms. Muthana's passport, the government acknowledged that it had previously issued two passports to her, and also acknowledged that her father's diplomatic position ended on September 1, 1994.[41] The government nevertheless asserted that the U.S. Permanent Mission to the United Nations, Host Country Affairs Section, had not been officially notified of Mr. Muthana's termination until February 6, 1995, and concluded on that basis that she was not "within the jurisdiction of the United States" at the time of her birth, and therefore not a United States citizen pursuant to the Fourteenth Amendment to the Constitution.[42]

While passports may be suspended under the procedures outlined in Section 51.62(a)(2),[43] those procedures are insufficient to satisfy the due process requirements for revocation of citizenship.  As the Supreme Court unequivocally held in *Ng Fung Ho*, an administrative hearing

---

[39] Birthright citizenship may be revoked under 8 U.S.C. § 1481 for "formal declaration of allegiance to a foreign state or a political subdivision thereof." However, none of the circumstances set out in § 1401 is facially applicable to the facts of this case, as ISIS is not and has not been recognized as a state by the United States, or any country. And, Ms. Muthana's actions do not meet the definition of treason as required by the statute. Apart from § 1481, counsel remains unaware of any statutory process to revoke recognized birthright citizenship.

[40] Section 51.62(a)(2) provides that the Department of State may revoke a previously issued passport if "[t]he passport was illegally, fraudulently or erroneously obtained from the Department; or was created through illegality or fraud practiced upon the Department"; *see also* Doc. 1-6, Ex. D to Plaintiff's Complaint.

[41] Doc. 1-6, Ex. D to Plaintiff's Complaint.

[42] Consistent with the arguments set forth in further detail below regarding the applicability of equitable estoppel to this situation generally, Plaintiff believes that the government should be equitably estopped from now claiming illegality, fraud or error under 22 C.F.R. § 51.62(a)(2), since there are no new facts or evidence of fraud which have been discovered subsequent to the government issuing, and then renewing, a United States passport for Ms. Muthana.

[43] *See Haig v. Agee*, 453 U.S. 280, 309 (1981) (holding that passports may be revoked without a pre-deprivation hearing, reasoning that the critical government national security issues warranted pre-hearing deprivation of the lesser right to travel).

is insufficient for consideration of revocation of citizenship, and instead the proceedings must be judicial.[44]

Apart from *Ng Fung Ho*, Plaintiff's counsel has been unable to find authority setting forth the framework for judicial proceedings under which to consider the government's request to revoke birthright citizenship which had been previously recognized.[45]  The claims here regarding Ms. Muthana's citizenship are constitutional rather than statutory as in *Ng Fung Ho*.  As noted above, neither the legislature, the executive branch nor the courts may revoke citizenship where the requirements of the Fourteenth Amendment have been met.  Necessarily, then, the only case for revocation of citizenship after its recognition would be proof by clear and convincing evidence that the original recognition was the result of fraud by or on behalf of the individual which materially affected the United States' decision to confer recognition of citizenship.  Anything less would place birthright citizenship on a lesser standing than citizenship conferred by naturalization.

In the present case, the Court need look no further than the fact that the United States government has not initiated, much less successfully concluded, any judicial proceedings to revoke Hoda Muthana's citizenship.  In accordance with precedent of the United States Supreme Court, the conclusory declarations of Secretary Pompeo and President Trump are void.  Ms. Muthana is entitled to declaratory and injunctive relief that she be afforded all rights of citizenship until such time as the United States initiates, <u>and</u> successfully concludes, a judicial proceeding to strip Ms. Muthana of her citizenship.

---

[44] *See Ng Fung Ho, supra,* n. 28.
[45] *See supra*, n. 31.

**B. This action, brought by Mr. Muthana on behalf of Ms. Muthana does not serve as an appropriate vehicle for determining her rights of citizenship.**

Plaintiff's counsel anticipates that the government will seek to turn this action into the required judicial hearing meeting the due process requirements of the Fifth Amendment which the government itself has not initiated.  Respectfully, this Court should reject any such attempt, for three reasons.

First, the framework required under the Fifth Amendment for revocation proceedings would be compromised by permitting the government to litigate the factual basis for revocation within the framework of Plaintiff's action for declaratory and injunctive relief and mandamus.  As noted above, denaturalization proceedings require the government to initiate and serve the individual with notice of a civil lawsuit seeking to denaturalize the individual.  And, 60 days prior to initiating any denaturalization suit, the government must serve the individual with a notice letter which provides the individual with an opportunity to address the government's allegations, during all of which the defendant citizen continues to enjoy all rights of citizenship pending the conclusion of that judicial proceeding.  Furthermore, in the revocation hearing, the government must establish a material fraud or omission by clear and convincing evidence.  To permit the United States to incorporate a similar action into these proceedings would flip all of these rights on their head when applied to birthright citizenship.  During the pendency of this proceeding, Ms. Muthana is precluded by executive action from enjoying the rights of citizenship, and is substantially disadvantaged by carrying the burdens of initiation, service and potentially persuasion in this matter.   Accordingly, the text of the Fourteenth Amendment provides no basis for finding that birthright citizenship stands at a lesser level, and is entitled to lesser protections, than naturalization.

Second, the government's purported reason for denying Ms. Muthana's citizenship and her accompanying right to return is facially invalid.  The government's argument, that the failure of

official notification to the USUN until February 6, 1995 precludes Ms. Muthana's citizenship, necessarily relies on a conclusion of law that the Permanent Mission of Yemen's failure to notify the United States Permanent Mission of Mr. Muthana's termination extended his diplomatic immunity and that of his household family members beyond October 1, 1994.  Although the government does not further explain its reasoning, the only possible basis for such an argument is Article 43 of the Vienna Convention.

The United States provides diplomatic immunity in accordance with the Vienna Convention on Diplomatic Relations ("VCDR") for foreign diplomats in the United States.[46]  Similarly, diplomats at the United Nations enjoy the same diplomatic protections afforded to diplomats to the United States, while performing their duties at the United Nations.[47]  Under these protections, a person serving in a diplomatic position as Mr. Muthana did enjoys full diplomatic prvileges and immunities within the United States.  These protections are effective upon performance of duties in the diplomatic position and terminate upon the conclusion of that role.  The language of Article 43 states, with respect to revocation, that "[t]he function of a diplomatic agent comes to an end, inter alia … [o]n notification by the sending State to the receiving State that the function of the diplomatic agent has come to an end".[48]  In 2005, the United States Department of State necessarily interpreted this language to mean that the termination of Mr. Muthana's diplomatic immunity occurred at the time his position ended on September 1, 1994, and at the latest after a reasonable time thereafter, or October 1, 1994.  The United States now apparently has decided to re-interpret Article 43 to extend Mr. Muthana's diplomatic immunity by five months, until the actual receipt of official notification of the termination of his position in February 1995.  This interpretation is

---

[46] http://legal.un.org/ilc/texts/instruments/english/conventions/9_1_1961.pdf
[47] Section 15 of the Headquarters Agreement between the United States and the United Nations (Public Law 357 – 80th Congress); 22 U.S.C.A. § 254a(2)(A) (West 1990); *see also* Doc. 1-5.
[48] *Id*. at 43(a).

an unreasonable post-hoc rationalization which should not survive scrutiny by this Court.  In citizenship proceedings, the Department of State does not have unbridled discretion to solely determine whether notice is sufficient or insufficient; it remains the function of the courts to interpret the law.[49]  The Court need only provide deference to determinations by the Department of State where the determination is a reasonable interpretation of Article 43 under the facts considered.[50]

In this case, extending diplomatic immunity to February 1995 is not a reasonable interpretation of the statute.[51]  Under the government's post hoc interpretation, Mr. Muthana's diplomatic immunity is solely dependent on a foreign state's notification of his termination, and in the absence of a timely notification would allow diplomatic immunity to continue in perpetuity.  This application is clearly not a reasonable interpretation.  Diplomatic immunity exists for the purposes of providing protection for acts performed in the exercise of the diplomatic functions,[52] and extends after termination only for a reasonable period of time to permit the exit of the diplomat.  Extending diplomatic immunity here would serve no purpose and would be contrary to the interests of the host state.  Indeed, if the VCDR is interpreted as suggested by the government, a state would be free to terminate a diplomat from the position which warranted immunity and commit crimes within the United States, still with immunity and in violation of the diplomatic treaty.  This approach cannot be a reasonable interpretation of the VCDR.

---

[49] *Vulcan Iron Works v. Polish American Machinery Corp.*, 479 F. Supp. 1060, 1067-68 (S.D.N.Y. 1979).

[50] *Iceland S.S. Co. v. United States Dep't of the Army*, 201 F.3d 451, 458 (D.C. Cir. 2000) (holding that a court should "defer to [the agency's] reasonable interpretation"); *see also Ali v. Dist. Dir.*, 209 F. Supp. 3d 1268, 1277 (S.D. Fla. 2016) (examining citizenship in light of the timing of a parent's prior diplomatic immunity, and noting "the Court must determine whether the Government has met its burden to establish that the State Department properly afforded Petitioner diplomatic immunity nearly 32 years ago").  Ultimately, the court in Ali found that the United States' interpretation of when the parent had diplomatic immunity was not a reasonable interpretation.  *Id*. at 1278 and n. 7.

[51] Even if the Court were to permit evidence regarding the government's interest seeking revocation, the government should be required to prove, after initiating a proper revocation proceeding, whether it had other <u>actual</u> notice of Mr. Muthana's termination of his position.

[52] *Swarna v. Al-Awadi*, 607 F. Supp. 2d 509, 516-17 (S.D.N.Y. 2009); *see also* Art. 39.2 of the VCDR.

The Vienna Convention on the Laws of Treaties states that where a nation breaches a term of a treaty, it alleviates the host nation's obligations with respect to the breach.[53]  In this case, Yemen would have been in breach of its obligations to timely notify the United States of the end of Mr. Muthana's position upon termination.  Under the best case scenario for the government, Yemen breached its duty to notify the United States.  That breach relieves the United States of its obligation to continue diplomatic immunity to Mr. Muthana and his family beyond the terms of his employment.  To interpret the treaty any other way is to open the United States up to a wide range of malicious conduct by a malicious state.  The government's interpretation would permit a nation to terminate an individual from a diplomatic position, then instruct that individual to commit crimes of espionage, or even simple acts of violence against United States citizens and residents, with immunity from prosecution.  This cannot reasonably be the law.  Instead, the 2004 determination of the United States Permanent Mission to the United Nations that Mr. Muthana's position terminated on September 1, 1994 is the more reasonable interpretation.

Third, in any event, the United States should be equitably estopped from now disputing Ms. Muthana's citizenship based on its earlier determination.  The doctrine of estoppel requires a showing that: (1) there was a "definite" representation to the party claiming estoppel; (2) the party relied on its adversary's conduct to his detriment; and (3) the reliance on the representation was "reasonable."[54]  Equitable estoppel is available against the government in the extraordinary circumstances presented here.  The case for estoppel against the government requires proof of both the traditional elements of the doctrine as well as "a showing of an injustice . . . and lack of undue

---

[53] http://legal.un.org/ilc/texts/instruments/english/conventions/1_1_1969.pdf (last visited February 28, 2019).

[54] *Graham v. SEC*, 222 F.3d 994, 1007, 343 U.S. App. D.C. 57 (D.C. Cir. 2000) (quoting *Heckler v. Community Health Servs.*, 467 U.S. 51, 59, 81 L. Ed. 2d 42, 104 S. Ct. 2218 (1984)).

16

damage to the public interest." [55]   A showing of injustice requires a demonstration that the government and/or its agents "engage[d] -- by commission or omission -- in misrepresentation or concealment, or, at least, behave[d] in ways that have or will cause an egregiously unfair result." [56]

As set forth above, the United States, in recognition of Ms. Muthana's birthright citizenship, granted Ms. Muthana a United States passport in January 2005.  Prior to issuing her passport, the United States was necessarily aware of the fact that Yemen had delayed in its duty to notify the United States Permanent Mission to the United Nations of Mr. Muthana's termination, because the office that in 2004 certified his termination date is the same office to which Yemen would have made the notification.  The United States nevertheless recognized that Mr. Muthana's termination placed Mr. Muthana and his family members within the jurisdiction of the United States at the time of Ms. Muthana's birth.  Mr. Muthana and his daughter relied on this representation, and as a result did not take further action to procure or clarify her status in the United States.   Further, reliance on the issuance of a United States passport, issued by the United States government, was reasonable on the part of Plaintiff and Ms. Muthana.   There is no evidence that Mr. Muthana or his daughter (who was a minor at the time relevant to this claim) acted in bad faith or presented anything but accurate information to the United States.  The mere fact that Yemen may have delayed in providing notice to the United States was beyond Mr. Muthana's control and knowledge, and he could make no representation to that effect.  Instead, he simply procured a letter from the United States indicating his term of service.

---

[55] *Hertzberg v. Veneman*, 273 F. Supp 2d 67, 83, , quoting *ATC Petroleum, Inc. v. Sanders*, 860 F.2d 1104, 1111 (D.C. Cir. 1988).

[56] *Grumman Ohio Corp. v. Dole*, 776 F.2d 338,  347 (D.C. Cir. 1985) (quoting *General Accounting Office v. General Accounting Office Personnel Appeals Board*, 225 U.S. App. D.C. 350, 698 F.2d 516, 526 n.57 (D.C. Cir. 1983)).

The actions of the United States, in contrast, are in bad faith and would create an injustice which does not serve the public interest. The United States was necessarily aware of all relevant facts at the time that it issued Ms. Muthana a U.S. passport in January 2005.[57] The failure of the United States to raise a specific objection precluded Mr. Muthana from applying for legal residency and eventual naturalization for Ms. Muthana, as he and his spouse had done for their older children born prior to their father's loss of diplomatic status, and which would have been within Ms. Muthana's rights. The timing of the United States' objection to Ms. Muthana's citizenship further demonstrates bad faith.  The government did not raise objections to her citizenship until over a year after Ms. Muthana left the United States, and had allegedly associated herself with ISIS.  Rather than pursue criminal charges against Ms. Muthana, the government instead sought to sanction her by revisiting and revising its previous determination despite the absence of any new or material facts underlying its earlier decision.  To permit this action is to countenance injustice. Whatever Ms. Muthana's crimes may be, "the deprivation of citizenship is not a weapon that the Government may use to express its displeasure at a citizen's conduct, however reprehensible that conduct may be."[58]  Finally, public interest is not served by permitting the government to revisit its earlier recognition of Ms. Muthana's citizenship here.  Ms. Muthana's case may be the most public, but she is not the only case where the United States, if permitted, may rescind its earlier determinations of citizenship without new facts.  Indeed, opening the door to allow the United States to reconsider recognition of citizenship without new facts or a requisite

---

[57] The Section cited by the government in its January 15, 2016 letter is the U.S. Permanent Mission to the United Nations, Host Country Affairs Section.  This is the same Section which signed the letter attached to the Complaint as Exhibit C, and provided by Mr. Muthana in 2005 to the United States Department of State: the United States Mission to the United Nations, Host Country Affairs.  Despite claiming in 2016 that the Host Country Affairs Section did not have knowledge of Mr. Muthana's termination from his diplomatic position until February 1995, the Minister Counselor for Host Country Affairs, Russell F. Graham, signed the letter at Exhibit C on October 18, 2004, recognizing that the records of the United States Mission to the United Nations reflect that Mr. Muthana's diplomatic position ended on September 1, 1994. *See* Doc. 1-5, Ex. C to Plaintiff's Complaint.

[58] *Trop v. Dulles*, 356 U.S. 86, 92, 103, 78 S. Ct. 590, 599, 2 L. Ed. 2d 630, 644 (1958).

showing of fraud is to open the door for the United States to wage an administrative pogrom against those persons whom it considers undesirable, re-opening the decision to recognize their citizenship in the absence of new or material information.

For the reasons set forth above, Plaintiff respectfully requests that this Court forego any request by the government to morph this proceeding into a revocation hearing of Ms. Muthana's citizenship, and instead grant her declaratory relief which finds her to presently be a United States citizen, without the need for further proceedings at this time.

### C. Likewise, Ms. Muthana's son is entitled to a presumption of U.S. citizenship by virtue of birth.

As set forth above, Hoda Muthana was born in the United States, after her father's role as a diplomat ended, and she is therefore a United States citizen. Mr. Muthana's grandson, therefore, is entitled to United States citizenship by acquisition at the time of his birth. 8 U.S.C. § 1401(g).

For the reasons set forth above and incorporated herein by reference, Ms. Muthana remained a United States citizen at the time of her son's birth, because the United States had neither initiated, nor received a favorable ruling in, a judicial proceeding seeking to revoke her citizenship.[59]

While Ms. Muthana, or potentially someone else on behalf of her young son, will need to file the report of her son's birth as a United States citizen born abroad, that is not needed at this stage, where he still retains the presumption of the right to citizenship.[60] Furthermore, exhaustion of this particular administrative step should not be required at this time because the statements

---

[59] *Ng Fung Ho*, 259 U.S. at 284-285; *Schneiderman*, 320 U.S. at 122-123.
[60] *See* Form DS 2029; 8 U.S.C. § 1401(g); *see also Sessions v. Morales-Santana*, 582 U.S. ___, 137 S.Ct. 1678 (2017).

made recently by Secretary Pompeo and President Trump show that this exercise would be futile given the government's current stance.[61]

Therefore, Plaintiff, on behalf of Minor John Doe, seeks a declaratory judgment consistent with the law, that he is entitled to a presumption of United States citizenship due to his birth to a mother who is a United States citizen.

### D. Mandamus relief compelling the United States to use good faith efforts to repatriate Ms. Muthana, with her son, is appropriate.

American citizens have an absolute right to return to their home country. *See Tuan Anh Nguyen v. I.N.S.*, 533 U.S. 53, 67, 121 S. Ct. 2053, 2062, 150 L. Ed. 2d 115 (2001) (acknowledging the absolute right of United States citizens to enter its borders); *see also Worthy v. United States*, 328 F.2d 386, 394 (5th Cir. 1964) ("We think it is inherent in the concept of citizenship that the citizen, when absent from the country to which he owes allegiance, has a right to return, again to set foot on its soil").

1. <u>Having revoked Ms. Muthana's passport, the United States government is now obligated to assist in her travel to return to the United States.</u>

A United States citizen has the unequivocal right to enter the United States.  The Supreme Court has described the right of an American citizen to return to the United States from abroad as "absolute."[62]    Although the United States may be within its rights to lawfully revoke Ms. Muthana's passport while she is out of the country, the revocation may not serve as an effective bar to return to the United States.[63]  A valid passport is a necessity for international travel.  Without a passport, Ms. Muthana is unable to leave Syria, enter another country, or even travel through other countries as necessary to return to the United States.   In Ms. Muthana's case, travel is

---

[61] *See* notes 9, 10 and 11, *supra.*
[62] *Nguyen v. Immigration and Naturalization Serv.*, 533 U.S. 53, 67, 121 S. Ct. 2053, 150 L. Ed. 2d 115 (2001).
[63] *Newton v. INS*, 736 F.2d 336, 343 (6th Cir. 1984) (noting that citizens "have the right to return to this country at any time of their liking").

impossible: if she were to attempt travel on the passport which the United States has revoked, doing so would constitute a felony.[64] As the court observed in *Worthy*, "[w]e do not think that a citizen, absent from his country, can have his fundamental right to have free ingress thereto subject to a criminal penalty if he does not have a passport. The citizen … cannot, we think, be required to choose between banishment or expatriation on the one hand or crossing the border on the other hand, being faced with criminal punishment and the loss of some of the rights and privileges of citizenship as a felon."[65]   The United States, however, is not free to leave her in limbo in Syria. "At some point, governmental actions taken to prevent or impede a citizen from reaching the border infringe upon the citizen's right to reenter the United States."[66]   In this case, to cure the infringement requires that the government use all reasonable and good faith efforts to affect her return, including furnishing her with transportation and travel documents in order to permit her re-entry.   Accordingly, because the United States has revoked Ms. Muthana's passport, this Court should order the government to affect her return to the United States, including but not limited to the use of military or other government aircraft in the event that the government's actions prevent her from flying on civilian aircraft.

2.   <u>Ms. Muthana and her son's detention in a refugee camp in Syria does not relieve the United States from its duty to make good faith efforts to secure their release and return</u>.

Seeking Ms. Muthana and her son's release from detention in the Syrian refugee camp is consistent with the obligations of the United States under the Fourth Geneva Convention Relative to the Protections of Civilian Persons in Time of War.   The Fourth Geneva Convention applies to

---

[64] *See* 18 U.S.C. § 1544.
[65] *Worthy*, 328 F.2d at 394.
[66] *Mohamed v. Holder*, 995 F. Supp. 2d 520, 536-537 (D. Or. 2014).

Ms. Muthana and her son's present situation.[67]   Under Articles 4 and 5 of the Fourth Geneva

Convention, Ms. Muthana and her young son, in the absence of evidence that they directly took

part in armed hostilities or engaged in espionage, sabatoge or other direct hostilities, are protected

persons.[68]   As foreign nationals, Ms. Muthana and her son are further covered by Article 48 of the

Fourth Geneva Convention.   Article 48 specifies that "protected persons who are not nationals of

the Power whose territory is occupied, may avail themselves of the right to leave the territory

subject to the provisions of Article 35, and decisions thereon shall be taken according to the

procedure which the Occupying Power shall establish in accordance with the said article."   Article

35 requires the detaining state to permit the departure of protected persons upon application, unless

it would be contrary to the security interests of the detaining state.[69]   While this Court has no

jurisdiction over the detaining power, or authority to compel the release of Ms. Muthana and her

son, this Court may order the United States to use all reasonable and good faith efforts consistent

---

[67] www.un.org/en/genocideprevention/documents/atrocity-crimes/Doc.33_GC-IV-EN.pdf. Over 130 countries have signed the Geneva Conventions of 1949, including Syria, Iran, Turkey, Russia and the United States.  The United States signed the Geneva Conventions in 1949, which were then ratified by the Senate in 1955.  Article 2 of that Convention specifies that it "shall apply to all cases of declared war or of any other armed conflict which may arise between two or more of the High Contracting Parties, even if the state of war is not recognized by one of them."  In this case, the Syrian conflict at present has involved multiple High Contracting parties, including the United States, Iran, Russia, and Turkey, all of whom have engaged in armed hostilities within the context of this conflict; accordingly, the Syrian conflict constitutes armed conflict within the scope of the contract, to which the full scope of the Geneva Conventions.  The United States Supreme Court has previously acknowledged the legitimacy of invoking the Geneva Convention in order to challenge wartime conduct and sustain fundamental liberties. *See Hamdan v. Rumsfeld*, 548 U.S. 557, 126 S.Ct. 2749, 164 L.Ed. 2d 723 (2006) (recognizing that it is permissible for a foreign national to invoke the Geneva Conventions in order to challenge procedures used by military commissions during his criminal trial).

[68] *See* Article 4, stating that "persons protected by the Convention are those who at a given moment and in any manner whatsoever, find themselves, in case of a conflict or occupation, in the hands of a Party to the conflict or Occupying Power of which they are not nationals."  *See also* Article 5, excepting persons "definitely suspected of or engaged in activities hostile to the security of the State," and defining such persons as a "spy or saboteur, or as a person under definite suspicion of activity hostile to the security of the Occupying Power."
 www.un.org/en/genocideprevention/documents/atrocity-crimes/Doc.33_GC-IV-EN.pdf.

[69] There is no reason to believe that the Syrian Democratic forces would oppose the departure of Ms. Muthana or her son upon application, as the Syrian Democratic forces have repeatedly permitted Western news media to interview Ms. Muthana in order to communicate her desire to return to the United States.  Permitting these interviews is not consistent with a desire to retain her for security reasons. *Compare Doe v. Mattis*, 889 F.3d 745, 748 (D.C. Cir. 2018) (holding that the Executive branch cannot transfer a United States citizen from one foreign nation to another, if the citizen seeks return to the United States).

with its treaty obligations under the Geneva Conventions to affect their return.  Indeed, the United

States is urging other powers to repatriate the return of their citizens similarly detained. [70]  Plaintiff

simply asks that the United States follow its own advice, as it is consistent with all applicable laws.

> **E.  Plaintiff Ahmed Ali Muthana is entitled to declaratory relief permitting him to provide necessary financial support for his daughter and grandson to cover living expenses until their return to the United States, as well as to cover the expenses for that return.**

18 U.S.C. § 2339B prohibits providing material support or resources to designated terrorist

organizations.[71, 72]  In relevant part, Section 2339B states that it is unlawful to "knowingly provide

material support or resources to a foreign terrorist organization, or attempt or conspire to do so."[73]

Resources include monetary support.  *Id.*  Under the terms of § 2339B, it is irrelevant what the

monetary support is intended to be used for a lawful purpose.  *See Holder v. Humanitarian Law

Project*, 561 U.S. 1 (2010) (holding that providing resources in the form of training on

humanitarian law principles to a terrorist organization constituted material support in violation of

§ 2339B).  In determining that § 2339B did not unconstitutionally infringe on the rights of the

plaintiffs under the First Amendments, the Supreme Court declined to consider § 2339B's potential

infringement on other constitutional rights, holding that "with respect to these claims that

gradations of fact or charge would make a difference as to criminal liability, and so adjudication

of the reach and constitutionality of the statute must await a concrete fact situation."[74]

---

[70] On February 4, 2019, the U.S. Department of State published a press release stating that "the United States calls upon other nations to repatriate and prosecute their citizens detained by the [Syrian Democratic Forces]." https://www.state.gov/r/pa/prs/ps/2019/02/288735.htm (last visited February 21, 2019).

[71] 18 U.S.C. § 2339B.

[72] 18 U.S.C. § 2339A is not applicable in this situation because Mr. Muthana seeks only to provide resources to his daughter to help her and his grandson get home safely, and not to aid in a conspiracy to damage or destroy property outside the United States.

[73] *Id.*

[74] *Id.*

In this case, Mr. Muthana desires to furnish his daughter with funds with which she may effectively exercise her constitutional right to return to the United States, with her young son, and until such return may be affected, to provide her with funds necessary for her survival and that of her son. Although Ms. Muthana is no longer under the direction and control of a terrorist organization, and the funds clearly would not be utilized to fund any terrorist organizations, Mr. Muthana is reasonably deterred by the statement by the Secretary of State that Ms. Muthana "is a terrorist." Mr. Muthana therefore seeks declaratory judgment from this Court, permitting him to provide these funds to his daughter. These funds are necessary to exercise core constitutional rights as set forth above. Indeed, without them she may not be able to vindicate her constitutional rights. More importantly, unlike the facts in *Humanitarian Law*, Ms. Muthana's return to U.S. authorities in no way benefits a terrorist organization. Funds for the survival of Ms. Muthana and her son will not benefit any terrorist organization directly, nor will they provide an indirect benefit to any terrorist organizations. Instead, what they will do is provide means for Ms. Muthana to return to the United States and face justice for any crimes she may have committed. Accordingly the concerns raised by *Humanitarian Law* regarding the fungible nature of aid are not applicable here, and declaratory relief is appropriate in favor of Mr. Muthana.

## IV.   CONCLUSION

For the reasons set forth above, Plaintiff Ahmed Ali Muthana, on behalf of himself and as Next Friend for his daughter Hoda Muthana and his grandson Minor John Doe (A.M.) prays that this Court grant the relief requested herein, in the form of declaratory relief that Ms. Muthana is a United States citizen and retains that presumption of citizenship unless and until proven otherwise by clear and convincing evidence in a judicial proceeding; declaratory relief that Minor John Doe is entitled to a presumption of citizenship; injunctive relief preventing the United States from taking any further action to revoke the citizenship of Ms. Muthana or, by acquisition, the presumed

24

citizenship of Minor John Doe; mandamus relief compelling the United States to use all reasonable and good faith efforts to affect the return of Ms. Muthana and her young son to the United States; and declaratory relief that Plaintiff Ahmed Ali Muthana will not violate § 2339B by providing funds to his daughter for the return of his daughter, with his grandson, to the United States, or for their necessary survival while they await return.

Respectfully submitted,

/s/ *Charles D. Swift*
Charles D. Swift
D.C. ID No. 987353
Texas Bar No. 24091964
cswift@clcma.org
Christina A. Jump
D.C. ID No. TX151
Texas Bar No. 00795828
cjump@clcma.org
Constitutional Law Center for
Muslims in America
833 E. Arapaho Rd, Suite 102
Richardson, TX  75081
Phone: (972) 914-2507
Fax: (972) 692-7454

**CERTIFICATE OF SERVICE**

The undersigned counsel hereby affirms that the foregoing will be served on all counsel of record via ECF filing on this 28th day of February, and served on all listed Defendants.

/s/ *Charles D. Swift*
Charles D. Swift