UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

AHMED ALI MUTHANA, individually and as next friend of Hoda Muthana and Minor John Doe initials A.M.,

    *Plaintiff*,

  v.

MICHAEL POMPEO, *et al.*,

    *Defendants*.

Civil Action No. 1:19-cv-00445-RBW

### UNOPPOSED MOTION OF IMMIGRATION REFORM LAW INSTITUTE FOR LEAVE TO FILE AMICUS CURIAE BRIEF IN SUPPORT OF DEFENDANTS

Pursuant to Local Rule 7, the Immigration Reform Law Institute ("IRLI") respectfully asks this Court for leave to file an *amicus curiae* brief in support of Defendants. IRLI has contacted counsel for both parties; counsel for Plaintiff stated that Plaintiff takes no position on this motion, and Defendants' counsel consented to IRLI's filing an *amicus* brief.

IRLI is a non-profit 501(c)(3) public interest law firm dedicated to litigating immigration-related cases on behalf of, and in the interests of, United States citizens and lawful permanent residents, and also to assisting courts in understanding and accurately applying federal immigration law. IRLI has litigated or filed *amicus curiae* briefs in a wide variety of immigration-related cases, including *Wash. All. of Tech. Workers v. U.S. Dep't of Homeland Sec.*, 74 F. Supp. 3d 247 (D.D.C. 2014); *Save Jobs USA V. U.S. Dep't of Homeland Sec.*, No. 16-5287 (D.C. Cir. filed Sept. 28, 2016); *Keller v. City of Fremont*, 719 F.3d 931 (8th Cir. 2013); and *Texas v. United States*, 787 F.3d 733 (5th Cir. 2015). IRLI is considered an expert in immigration law by the Board of Immigration Appeals, which solicited *amicus* briefs, drafted by IRLI staff, from the organization

IRLI supports, the Federation for American Immigration Reform (FAIR), for more than twenty years. *See*, *e.g.*, Matter *of Silva-Trevino*, 26 I. & N. Dec. 826 (B.I.A. 2016); *Matter of C-T-L-*, 25 I. & N. Dec. 341 (B.I.A. 2010); and *In re Q- T- -- M- T-*, 21 I. & N. Dec. 639 (B.I.A. 1996).

District courts have the "inherent authority" to allow *amici curiae* to participate in litigation. *Youming Jin v. Ministry of State Sec.*, 557 F. Supp. 2d 131, 136 (D.D.C 2008). The Court has "broad discretion" to grant lave to participate as an *amicus*. *Nat'l Ass'n of Home Builders v. U.S. Army Corp of Eng'rs*, 519 F. Supp. 2d 89, 93 (D.D.C. 2007). Generally, leave to file an *amicus* brief is granted when "the information offered is timely and useful" to the court in its disposition of a case, *Ellsworth Assocs. V. United States*, 917 F. Supp. 841, 842 (D.D.C. 1996) (citation omitted), and "'an *amicus* brief should normally be allowed . . . when the *amicus* has unique information or perspective that can help the court beyond the help that lawyers for the parties are able to provide.'" *Youming Jin,* 557 F. Supp. 2d at 37 (quoting *Ryan v. Commodity Futures Trading Comm'n,* 125 F.3d 1062, 1064 (7th Cir. 1997)).

In its *amicus* brief, IRLI provides an argument that supplements Defendants' argument that Hoda Muthana ("Muthana") lacks birthright citizenship. Assuming (as Plaintiff contends and Defendants contest) that Muthana's parents were not diplomats when she was born, it appears from the complaint that they were illegal aliens. If so, Muthana did not acquire citizenship at birth under controlling Supreme Court precedent. Because IRLI's *amicus* brief presents this additional argument, it could prove helpful to the Court.

## **CONCLUSION**

For the foregoing reasons, the instant motion should be granted.

Dated: May 7, 2019                                   Respectfully submitted,

                                                                 s/ Christopher J. Hajec
                                                                 Christopher J. Hajec (DC Bar 492551)
Mark S. Venezia (DC Bar 1047591)
IMMIGRATION REFORM LAW INSTITUTE
25 Massachusetts Avenue NW, Suite 335
Washington, DC 20001
(202) 232-5590
chajec@irli.org
mvenezia@irli.org

*Attorneys for Amicus Curiae*
*Immigration Reform Law Institute*

**CERTIFICATE OF SERVICE**

I hereby certify that on May 7, 2019, the foregoing was served by filing a copy using the Court's ECF filing system, which will send notice of the filing to all counsel of record.

s/ Christopher J. Hajec
Christopher J. Hajec (DC Bar 492551)
Mark S. Venezia (DC Bar 1047591)
IMMIGRATION REFORM LAW INSTITUTE
25 Massachusetts Avenue NW, Suite 335
Washington, DC 20001
(202) 232-5590
chajec@irli.org
mvenezia@irli.org

*Attorneys for Amicus Curiae*
*Immigration Reform Law Institute*

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

AHMED ALI MUTHANA, individually and as next friend of Hoda Muthana and Minor John Doe initials A.M.,

   *Plaintiff*,

  v.

MICHAEL POMPEO, *et al.*,

   *Defendants*.

Civil Action No. 1:19-cv-00445-RBW

**BRIEF OF AMICUS CURIAE IMMIGRATION REFORM LAW INSTITUTE
<u>IN SUPPORT OF DEFENDANTS</u>**

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................................................... II

INTEREST OF *AMICUS CURIAE* ............................................................................................ 1

INTRODUCTION ........................................................................................................................ 1

ARGUMENT ................................................................................................................................ 2

    I.      Birthright citizenship depends on birth in the United States to a United States resident who, at that time, both had permission to be in the United States and owed direct and immediate allegiance to the United States. ................................. 2

           A.    *Birthright citizenship depends on parental allegiance to the United States.* ... 3

           B.    *Birthright citizenship depends on parental permission to be in the United States.* .................................................................................................................. 3

           C.    *Birthright citizenship depends on parental residence in the United States.* ...... 7

    II.     This Court should apply the rule of *Elk* and *Wong Kim Ark* to this case. ............... 8

CONCLUSION ............................................................................................................................. 9

## **TABLE OF AUTHORITIES**

**Cases**

*Elk v. Wilkins*, 112 U.S. 94 (1884) ................................................................................ *passim*

*Fong Yue Ting v. United States*, 149 U.S. 698 (1893) ............................................................ 4, 6, 7

*Jackson v. Virginia*, 443 U.S. 307 (1979) ................................................................................ 5

*Minor v. Happersett*, 88 U.S. 162 (1874) ................................................................................ 5

*Plyler v. Doe*, 457 U.S. 202 (1982) ................................................................................ 6, 7

*Rodriguez de Quijas v. Shearson/American Express, Inc.*, 490 U.S. 477 (1989) .......................... 7

*United States v. Wong Kim Ark*, 169 U.S. 649 (1898) ............................................................ *passim*

**Constitutional Provisions**

U.S. Const. amend. XIV, § 1, cl. 1 ................................................................................ *passim*

U.S. Const. amend. XIV, § 1, cl. 4 ................................................................................ 6

**Other Authorities**

Black's Law Dictionary (7th ed. 1999) ................................................................................ 8

The Concise Oxford Dictionary of Current English (7th ed. 1919) ............................................. 4

The Vienna Convention, art. 37(2) ................................................................................ 8

**INTEREST OF *AMICUS CURIAE***

The Immigration Reform Law Institute ("IRLI") is a non-profit 501(c)(3) public interest law firm dedicated to litigating immigration-related cases on behalf of, and in the interests of, United States citizens and legal permanent residents, and also to assisting courts in understanding and accurately applying federal immigration law.  IRLI has litigated or filed *amicus curiae* briefs in a wide variety of cases.  *See Wash. All. of Tech. Workers v. U.S. Dep't of Homeland Sec.*, 74 F. Supp. 3d 247 (D.D.C. 2014); *Save Jobs USA v. U.S. Dep't of Homeland Sec.*, No. 16-5287 (D.C. Cir. filed Sept. 28, 2016); *Keller v. City of Fremont*, 719 F.3d 931 (8th Cir. 2013); and *Texas v. United States*, 787 F.3d 733 (5th Cir. 2015).  IRLI is considered an expert in immigration law by the Board of Immigration Appeals, and has prepared *amicus* briefs for the Board, at the request of that body, for more than twenty years.  *See*, *e.g.*, *Matter of Silva-Trevino*, 26 I. & N. Dec. 826 (B.I.A. 2016); *Matter of C-T-L-*, 25 I. & N. Dec. 341 (B.I.A. 2010); and *In re Q- T- -- M- T-*, 21 I. & N. Dec. 639 (B.I.A. 1996).

IRLI has contacted counsel for both parties.  Counsel for Plaintiff stated that they take no position on IRLI's motion for leave to file, and Defendants' counsel consented to IRLI's filing this *amicus* brief.  No counsel for a party authored this brief in whole or in part and no person or entity, other than *amicus curiae*, its members, or its counsel, has contributed money that was intended to fund preparing or submitting the brief.

**INTRODUCTION**

This case should be decided pursuant to two seminal Supreme Court cases construing the Citizenship Clause, *United States v. Wong Kim Ark*, 169 U.S. 649 (1898), and *Elk v. Wilkins*, 112 U.S. 94 (1884).  Both cases were decided by the same justice, Justice Gray, and read carefully and properly, together stand for the following rule: if, and only if, one was born in the United States to

1

a United States resident who, at that time, both had permission to be in the United States and owed direct and immediate allegiance to the United States, one is a birthright United States citizen under the Citizenship Clause.

As shown below, this rule disqualifies Hoda Muthana from constitutional birthright citizenship. If, as Plaintiff (Muthana's father) contends, he did not have diplomatic status at the time of Muthana's birth, Muthana's mother also lacked diplomatic status at that time. Based on the allegations in the complaint, neither Plaintiff nor Muthana's mother had any actual lawful admission status when Muthana was born; thus, both of Muthana's parents, if no longer diplomats, were illegal aliens at that time. If Muthana was born to illegal aliens, she did not attain citizenship by birthright under the Fourteenth Amendment.

**ARGUMENT**

**I.     Birthright citizenship depends on birth in the United States to a United States resident who, at that time, both had permission to be in the United States and owed direct and immediate allegiance to the United States.**

*Wong Kim Ark* is often read as standing for, and indeed establishing, the widespread, even conventional view that anyone born on American soil, at least to parents who are not members of a foreign country's diplomatic delegation, part of an invading force, or Indians born in the allegiance of a tribe, enjoys birthright citizenship by virtue of the Fourteenth Amendment.

In fact, however, a careful reading of *Wong Kim Ark*, combined with *Elk*, reveals the true holding of the former to be, though broad, not as extreme as the conventional view: one is a birthright citizen if, and only if, one is born in the geographic confines of the United States to a United States resident who, at the time of one's birth, both had permission to be in the United States and owed direct and immediate allegiance to the United States.

> A.  *Birthright citizenship depends on parental allegiance to the United States.*

An issue in *Elk* was whether an Indian born in the United States in the allegiance of a tribe was a citizen at birth under that clause. The Court held that he was not, explaining:

> [The Citizenship Clause] contemplates two sources of citizenship, and two sources only: birth and naturalization. The persons declared to be citizens are "all persons born or naturalized in the United States, and subject to the jurisdiction thereof." The evident meaning of these last words is, not merely subject in some respect or degree to the jurisdiction of the United States, but completely subject to their political jurisdiction, and owing them direct and immediate allegiance. And the words relate to the time of birth in the one case, as they do to the time of naturalization in the other.

*Elk*, 112 U.S. at 101-102. The Court held that the plaintiff did not owe direct and immediate allegiance to the United States at his birth, because he was born in the allegiance of a tribe. *See Wong Kim Ark*, 169 U.S. at 693 (noting the exception of "children of members of the Indian tribes owing direct allegiance to their several tribes" from Fourteenth Amendment birthright citizenship).

> B.  *Birthright citizenship depends on parental permission to be in the United States.*

. At issue in *Wong Kim Ark* was whether a son born to Chinese subjects while they were domiciled in the United States was a citizen at birth by virtue of the Citizenship Clause. The Court found that he was, explaining:

> The Fourteenth Amendment affirms the ancient and fundamental rule of citizenship by birth within the territory, in the allegiance and under the protection of the country, including all children here born of resident aliens, with the exceptions or qualifications (as old as the rule itself) of children of foreign sovereigns or their ministers, or born on foreign public ships, or of enemies within and during a hostile occupation of part of our territory, and with the single additional exception of children of members of the Indian tribes owing direct allegiance to their several tribes. The Amendment, in clear words and in manifest intent, includes the children born, within the territory of the United States, of all other persons, of whatever race or color, domiciled within the United States. Every citizen or subject of another country, while domiciled here, is *within the allegiance and the protection, and consequently subject to the jurisdiction, of the United States*. His allegiance to the United States is direct and immediate, and although but local and temporary, continuing only so long as he remains within our territory, is yet, in the words of Lord Coke, in Calvin's Case, 7 Rep. 6a, "strong enough to make a natural subject, for if he hath issue here, that issue is a natural-born subject;" and his child, as said

3

> by Mr. Binney in his essay before quoted, "if born in the country, is as much a citizen as the natural-born child of a citizen, and by operation of the same principle." It can hardly be denied that an alien is completely subject to the political jurisdiction of the country in which he resides – seeing that, as said by Mr. Webster, when Secretary of State, in his Report to the President on Thrasher's Case in 1851, and since repeated by this court, "independently of a residence with intention to continue such residence; independently of any domiciliation; independently of the taking of any oath of allegiance or of renouncing any former allegiance, it is well known that, by the public law, an alien, or a stranger born, for so long a time as he continues within the dominions of a foreign government, owes obedience to the laws of that government, and may be punished for treason, or other crimes, as a native-born subject might be, unless his case is varied by some treaty stipulations." Ex. Doc. H.R. No. 10, 1st sess. 32d Congress, p. 4; 6 Webster's Works, 526; United States v. Carlisle, 16 Wall. 147, 155; Calvin's Case, 7 Rep. 6a; Ellesmere on Postnati, 63; 1 Hale P.C. 62; 4 Bl. Com. 74, 92.

*Wong Kim Ark*, 169 U.S. at 693-94 (emphasis added). To the above principles the Court added an important qualification:

> Chinese persons, born out of the United States, remaining subjects of the Emperor of China, and not having become citizens of the United States, are entitled to the protection of and owe allegiance to the United States, *so long as they are permitted by the United States to reside here*; and are 'subject to the jurisdiction thereof,' in the same sense as all other aliens residing in the United States.

*Id.* at 694 (citing, *inter alia, Fong Yue Ting v. United States*, 149 U.S. 698 (1893)) (emphasis added).

Thus, Justice Gray distinguished the plaintiff in *Wong Kim Ark* from the plaintiff in *Elk* by holding that, unlike the allegiance of tribal Indians, the allegiance of foreigners living in the United States, regardless of race or color, was not indirect and non-immediate, but, rather, all those "resident" in or "domiciled" in the United States were, provided that they were permitted to be in the country, "within the allegiance and protection" of the United States, and thus subject to its jurisdiction. *See, e.g., The Concise Oxford Dictionary of Current English* 825 (7th ed. 1919) (defining "so long as" as "with the proviso, on the condition, that").

4

Not to regard the Court as holding permission to be in the country to be a prerequisite for being subject to the jurisdiction of the United States for Citizenship Clause purposes would make nonsense of the argument the Court gave for its judgment, especially according to its own precedents. For example, the Court would then have left open the possibility (which it explicitly foreclosed) that those domiciled within the country without permission to be here were within the allegiance and protection of the United States. Nothing could be further from the truth, then or now; an illegal alien, subject to apprehension, detention, and removal at all times, is hardly within the "protection" of the United States, as the phrase "allegiance and protection" has always been understood. *See, e.g., Minor v. Happersett*, 88 U.S. 162, 165-66 (1874) ("The very idea of a political community, such as a nation is, implies an association of persons for *the promotion of their general welfare*. Each one of the persons associated becomes a member of the nation formed by the association. He owes it allegiance and is entitled to its protection.") (emphasis added).

The Court's proviso clearly is part of its holding, not dicta, under the principle that the Supreme Court may set forth a standard as part of its holding in a case even when the Court finds that the standard has been met in that case. *See, e.g., Jackson v. Virginia*, 443 U.S. 307 (1979) (holding that a federal habeas corpus court must consider whether there was legally sufficient evidence to support a conviction, not just whether there was some evidence, and finding that the prosecution had met the former, higher standard).

Likewise, *Wong Kim Ark* did not hold merely that persons born in this country to persons who had permission to be in the country were birthright citizens, leaving open the question of whether persons born in this country to persons who did not have permission to be in the country were birthright citizens. Rather, the standard it announced and applied, which implies that those born in this country to illegal aliens are not birthright citizens, was and is part of the Court's

5

holding, even though the Court found that Wong Kim Ark met that standard. Any view of "holding" that is more restrictive, at least if applied to the Supreme Court, would rob the Court of its ability to set forth general principles of law to guide lower courts in any case where the general principle it discerned happened to be met.

In any event, that illegal aliens are outside of the protection of the United States had already been held by the Court, under any view of "holding," when *Wong Kim Ark* was decided. Justice Gray himself had so held, while affirming the expulsion of Chinese illegal aliens, in *Fong Yue Ting*, which he cited in *Wong Kim Ark* in support of his qualification:

> Chinese laborers, . . . like all other aliens residing in the United States for a shorter or longer time, are entitled, *so long as they are permitted by the government of the United States to remain in the country*, to the safeguards of the Constitution, and to the protection of the laws, in regard to their rights of person of property, and to their civil and criminal responsibility. But they continue to be aliens, having taken no steps towards becoming citizens, and incapable of becoming such under the naturalization laws; and therefore, remain subject to the power of Congress to expel them, or to order them to be removed and deported from the country, whenever, in its judgment their removal is necessary or expedient for the public interest.

*Fong Yue Ting*, 149 U.S. at 724 (emphasis added).

True, according to current precedent, illegal aliens are "within [the] jurisdiction" of a state, and thus entitled to the equal protection of a state's laws, but that entitlement is not inconsistent with their being liable to deportation. *Plyler v. Doe*, 457 U.S. 202, 215 (1982). This merely geographical sense of "jurisdiction" is far from the complete jurisdiction the *Elk* and *Wong Kim Ark* Courts held was required in the Citizenship Clause. And, though it is also true that the Court in *Wong Kim Ark* stated (in dicta) that "jurisdiction" had a unitary meaning in the Fourteenth Amendment, 169 U.S. at 687, that "jurisdiction" for purposes of the Equal Protection Clause was later held to be merely geographical does not alter *Wong Kim Ark*'s holding that an alien, to be subject to the jurisdiction of the United States under the Citizenship Clause, must be permitted to

6

be in the country. Even today, illegal aliens, subject to apprehension and removal at all times, surely are not within the "allegiance and protection" of the United States in any sense full enough to make them completely subject to the political jurisdiction of the United States, as required in *Elk*. In any event, in *Plyler*, the Supreme Court did not overrule either *Wong Kim Ark* or *Fong Yue Ting*, and no other court may do so. *See, e.g., Rodriguez de Quijas v. Shearson/American Express, Inc.*, 490 U.S. 477, 484 (1989) ("If a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions.").

    C.    *Birthright citizenship depends on parental residence in the United States.*

As shown above, the *Wong Kim Ark* Court held that United States residents and those domiciled in the United States were completely subject to the jurisdiction of the United States. Despite its reliance on English common law, the Court never stated that all persons physically present in the country (with permission) were completely subject to its jurisdiction. Indeed, after recounting the English common-law tradition holding that children even of temporary visitors, if born on English soil, were subjects, and stating that this tradition was embodied in the Citizenship Clause, the Court stated how and to what extent it was embodied in these words:

> The Fourteenth Amendment affirms the ancient and fundamental rule of citizenship by birth within the territory, in the allegiance and under the protection of the country, including all children here born of *resident aliens*, with the exceptions or qualifications (as old as the rule itself) of children of foreign sovereigns or their ministers, or born on foreign public ships, or of enemies within and during a hostile occupation of part of our territory, and with the single additional exception of children of members of the Indian tribes owing direct allegiance to their several tribes.

*Wong Kim Ark*, 169 U.S. at 693 (emphasis added). It is a natural reading of this passage that the Fourteenth Amendment "affirms" this rule to the extent of "including" the children of "resident

7

aliens" in "citizenship by birth," and only to that extent. Certainly, the Court did not reach any broader holding than that the children of resident aliens (who had permission to be in the country) were included in birthright citizenship under the Fourteenth Amendment (subject, of course, to the listed exceptions).

Residence is usually defined as "bodily presence as an inhabitant in a given place." Black's Law Dictionary 1310 (7th ed. 1999). And "inhabit" is defined as "to occupy permanently or habitually as a residence." *Id.* at 786. This concept of residence, though amorphous, appears to be that of the *Wong Kim Ark* Court (which, through approving quotation, speaks of "residence with the intention to continue such residence," 169 U.S. at 693, a use that would make "residence" distinct from and broader than "domicile"), and seems at least clear enough to exclude the children of mere tourists from birthright citizenship under the Citizenship Clause. It would not appear to exclude, however, the children of those who hold longer-term visas, or the children of lawful permanent residents.

**II.     This Court should apply the rule of *Elk* and *Wong Kim Ark* to this case.**

*Elk* and *Wong Kim Ark* have not been overruled by the Supreme Court, and no other court may do so. As interpreted above, they apply to this case as follows:

Plaintiff claims that his diplomatic status was terminated before Muthana's birth, Complaint ¶¶ 18, 19, 21, 26, and that her mother, before Muthana's birth, was granted "admission to the United States on July 7, 1994, pending permanent residency," Complaint ¶ 19. Plaintiff does not allege that he himself was granted lawful admission before Muthana's birth.

The category of "admission… pending permanent residency" does not exist as a legal admission status, and so any "grant" of such status would have been *ultra vires*. Muthana's mother's diplomatic status was based on her being in Plaintiff's household, and terminated when Plaintiff's diplomatic status terminated. Vienna Convention, art. 37(2). If he and Muthana's

8

mother had lost their diplomatic status before Muthana was born, and if neither Muthana's mother nor Plaintiff had been granted any actual legal admission status before Muthana was born, then they both were illegal aliens at that time. If Muthana's parents were illegal aliens at the time of her birth, she is not a citizen.

## **CONCLUSION**

For the foregoing reasons, this Court should apply the rule derived herein from *Elk* and *Wong Kim Ark* to the instant case, finding that Muthana is not an American citizen and dismissing all of Plaintiff's claims for relief.

Dated: May 7, 2019                                                          Respectfully submitted,

s/ Christopher J. Hajec
Christopher J. Hajec (DC Bar 492551)
Mark S. Venezia (DC Bar 1047591)
IMMIGRATION REFORM LAW INSTITUTE
25 Massachusetts Avenue NW, Suite 335
Washington, DC 20001
(202) 232-5590
chajec@irli.org
mvenezia@irli.org

*Attorneys for Amicus Curiae*
*Immigration Reform Law Institute*

**CERTIFICATE OF SERVICE**

I hereby certify that on May 7, 2019, the foregoing was served by filing a copy using the Court's ECF filing system, which will send notice of the filing to all counsel of record.

s/ Christopher J. Hajec
Christopher J. Hajec (DC Bar 492551)
Mark S. Venezia (DC Bar 1047591)
IMMIGRATION REFORM LAW INSTITUTE
25 Massachusetts Avenue NW, Suite 335
Washington, DC 20001
(202) 232-5590
chajec@irli.org
mvenezia@irli.org

*Attorneys for Amicus Curiae*
*Immigration Reform Law Institute*

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| AHMED ALI MUTHANA, individually and as next friend of Hoda Muthana and Minor John Doe initials A.M., <br><br> *Plaintiff*, <br><br> v. <br><br> MICHAEL POMPEO, *et al.*, <br><br> *Defendants*. | Civil Action No. 1:19-cv-00445-RBW |

**ORDER GRANTING MOTION OF IMMIGRATION REFORM LAW INSTITUTE
FOR LEAVE TO FILE AMICUS CURIAE BRIEF**

**THIS MATTER** came before the Court on the Motion of Immigration Reform Law Institute ("IRLI") for Leave to File Amicus Curiae Brief in Support of Defendants, filed pursuant to Local Rule 7(o) of the United States District Court for the District of Columbia. The Court having reviewed the Motion, it is hereby,

**ORDERED AND ADJUDGED** as follows:

1.  The Motion of Immigration Reform Law Institute is **GRANTED**.

DONE AND ORDERED on May _____, 2019.

_____<br>
Honorable Reggie B. Walton<br>
United States District Judge<br>
District of Columbia