# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

|   |   |
|---|---|
| AMANY MOHAMED RAYA, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 7:09-CV-00169 |
| HILLARY RODHAM CLINTON, et al., | ) |
| Defendants. | ) |

**DEFENDANTS' REPLY IN SUPPORT OF DEFENDANTS' MOTION
TO DISMISS, IN PART, AND MOTION FOR SUMMARY JUDGMENT, IN PART**

**INTRODUCTION**

Plaintiff's arguments against dismissal of Counts 1, 2, and 3 attempt to distort the clear statutory framework for judicial review of nationality claims in removal proceedings under 8 U.S.C. § 1252. Plaintiff does not oppose the dismissal of Counts 4 and 5. The Immigration and Nationality Act provides a framework for judicial review of all removal proceedings, including a specific statutory path for review of nationality claims enveloped therein. *See* 8 U.S.C. § 1252(b)(5). This subsection provides subject matter jurisdiction only in the court of appeals for nationality claims in removal proceedings, with transfer jurisdiction to district courts under certain circumstances. 8 U.S.C. § 1252(b)(5)(C). Likewise, the statute invoked by Plaintiff in her Complaint, 8 U.S.C. § 1503, contains exceptions for nationality claims that arose or otherwise are in issue in removal proceedings. These exceptions serve as guideposts to Subsection 1252(b)(5) and work to avoid fragmenting the judicial review framework for removal

1

proceedings, including attempts to circumvent decisions made in removal proceedings by resurrecting prior identical claims.

Plaintiff is currently subject to a removal order issued by Judge David W. Crosland of the Immigration Court in Arlington, Virginia.[1]  (*See* Defendants' Memorandum in Support of the Motions to Dismiss in Part and Motion for Summary Judgment in Part, Dkt. # 23, Exhibit 2, p. 8-10.)  The issue of Plaintiff's nationality arose in her removal proceedings when Plaintiff filed a motion to terminate proceedings using her alleged nationality as her only defense to removal.  The issue was fully briefed, and Judge Crosland issued an Order of the Court on October 28, 2008, finding that Plaintiff was not a U.S. citizen because her father remained in diplomatic status at the time of her birth.  (*Id.* at p. 8-12.)  Furthermore, Plaintiff was afforded a hearing subsequent to the Order where she declined to seek additional relief from the Immigration Court.  (*Id.* at p. 10.)

Plaintiff also was provided written instructions on how she could appeal Judge Crosland's decision to the Board of Immigration Appeals.  (*Id.*)  If Plaintiff had taken advantage of the forum provided before the Board and had remained unsatisfied with the result, she could have appealed to the court of appeals under 8 U.S.C. § 1252(b)(5).  Then, and only if the court of appeals found there was an outstanding factual issue in the nationality claim, would this Court have subject matter jurisdiction over Plaintiff's nationality claim by transfer from the court of appeals.  Thus, Plaintiff has failed to follow the proper channel to find subject matter jurisdiction

---

[1] In their memorandum in opposition to Defendants' motions, Plaintiff's counsel only notes that she moved to terminate these proceedings and that the proceedings concluded.  (*See* Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss in Part and Motion for Summary Judgment in Part ("Plaintiff's Memorandum"), Dkt. #28, p. 2.)  In fact, the motion to terminate was based solely on her nationality claim, and after it was rejected, Plaintiff was ordered removed from the United States.

in this Court, and is attempting to invoke an improper path to subject matter jurisdiction under 8 U.S.C. § 1503(a) by distorting the clear meaning of the statute defining the judicial review of removal proceedings.

Alternatively, this Court should grant Defendants' Motion for Summary Judgment where the sole fact necessary for this Court to decide the motion is not contested, and where Plaintiff's other challenges are immaterial, irrelevant, and lack sufficient evidentiary support.

A.   **The Court Should Grant Defendants' Motion To Dismiss Because 8 U.S.C. §§ 1252(b)(5) and 1503(a) Do Not "Limit" Judicial Review of Nationality Claims, But Channel Nationality Claims To The Court Of Appeals To Avoid Unnecessary And Potentially Contrasting Decisions.**

Defendants agree with Plaintiff that U.S. citizenship by birth is a Fourteenth Amendment right. However, the proper avenue for Plaintiff to exercise her rights is through the framework of 8 U.S.C. §§ 1503 and 1252. Here, Congress enacted a vehicle for nationality claims under the Fourteenth Amendment, which includes a specific provision for nationality claims in removal proceedings. *See* 8 U.S.C. § 1252(b)(5); *see, e.g.*, *Perdomo-Padilla v. Ashcroft*, 333 F.3d 964, 968 (9th Cir. 2003) (reviewing the citizenship claim of an alien in removal proceedings through an analysis of the Fourteenth Amendment and corresponding statutes defining nationality pursuant to the jurisdiction provided under 8 U.S.C. § 1252(b)(5)); *cf. Carrillo-Lozano v. Stolc*, No. CV-07-1861-PHX-GMS, 2009 WL 3818841 (D. Ariz. Nov. 13, 2009) (finding the district court did not have jurisdiction over a Fourteenth Amendment citizenship claim in a habeas petition because the issue involved a final removal order for which 8 U.S.C. § 1252(b)(5) provided exclusive jurisdiction to the court of appeals). Thus, judicial review of Plaintiff's nationality claim is only limited if she fails to pursue the proper path provided by Congress via

Subsection 1252(b)(5) in or following removal proceedings, or Section 1503 outside of removal proceedings.[2]

The judicial review of issues in removal proceedings is complex, but the framework provides for judicial review of Plaintiff's nationality claim. Subsection 1503(a) provides the guideposts to this review process, but the plain language of Section 1252(b)(5) provides that the courts of appeals are the *only* forum for individuals who raise nationality as a defense to removal, unless the circuit court chooses to transfer the case to the district court to address questions of fact. *See* 8 U.S.C. § 1252(b)(5)(C); *Lopez v. Holder*, 563 F.3d 107, 110 (5th Cir. 2009). Thus the Court should dismiss Plaintiff's arguments and grant Defendants' Motion to Dismiss Counts 1, 2, and 3 for lack of subject matter jurisdiction.[3]

### 1. The Ordinary Meaning of the Language in 8 U.S.C. §§ 1503(a) and 1252(b)(5) Precludes this Court From Exercising Jurisdiction over Plaintiff's Nationality Claim.

Plaintiff's interpretation of the jurisdictional bar in the provisions of 8 U.S.C. §§ 1252(b)(5) and 1503 is incorrect. Plaintiff ignores alternative definitions of the terms in question, and similarly fails to appropriately consider the statutory context of 8 U.S.C. §§ 1252(b)(5) and 1503.

---

[2] Contrary to Plaintiff's assertions, two scenarios would provide original jurisdiction under 8 U.S.C. § 1503(a), though neither is found in Plaintiff's Complaint. First, if a nationality claim is truly independent of removal proceedings, then the exceptions in Subsection 1503(a) and the limitations in Subsection 1252(b)(5) would not apply. Second, if removal proceedings are terminated without a final determination on the nationality claim or the nationality claim in removal proceedings is decided in a plaintiff's favor, then any subsequent challenge of a plaintiff's nationality would arise independent of removal proceedings.

[3] Defendants note that the issue of whether a later-occurring removal proceeding where nationality is at issue takes priority over a previous administrative denial of a naturalization claim is novel.

4

Statutory language must be given its "ordinary meaning unless the context counsels otherwise." *McCarthy v. Bronson*, 500 U.S. 136, 139 (1991). Plaintiff first looks to the ordinary meaning of "arose," and concludes that the term must mean "first arose," "to originate from a source," or "to come into being or to attention," such that if a nationality claim *first arose* outside of removal proceedings, then Congress did not preclude a separate claim under 8 U.S.C. § 1503. (*See* Plaintiff's Memorandum, Dkt. #28, p. 6.)[4]

However, Plaintiff's discussion of the ordinary meaning of "arose," fails to consider alternative definitions of the term "arise," such as "[t]o result (from)." Black's Law Dictionary 115 (8th ed. 2004) (offering the exemplary sentence "litigation routinely arises from such accidents"). Other alternative definitions include "[t]o result, issue, or proceed," where the primary definition of the verb "issue" is "[t]o go or come out," and the primary definition of "result" is "[t]o come about as a consequence." The American Heritage College Dictionary, 73 for arise, 721 for issue (3d ed. 1997). Accordingly, another equally valid ordinary meaning of the statutory provision in question would result in a finding that if a nationality claim resulted

---

[4] Plaintiff extensively relies on the same two sentences from *Rios-Valenzuela v. Dept. of Homeland Security*, 506 F.3d 393, 399 (5th Cir. 2007), and *Ortega v. Holder*, 592 F.3d 738, 744 (7th Cir. 2010), to support her proposition of "first arose." However, the issue of prior claims to nationality was not at issue in either case and the significance of the use of the term "first" is mere dictum. Moreover, even where the origination of the nationality claim was not at issue, the Fifth Circuit was reluctant to accept the definition of "first arose," because such interpretation would mean that an individual subject to removal who "first" raised a nationality claim in removal proceedings could never raise the claim under 8 U.S.C. § 1503. *See Rios-Valenzuela*, 506 F.3d at 399 (finding that such an interpretation would "forever hang[] an albatross around the neck of those who first raise citizenship as a defense in a removal proceeding."). Furthermore, Plaintiff miscites *Ortega*'s discussion of "first arose." *See* Plaintiff's Memorandum, Dkt. #28, p. 7, ¶ 3. There, the Seventh Circuit only noted that "if the question of nationality first arises in the context of a removal proceeding," then the plaintiff is required to pursue her claim through the removal proceedings. *See Ortega*, 592 F.3d at 744.

5

from or came up in the course of removal proceedings, then Congress did intend to preclude separate claims under 8 U.S.C. § 1503.

> 2. **When 8 U.S.C. § 1503(a) is Read in the Context of the Judicial Framework of 8 U.S.C. § 1252, this Court Lacks Jurisdiction Over Plaintiff's Claim.**

Where there is any question about the ordinary meaning of the term "arose," in this matter, the context of the term in relation to other statutory provisions at 8 U.S.C. § 1252(b)(5), demonstrates that Defendants' proffered interpretation is proper. To hold to the contrary, and to allow a claim to separately proceed under 8 U.S.C. § 1503 could lead to disparate results. There does not appear to be any disagreement that a plaintiff who raises a nationality claim as a defense to removal may only have that claim heard in the course of removal proceedings and up through the courts of appeal per Subsection 1252(b)(5). However, Plaintiff argues that her nationality claim raised in a prior passport application is wholly independent of a nationality claim later raised in removal proceedings, and that such claim gives rise to a separate claim under Subsection 1503(a). (Plaintiff's Memorandum, Dkt. #28, p. 4.) If this Court accepts Plaintiff's interpretation of the statutory context, then two federal courts could emerge with contrasting views. Under Subsection 1252(b)(5), a court of appeals might consider a plaintiff's nationality claim and affirm a plaintiff's removability via a petition for review of her removal order, and a district court might consider a plaintiff's nationality claim under Subsection 1503 and conclude that a plaintiff is a U.S. national deserving of a passport.

Congress did not intend such a result, and the statutory structure clearly evidences Congress's intent to prioritize removal proceedings and the issues relating to such proceedings. Generally, Subsection 1252(b)(9) provides a bar against district court review of removal orders – and preserves such review to the courts of appeals. 8 U.S.C. § 1252(b)(9). Congress provided

more specific instructions as it applies to nationality claims raised in removal proceedings at Subsection 1252(b)(5), explaining that "[t]he petitioner may have such nationality claim decided *only* as provided in this paragraph," on a petition for review of a final removal order file with the appropriate court of appeals.  8 U.S.C. § 1252(b)(5) (emphasis added).

The leading decisions on Subsection 1503 specifically recognize the primacy of Subsection 1252(b)(5) as it applies to nationality claims raised in removal proceedings.  The *Rios-Valenzuela* and *Ortega* courts concluded that if a plaintiff's nationality claim was considered and rejected in removal proceedings, then the "appropriate" and "exclusive" forum for judicial review of the nationality claim is through 8 U.S.C. § 1252(b)(5).  In *Rios-Valenzuela*, the Fifth Circuit stated "[o]f course, if the person claiming to be a citizen loses in the removal proceedings, the appropriate means for judicial review of his nationality claim is § 1252(b))." *Rios-Valenzuela*, 506 F.3d at 399, n.11.  In *Ortega*, the Seventh Circuit was more adamant:

> Taken together, the exceptions set forth in [8 U.S.C. § 1503(a)] are designed to protect removal proceedings from judicial interference and preserve 8 U.S.C. § 1252 as the exclusive means of challenging a final order of removal.  A party may not frustrate the Government's effort to remove him by instituting an action under 8 U.S.C. § 1503(a) while proceedings are ongoing.  Similarly, a party may not use § 1503(a) to frustrate Congress's effort to channel all appeals from removal proceedings–including those in which the alien raised claims of nationality–through 8 U.S.C. § 1252.

*Ortega*, 592 F.3d at 743-44.

Courts do recognize that a cause of action under 8 U.S.C. § 1503 may again arise after removal proceedings have "run their full course," because "any future nationality claim would not arise in those removal proceedings." *Rios-Valenzuela*, 506 F.3d at 399.  Removal proceedings run their full course in two ways:  either a plaintiff prevails on their nationality claim in removal proceedings and those proceedings are terminated, or a plaintiff is not

successful and pursues appeals of such an unsuccessful claim until a final appeal is rejected under the framework of 8 U.S.C. § 1252 and the plaintiff is removed from the United States.[5] The Fifth Circuit was very clear that a district court should not consider the denial of a nationality claim made outside of removal proceedings while the removal proceedings are underway or after the plaintiff has lost in a removal proceeding where the question was at issue. *Id.*

Accordingly, the Eastern District of New York recently found jurisdiction to consider a nationality claim under Subsection 1503 that was previously raised in removal proceedings. *See Henry v. Quarantillo*, No. 08-cv-1718, 2010 WL 447385 (E.D.N.Y. Feb. 2, 2010). However, the plaintiff there had previously been removed, illegally reentered the United States, had his prior removal order reinstated. *Id.* at *1-2. Only then did he re-file a Form N-600 Application for Certificate of Citizenship. *Id.* The district court found that the only reason the removal proceedings did not preclude the plaintiff's claim under Subsection 1503 was because the latest Form N-600 was filed "well after" the original removal proceedings had ended and plaintiff had presented new evidence. *Id.* at *6.

Accordingly, it would be an absurd result to allow a claim under 8 U.S.C. § 1503(a) for a nationality claim made prior to removal proceedings where the plaintiff unsuccessfully raised the same nationality claim as a defense in subsequent removal proceedings. The interpretation by Defendants does not preclude Plaintiff from ever raising a claim under Subsection 1503 in the

---

[5] A plaintiff who is initially unsuccessful in immigration court and misses the deadline for appeal to the Board of Immigration Appeals can always jointly move the immigration court to reopen or reconsider the courts findings. *See* 8 C.F.R. § 1003.23(b). However, deadlines in the judicial review of removal proceedings are no different than deadlines throughout the judicial system, and missing a deadline for appeal may preclude review options.

8

future. However, this Court should not find jurisdiction over the nationality claim until some time has passed – at least until after the unappealled removal order is executed or until Plaintiff raises a new nationality claim separate from her removal proceedings.

### 3. Plaintiff's Attempts to Analogize the Exceptions to Subsection 1503(a) to Other Provisions with Similar Language are Without Merit.

In analyzing the context of the statutory provisions in question, Plaintiff attempts to argue that her nationality claim was independent and merely collateral to her removal proceedings, and analogizes to authority that admittedly recognizes exceptions that otherwise channel issues raised in removal proceeding to the court of appeals via petitions for review of final removal orders. However, Plaintiff's effort to analogize to *Aguilar v. U.S. Immigration and Customs Enforcement Div. Of Dept. Of Homeland Sec.,* 510 F.3d 1 (1st Cir. 2007), to suggest that Plaintiff's nationality claim did not arise but was independent of her removal proceedings is without merit.[6]

In *Aguilar,* the First Circuit held, in part, that the district court was not precluded from exercising subject matter jurisdiction over plaintiffs' constitutional claims regarding the familial integrity of detained parents who were separated from their children, because such claims were collateral to removal and should have been considered outside the channeling mechanism of the statutory framework for judicial review of removal proceedings. *Id.* at 20-21. In contrast, the *Aguilar* court also held that the district court lacked subject matter jurisdiction over plaintiffs'

---

[6] It is important to note that Plaintiff uses *Aguilar* to interpret the meaning of "arose by reason of" and "in connection with" in 8 U.S.C. § 1503(a), but the words cited in *Aguilar* are from the general channeling subsection in the judicial framework for removal proceedings in 8 U.S.C. § 1252(b)(9). Subsection 1252(b)(9) bars separate claims in district courts for *any* issue raised in removal proceedings, while Subsections 1503(a) and 1252(b)(5) provide a particular exception for nationality claims. Irregardless, *Aguilar* did not adopt the definition of the terms proffered by Plaintiff.

9

right to counsel claims because those claims were not "independent" or "collateral" to issues in the plaintiff's removal proceedings. *Id.* at 13. The court concluded that the issue of right to counsel was an appropriate issue to be raised in removal proceedings and that allowing aliens to ignore the channeling provisions of the statute governing judicial review of removal proceedings "would result in precisely the type of fragmented litigation that Congress sought to forbid" in the separate judicial framework. *Id.* at 14.

Plaintiff's effort to analogize to habeas as a valid basis for jurisdiction over detention claims independent from removal proceedings is similarly without merit. If fact, with regard to nationality claims, Congress has specifically granted district courts exclusive habeas jurisdiction over the issue of whether the detainee is an alien. *See* 8 U.S.C. § 1252(e)(2). The only other exception granted by Congress is that individuals raising nationality claims in the course of their removal proceedings may also raise such claims in criminal proceedings. *See* 8 U.S.C. § 1252(b)(7)(B). Thus, where the exceptions specifically provided by Congress do not apply to Plaintiff, the intent of Congress to require that nationality claims raised in removal proceedings be exhausted in the course of those proceedings is even more clear. *See* 8 U.S.C. § 1252(b)(5).

Here, the issue in Plaintiff's case is not collateral to the issue in her removal proceedings. In fact, it was the *only* defense Plaintiff presented in response to the charge of her removability and directly addressed by the Arlington Immigration Court. Thus, at a minimum, the nationality claim from the passport application "arose in connection with" the removal proceedings because the Plaintiff raised the issue in her removal proceeding and it is the sole issue enveloping all aspects of her case. Plaintiff's nationality claim is not independent of removal proceedings, and finding subject matter jurisdiction for a separate claim would result in precisely the type of fragmentation rightfully avoided by the *Aguilar* court.

**B.    Alternatively, This Court Should Grant Defendants' Motion For Summary Judgment Where Plaintiff Does Not Dispute The Date The Egyptian Embassy Reported Her Father's Duties Were Terminated, And Where Defendants' Are Accordingly Entitled to Judgment As A Matter Of Law.**

Plaintiff offers three categories of responses in opposition to Defendants' Motion for Summary Judgment. She argues that Defendants' Motion for Summary Judgment: (1) fails as a matter of law, (2) should be denied because there are material facts at issue, and (3) should be denied because Plaintiff is entitled to further discovery. None of these arguments have merit, and for the following reasons, the Court should grant Defendants' Motion for Summary Judgment.

First, as noted in Defendants' original motion, the Court is compelled to grant a moving-party's motion for summary judgment where "the evidence is so one-sided that one party must prevail as a matter of law." *O'Connor v. Consol. Coin Caterers Corp.,* 56 F.3d 542, 545 (4th Cir. 1995) (citations omitted). It is insufficient for a party opposing a motion for summary judgment to offer "mere unsupported speculation . . . if the undisputed evidence indicates the other party should win as a matter of law." *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008). Moreover, to be considered on summary judgment, "evidence must be in one of the forms specified by [Fed. R. Civ. P.] 56(e)." *See Orsi v. Kirkwood*, 999 F.2d 86, 92 (4th Cir. 1993). Documents purporting to be public records must also be authenticated. *See* Fed. R. Evid. 901; *Vulcan Iron Works, Inc. v. Polish American Machinery Corp.*, 479 F.Supp. 1060, 1067-68 (S.D.N.Y. 1979).

In opposition to Defendants' Motion for Summary Judgment, Plaintiff asserts a number of facts that she believes support her claim that she was born a U.S. citizen:

11

    (1)    Plaintiff was born in the United States four months after her father's duties ended as a military attaché to the Egyptian Embassy;
    (2)    Plaintiff was born five months after her father's A-1 visa expired;
    (3)    At the time of Plaintiff's birth, her father was in the Arab Republic of Egypt in the service of the Egyptian Air Force;
    (4)    At the time of Plaintiff's birth, Plaintiff's mother was illegally present in the United States on an expired A-2 visa and revoked diplomatic passport.

(Plaintiff's Memorandum, Dkt. #28, p. 2.) Plaintiff does not contest Defendants' assertion, supported by the certification of the Department of State, that on December 11, 1981, the Embassy of Egypt notified the Department of State that the termination date for Plaintiff's father would be December 13, 1981. (*See* Defendants' Memorandum, Dkt. #23, Exhibit 1.) Accordingly, the Court should grant Defendants' Motion for Summary Judgment where the sole fact necessary for this Court to decide the motion is not contested, and where Plaintiff's other challenges are immaterial, irrelevant, and lack sufficient evidentiary support.

    **1.**    **Based on the Undisputed Material Facts, this Court Should Grant Defendants' Motion for Summary Judgment where Notification of Termination is the Critical Date for Determining Privileges and Immunities.**

Plaintiff's Memorandum counters Defendants' reading of the Vienna Convention on Diplomatic Relations ("Vienna Convention"), Apr. 18, 1961, 23 U.S.T. 3227, T.I.A.S. No. 7502, and argues that "the 'evidentiary effect' of the State Department's certification is thus bound by the Court's own interpretation of "the treaty's language, considering the context in which the words were used." Plaintiff's Memorandum at 5, citing *United States v. Al Hamdi*, 356 F.3d 564, 573 (4th Cir. 2004); *Tabion v. Mufti,* 73 F.3d 535, 537 (4th Cir. 1996). This analysis beings with the plan language of the treaty. *See, e.g., Eastern Airlines, Inc. v. Floyd*, 499 U.S. 530, 534 (1991). Where the text of a treaty is clear and unambiguous, the courts have no power to insert an amendment. *See Chan v. Korean Air Lines, Ltd.*, 490 U.S. 122, 134 (1989). Unlike in *Al-Hamdi*, there is no need for the Court to consider the propriety of the Department of State's

12

interpretation of the Vienna Convention here because the text of the treaty is clear and unambiguous.[7]

Contrary to Plaintiff's myopic consideration of only Article 39 of the Vienna Convention, three separate articles of the Vienna Convention control this case. Article 10 of the Vienna Convention provides that receiving states shall be notified of "[t]he appointment of members of the mission, their arrival and their final departure or the termination of their functions with the mission." Vienna Convention, Art. 10(a). Article 43 of the Vienna Convention provides, in part, that "[t]he function of a diplomatic agent comes to an end, inter alia: [o]n notification by the sending State to the receiving State that the function of the diplomatic agent has come to an end." Vienna Convention, Art. 43(a). Finally, as discussed by Plaintiff, Article 39 of the Vienna Convention provides that:

> *When the functions of a person enjoying privileges and immunities have come to an end*, such privileges and immunities shall normally cease at the moment when he leaves the country, or on expiry of a reasonable period in which to do so, but shall subsist until that time, even in case of armed conflict. However, with respect to acts performed by such a person in the exercise of his functions as a member of the mission, immunity shall continue to subsist.

Vienna Convention, Art. 39(2) (emphasis added).

Accordingly, Plaintiff's discussion of Article 39 of the Vienna Convention is misguided. Plaintiff focuses on the portion of the phrase providing that, "such privileges and immunities shall normally cease at the moment when he leaves the country, or on expiry of a reasonable

---

[7] In *Al Hamdi*, the Court found that it had to first consider whether the Department of State's certification was based on a permissible interpretation of the treaty. *Al Hamdi*, 356 F.3d at 569-70. After it found that the Department of State's certification was based on a reasonable interpretation, the Court considered the evidentiary weight of the certification, and found the certification was conclusive. *Id.* at 571-73. It follows that where the plain language controls and no interpretation of the Vienna Convention has taken place, the Department of State's Certification should be conclusive.

13

period to do so . . . ." Absent from Plaintiff's discussion, however, is reference to the predicate part of Article 39, which provides that the "functions of a person enjoying privileges and immunities have come to an end . . . ." Thus, plaintiff's conclusions that her father's diplomatic immunity ceased either when: (1) he left the United States, or (2) when a reasonable period of time passed, are without merit. If Plaintiff's arguments were true, then presumably any time a diplomat with immunity left the United States, he would lose his immunity.

Rather, upon consideration of Article 43(a) of the Vienna Convention, it becomes clear that in order for the functions of a person enjoying privileges and immunities to come to an end, the sending State must send notification to the receiving State. Vienna Convention, Art. 43(a). Accordingly, the date of termination for purposes of privileges and immunities under the Vienna Convention is controlled in this case by the date of termination reported by the Egyptian Embassy to the Department of State. Plaintiff does not contest that this date is December 13, 1981, and that the date falls after Plaintiff's birth. Thus, applying the plain language of the Vienna Convention, Plaintiff's father maintained privilege and immunities until the date the Egyptian Embassy reported as his termination date – December 13, 1981 – which means that as a matter of law, Plaintiff was not born subject to the jurisdiction of the United States, is not a U.S. citizen, and is not entitled to a passport.[8] This factual finding, based on a plain reading of the Vienna Convention, and reflected in the certifications filed by the Department of State in this

---

[8] Plaintiff's reliance on *United States v. Aritzi*, 229 F. Supp. 53 (S.D.N.Y. 1964), for the proposition that a foreign government should determine whether someone is in diplomatic status is readily distinguishable. There, Uruguay never sent the Department of State notice of the arrival of the criminal defendant in a diplomatic capacity. *Id.* at 55. Moreover, even if they had, the court's analysis is based on the ability of a sending State to waive diplomatic immunity of one of its officers. *Id.* at 54. Here, the question is one of termination of duties pursuant to notice to the receiving State under the Vienna Convention, not waiver of immunity by the sending State.

14

matter, is entitled to conclusive weight by this Court. *Al Hamdi*, 356 F.3d at 573 (affirming judgment of lower court that found Department of State's certification of diplomatic status was conclusive as to diplomatic immunity).

> **2. Even if the Court does not Defer to the Department of State's Certification, the Court should Still Grant Defendants' Motion for Summary Judgment where Plaintiff's Factual Challenges are Immaterial, Irrelevant, and Lack Proper Evidentiary Support.**

In support of Plaintiff's Memorandum, Plaintiff avers that summary judgment should not be granted to Defendant because there are material facts at issue and Plaintiff requires discovery. Where this Court should find that Defendants are correct as a matter of law, and that Article 43(a) of the Vienna Convention regarding notification controls the immunities provided for at Article 39 of the Vienna Convention, the only relevant and material fact is the date of termination reported by the Egyptian Embassy to the Department of State. Plaintiff never contests this fact.

Instead, Plaintiff avers that there are documents from the Egyptian Embassy that report a termination date for Plaintiff's father of June 11, 1981. (Plaintiff's Memorandum, Dkt. # 28, at 17, 20, citing Exhibit 3). However, Plaintiff fails to allege, or support with evidence, that the June 11, 1981, date was reported to the Department of State as required by Article 43(a) of the Vienna Convention. The documents referenced at Exhibit 3 to Plaintiff's Memorandum only support a finding that documents were transmitted to the Department of State, but the only indication of the content of these documents is Plaintiff's own speculation. Moreover, even were the Court to consider the exhibits submitted along with Plaintiff's complaint, these documents similarly fail to establish the required notification, fail to fall within the requirements of Fed. R. Civ. P. 56(e), and are unauthenticated as required by Fed. R. Evid. 901.

Plaintiff also attempts to place at issue the departure date reported on the Notice of Final Departure of Foreign Diplomatic Officer, Exhibit 1 to Defendants' Memorandum, the noting date for the November 1981 Blue List which listed Plaintiff's father, and the fact that her father's diplomatic visa expired before the date of termination reported by the Egyptian Embassy. None of these dates are relevant or material to the present matter where the date of termination – not departure – reported to the Department of State by the Egyptian Embassy controls. Vienna Convention, Art. 43(a).

Finally, for the first time in her Memorandum, Plaintiff challenges whether her father was ever "properly accredited with full immunity," or whether it extended to his family. Where this allegation was not raised in Plaintiff's complaint, it is not properly before the Court now. Moreover, that Plaintiff's father was entitled to full diplomatic immunity that extended to his family has been certified by the Department of State and is reflected by the very fact that Plaintiff's father was on the November 1981 Blue List. (*See* Defendants' Memorandum, Dkt. # 23, Exhibit 1.) The Blue List contains the names of "ambassadors, ministers, charges d'affaires, counselors, secretaries and attaches of embassies and legations as well as members of the Delegation of the Commission of the European Communities," and "individuals with comparable *diplomatic status and immunities* who are accredited to the United Nations or to the Organization of American States, and other individuals who are also accorded comparable diplomatic status." 8 C.F.R. § 101.3(a)(2) (emphasis added). The White List, in contrast, contains the names of individuals who "enjoy certain diplomatic immunities, but they are not foreign diplomatic officers as defined in paragraph (a)(2) of this section." 8 C.F.R. § 101.3(b). Accordingly, where Plaintiff offers no more than speculation to counter the certification of the Department of State

and the regulatory definition of Blue List, Plaintiff's challenge to whether her father was properly accredited with full immunity that extended to his family is without merit.

## CONCLUSION

For the foregoing reasons Defendants are entitled to dismissal of all claims, and alternatively are entitled to summary judgment on the claims involving Plaintiff's alleged citizenship and to dismissal of all other claims.

Respectfully submitted,

TIMOTHY J. HEAPHY
United States Attorney

Dated: March 5, 2010

*/s/ Sara Bugbee Winn*
SARA BUGBEE WINN
Assistant United States Attorney
United States Attorney's Office
P.O. Box 1709
Roanoke, VA 24008
TEL (540) 857-2254
FAX (540) 857-2283

TONY WEST
Assistant Attorney General
Civil Division

ELIZABETH J. STEVENS
Assistant Director, District Court Section
Office of Immigration Litigation

*/s/ Jeffrey S. Robins*
JEFFREY S. ROBINS
Senior Litigation Counsel
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
TEL (202) 616-1246
FAX (202) 305-7000

17

## CERTIFICATE OF SERVICE

I hereby certify that I have this 5th day of March, 2010, caused the foregoing Memorandum to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

>Christine Lockhart Poarch
>105 Keesling Avenue
>Salem, VA 24153
>
>Chris K. Kowalczuk
>P.O. Box 11971
>Roanoke, VA 24022-1971

*/s/ Jeffrey S. Robins*
Senior Litigation Counsel
