# EXHIBIT C

# 7 FAM 1100  ACQUISITION AND RETENTION OF U.S. CITIZENSHIP AND NATIONALITY

# 7 FAM 1110  ACQUISITION OF U.S. CITIZENSHIP BY BIRTH IN THE UNITED STATES

## 7 FAM 1111  BASIC TERMS AND DISTINCTIONS

### 7 FAM 1111.1  Terms Not Always Interchangeable

*(TL:CON-64;   11-30-95)*

*While most people and countries use the terms "citizenship" and "nationality" interchangeably, U.S. law differentiates between the two [see Section 101(a)(21)-(22) of the Immigration and Nationality Act (INA)]. Under current law all U.S. citizens are also U.S. nationals, but not all U.S. nationals are U.S. citizens.*

### 7 FAM 1111.2  Citizenship

*(TL:CON-64;   11-30-95)*

a. U.S. citizenship may be acquired *either* at birth or through naturalization.

b. U.S. laws *governing* the acquisition of citizenship at birth embody two legal principles:

(1) *Jus soli* (*the law* of the soil), a rule of common law under which the place of a person's birth determines citizenship. *In addition to common law, this principle is embodied in the 14th Amendment to the U.S. Constitution and the various U.S. citizenship and nationality statutes.*

(2) *Jus sanguinis* (the *law* of the *bloodline* ), a concept of Roman or civil law under which a person's  citizenship is determined by the citizenship of *one or both* parents. This rule, *frequently* called "citizenship by descent" or "derivative citizenship", *is not embodied in the U.S. Constitution, but such citizenship is granted through statute. As laws have changed, the requirements for conferring and retaining derivative citizenship have also changed*.

c. Naturalization is "the conferring of nationality of a state upon a person after birth, by any means whatsoever" (Section 101(a)(23) INA) or conferring of citizenship upon a person (Sections 310 and 311 INA). Naturalization can be granted automatically or pursuant to an application.  *Under U.S. law, foreign naturalization acquired automatically is not an expatriating act [*see chapter 7 FAM 1200 *].*

    d. Historically, a number of U.S. laws have provided for the automatic naturalization of children or wives (not husbands) of naturalized U.S. citizens or for automatic collective naturalization of persons residing in territories over which the United States has gained sovereignty.

## 7 FAM 1111.3  Nationality

*(TL:CON-64;   11-30-95)*

    *a. The term "nationals of the United States", as defined by statute (Section l0l(a)(22) INA) includes all citizens of the United States, and other persons who owe allegiance to the United States but who have not been granted the privilege of citizenship.*

    *b. Nationals of the United States who are not citizens are entitled to the consular protection of the United States when abroad, and to U.S. documentation, such as U.S. passports. They are not entitled to voting representation in Congress and, under most state laws, are not entitled to vote in federal, State, or local elections except in their place of birth.*

    *c. Historically, Congress, through statutes, granted U.S. nationality, but not citizenship, to persons born or inhabiting territory acquired by the United States through conquest or treaty.  At one time or other natives and certain other residents of Puerto Rico, the U.S. Virgin Islands, the Philippines, Guam, and the Panama Canal Zone were U.S. non-citizen nationals.*

    *d. Under current law (the Immigration and Nationality Act of 1952, as amended through October 1994), only persons born in American Samoa and the Swains Islands are U.S. nationals (Secs. 101(a)(29) and 308(1) INA).*

## 7 FAM 1111.4  Dual or Multiple Nationality

*(TL:CON-64;   11-30-95)*

    *a. U.S. nationals and citizens may possess dual or multiple nationality and owe allegiance to one or several foreign states.  They may even have identified themselves more closely with the foreign state than with the United States, thereby calling into question the propriety of extending protection to them. Since each country establishes its own law of nationality, dual nationality cannot be eliminated, may result in confusion, and could complicate the ability of the U.S. Government to protect its nationals/citizens.*

    *b.  The United States has no special arrangements with  individual countries to "permit" dual nationality. U.S. Government policy toward dual nationality is the same regardless of other nationalities involved.*

    *c. While a person who has dual or multiple nationality resides in the United States, the right of the United States to claim his or her allegiance is held to be paramount of the right of the other countries of which he or she may be a national. Conversely, while a person who has dual nationality  resides abroad in a foreign country of which he or she also is a national, the right of that country to claim his or her allegiance is paramount to that of the United States.*

    *d. It has been the policy of the U.S. Government, when the occasion arises, to intercede on behalf of a person in another country who owes allegiance both to that country and the United States, when the facts clearly indicate that the person has been detained, harassed, or molested by the authorities of the foreign country of which he or she is also a national.*

*e. The circumstances of a person's conduct abroad may very well be a determining factor in considering the extent to which such protection should be granted. In the case of a dual national living in the foreign country of which he or she is also a national, the circumstances may restrict, to a great extent, a national's ability to receive the protection and consular services of the U.S. Government.*

# 7 FAM 1112  AUTHORITY

(TL:CON-64;   11-30-95)

The two principal U.S. laws on which most citizenship and nationality matters now are based are the Immigration and Nationality Act of 1952, effective December 24, 1952, as amended *(herein "INA"),* and the Nationality Act of 1940, effective January 13, 1941 *(herein "NA"),* which was repealed by the INA. Numerous other authorities are cited in this chapter. Because all posts have been furnished copies of the INA, this chapter quotes from it sparingly.

# 7 FAM 1113  DEFINITIONS

(TL:CON-64;   11-30-95)

*The following definitions apply in citizenship and nationality cases (and other terms are defined in the context of the sections 7 FAM where they occur):*

a. "Alien" means any person who is not a citizen or national of the United States *(Sec. 101(a)(3) INA).*

b. "American", *for purposes of this chapter*, means a person who is a citizen or national of the United States, or, when used as a modifier, pertaining to or of the United States, its people, customs, laws and regulations, documents, government agencies, and services. Because other groups of people in the Western Hemisphere also consider themselves to be American (that is, Central American, North American, South American), the modifier "U.S." generally is used in this volume of the Foreign Affairs Manual instead of "American" (such as, U.S. citizen, U.S. court decrees, U.S. veteran; but American Embassy).

c. "Citizen", *for purposes of this chapter*, means a person who acquired U.S. citizenship at birth or upon naturalization as provided by law. All U.S. citizens are nationals of the United States.

d. "Citizenship" indicates the status of being a U.S. citizen.

e. "Dual National", *for the purposes of this chapter*, means a person who owes permanent allegiance to more than one country.

f. "INA" means the Immigration and Nationality Act of 1952 as amended by various Acts up to and including 1994 *[*see sections 7 FAM 1112 and 7 FAM 1132.8 *].*

g. "NA" means the Nationality Act of 1940 [see section 7 FAM 1112 *].*

h. "Minor," for the purposes of this chapter, means a person under the age of 18.

i. "National", *for purposes of this chapter*, means a person on whom U.S. nationality has been conferred and who owes permanent allegiance to the United States  but who is not a citizen  *[see* section 7 FAM 1111.3 *b]* . All U.S. citizens are nationals, but U.S. nationals are not necessarily U.S. citizens. For purposes of expatriation, references to U.S. citizens extend to U.S. nationals [see chapter 7 FAM 1200 on loss and restoration of U.S. citizenship].

   *j.* "Nationality" indicates the status of being a national of the United States. *(Nationality is also part of citizenship.)*

   *k.* "Naturalization" means conferring the citizenship or nationality of a state on a person after birth by any means whatsoever *[see* section 7 FAM 1111.2 *c].*

   *l.* "Outlying possessions of the United States" means American Samoa and Swains Island (Section 101(a)(29) INA).

   *m.* "Person" means an individual.

   *n.* "Residence" means the "place of general abode" which is the "principal, actual dwelling place in fact, without regard to intent" (Section 101(a)(33) INA).

   *o.* "United States" means "the continental United States, Alaska, Hawaii, Puerto Rico, Guam, and the Virgin Islands of the United States" (Section 101(a)(38) INA).

# 7 FAM 1114  CITIZENSHIP DURING EARLY YEARS OF THE NATION

*(TL:CON-64;   11-30-95)*

   a. Until 1866, the citizenship status of persons born in the United States was not defined in the Constitution or in any federal statute. Under the common law rule of *jus soli*-- the law of the soil-persons born in the United States generally acquired U.S. citizenship at birth *[*see section 7 FAM 1116.1-1 *].*

   b. This rule was made part of the Civil Rights Act of April 9, 1866 (14 Stat. 27) and, 2 years later, it was adopted as part of the 14th Amendment to the Constitution.

# 7 FAM 1115  CITIZENSHIP UNDER THE 14th AMENDMENT

*(TL:CON-64;   11-30-95)*

   *a.* The 14th Amendment states, in part, that-

   All persons born *or naturalized* in the United States, and subject to the jurisdiction thereof, are citizens of the United States *and of the State wherein they reside...*

   *b.* Questions have arisen about the meaning of the phrases "in the United States" and "subject to the jurisdiction thereof." Some of the conclusions reached by U.S. courts and administrative authorities are summarized *in* section 7 FAM 1116 .

# 7 FAM 1116  KEY PHRASES USED IN THE 14th AMENDMENT AND IN LAWS DERIVED FROM IT

## 7 FAM 1116.1 "In The United States"

### 7 FAM 1116.1-1 States and Incorporated Territories

*(TL:CON-64;   11-30-95)*

    a. *The phrase* "in the United States" *as used in the 14th Amendment* clearly includes States that have been admitted to the Union. *Sections 304 and 305 of the INA provide a basis for citizenship of persons born in Alaska and Hawaii while they were territories of the United States. These sections reflect, to a large extent, prior statutes and judicial decisions which addressed the l4th Amendment citizenship implications of birth in these and other U.S. territories. Guidance on evidence on such births should be sought from CA/OCS.*

    b. Sec. 101(a)(38) INA *provides that, for the purposes of the INA,*



The term "United States",... when used in the geographical sense, means the continental United States, Alaska, Hawaii, Puerto Rico, Guam, and the Virgin Islands of the United States.*In addition, under Pub. L. 94-241, the "approving Covenant to Establish a Commonwealth of the Northern Mariana Islands in Political Union with the United States of America", (Sec. 506(c)), which took effect on November 3, 1986, the Northern Mariana Islands are treated as part of the United States for the purposes of sections 301 and 308 of the INA.*

    c. All of the *aforenamed* areas, except Guam *and the Northern Mariana Islands, came within the definition of "United States" given in the Nationality Act of 1940, which was effective from January 13, 1941 through December 23, 1952.*

    d. *Prior to January 13, 1941, there was no statutory definition of "the United States" for citizenship purposes. Thus there were varying interpretations. Guidance should be sought from the Department (CA/OCS) when such issues arise.*

## 7 FAM 1116.1-2  In U.S. Waters

*(TL:CON-64;   11-30-95)*

a. Persons born on ships *located within U.S. internal* waters are considered to have been born in the United States. *Such persons will acquire U.S. citizenship at birth if they are subject to the jurisdiction of the United States [*see section 7 FAM 1116.2-1 *]. Internal waters include the ports, harbors, bays and other enclosed areas of the sea along the U.S. coast.*

b. *Prior FAM guidance advised that persons born within the 3-mile limit of the U.S. territorial sea were born "within the United States" and could be documented as U.S. citizens if they were also born subject to U.S. jurisdiction. Analysis of this issue undertaken in 1994-1995 revealed, however, that there is a substantial legal question whether persons born outside the internal waters of the United States but within the territorial sea are in fact born "within the United States" for purposes of the 14th Amendment and the INA.  Cases involving persons born outside the internal waters but within the U.S. territorial sea should, therefore, be submitted to the Department (CA/OCS) for adjudication.*

## 7 FAM 1116.1-3  Airspace

*(TL:CON-64;   11-30-95)*

a. Airspace above the *land territory and internal waters* is held to be part of the United States (Art. 1(1), 1958 Geneva Convention on the Territorial Sea and the Contiguous Zone, 15 U.S.T. 1606, TIAS 5639). Gordon and Rosenfeld, in Immigration Law and Procedure, Volume 3, Nationality (New York:  Matthew Bender, 1986), *commenting on the applicability of the 14th Amendment to vessels and planes, states:*

..The rules applicable to vessels obviously apply equally to airplanes.
Thus a child born on a plane in the United States, or flying over its
territory, would acquire United States citizenship at birth.

b. *Cases of persons born on planes in airspace outside the U.S. coastal borders but within the U.S. territorial sea should be submitted to the Department (CA/OCS) for adjudication.*

## 7 FAM 1116.1-4  Not Included in the Meaning of "In the United States"

*(TL:CON-64;   11-30-95)*

a. A U.S.-registered or *documented* ship on the high seas or in the exclusive economic zone is not considered to be part of the United States. A child born on such a vessel does not acquire U.S.  citizenship by reason of the place of birth (*Lam Mow v. Nagle*, 24 F.2d 316 (9th Cir., 1928)).

b. *A U.S.-registered aircraft outside U.S. airspace is not considered to be part of U.S. territory. A child born on such an aircraft outside U.S. airspace does not acquire U.S. citizenship by reason of the place of birth.*

c.  *Despite widespread popular belief, U.S. military installations abroad and U.S. diplomatic or consular facilities are not part of the United States within the meaning of the 14th Amendment. A child born on the premises of such a facility is not subject to the jurisdiction of the United States and does not acquire U.S. citizenship by reason of birth.*

## 7 FAM 1116.2  "Subject to the Jurisdiction" of the United States

### 7 FAM 1116.2-1  Subject at Birth to U.S. Law

*(TL:CON-64;   11-30-95)*

   a. Simply stated, "subject to the jurisdiction" of the United States means subject to the laws of the United States.

   b. In *U.S. v. Wong Kim Ark*, 169 U.S. 649 (1898), the U.S. Supreme Court examined at length the theories and legal precedents on which the U.S. citizenship laws are based and, in particular, the types of persons who are subject to U.S. jurisdiction. After doing so, it affirmed that a child born in the United States to Chinese parents acquired U.S. citizenship even though the parents were, *at the time*, racially ineligible for naturalization. The Court concluded that:

> The 14th Amendment affirms the ancient and fundamental rule of citizenship by birth within the territory, in the allegiance and under the protection of the country, including children here born of resident aliens, with the exceptions or qualifications (as old as the rule itself) of children of foreign sovereigns or their ministers, or born on foreign public ships, or of enemies within and during a hostile occupation of part of our territory, and with the single additional exception of children of members of the Indian tribes owing direct allegiance to their several tribes. The Amendment, in clear words and in manifest intent, includes the children born within the territory of the United States, of all other persons, of whatever race or color, domiciled within the United States.



   c. Pursuant to this ruling, it has been *considered* that:

   (1) Acquisition of U.S. citizenship *generally* is not affected by the fact that the parents may be in the United States temporarily or illegally; and that

   (2) A child born in an immigration detention center *physically located in the United States* is considered to have been born in the United States and be subject to its jurisdiction. This is so even if the child's parents have not been legally admitted to the United States and, for immigration purposes, *may be* viewed as not being in the United States.

## 7 FAM 1116.2-2  Officers and Employees of Foreign Embassies and Consulates and their Families

*(TL:CON-64;   11-30-95)*

   a. Under international law, *diplomatic agents are immune from the criminal jurisdiction of the receiving state. Diplomatic agents are also immune, with limited exception, from the civil and administrative jurisdiction of the state. The immunities of diplomatic agents extend to the members of their family forming part of their household*. For this reason children born in the United States to diplomats to the United States are not subject to U.S. jurisdiction and do not acquire U.S. citizenship under the 14th Amendment or the laws derived from it.

    b. The names of *diplomatic agents* accredited or notified to the United States and who have full diplomatic privileges and immunities are published every three months in the Department's *Diplomatic List*, often called the "Blue List."  The *Diplomatic List* also gives the name of the spouses residing with them, but does not include other members of the family forming part of the household, although *they may* be entitled to *privileges and immunities*.

    c. The *Diplomatic List* does not indicate the dates of accreditation or notification, or of termination, and any given issue of the *Diplomatic List* does not include accreditations, notifications or terminations occurring after the closing date for submission of information for that issue. In addition, the Diplomatic List does not include persons who have entered the territory of the United states to take up the post of diplomatic agent but who are not yet accredited or notified, although they enjoy privileges and immunities from the moment of entry pursuant to Article 39 of the Vienna Convention on Diplomatic Relations. For all of these reasons, the *Diplomatic List*, while an important source in citizenship inquiries involving the children of diplomats, cannot by itself resolve such inquiries. The Office of Protocol (CPR) maintains complete records to supplement the Diplomatic List. CA/OCS will inquire of CPR if necessary.

    d. As a rule, children born in the United States to the following employees of foreign governments acquire U.S. citizenship:

    (1) Members of the administrative and technical (A&T) staff or service staff of foreign embassies. However, bilateral agreements with certain countries grant A&T and service staff members and their families diplomatic-level privileges and immunities, and children born in the United States to such persons do not acquire U.S. citizenship. CA/OCS, through the Office of Protocol, will address inquiries as to whether such bilateral agreements affect the A&T or service staff members of specific countries;

    (2) Foreign diplomats accredited to a country other than the United States;

    (3) Diplomatic agents whose functions in the United States have ended, and whose privileges and immunities have ceased upon the expiration of a reasonable time for departure. The general practice of the United States is to consider 30 days a reasonable period of departure. In specific cases, the Department may allow a shorter or longer period;

    (4) Diplomatic agents who have the children in question with U.S. citizens capable of transmitting U.S. citizenship to children born abroad. Such children acquire citizenship under pertinent law as if born abroad and would be subject to any citizenship retention requirements in effect at the time of birth;

    (5) Consular officers and employees [see NOTES].

NOTES:

(a) Consular officers assigned to the embassy of the sending state are accredited as diplomatic agents. Children born to such officers do not acquire U.S. citizenship.

(b) Bilateral agreements with certain countries grant consular officers and their families diplomatic-level privileges and immunities, and children born in the United States to such persons do not acquire U.S. citizenship. CA/OCS should be queried as to whether such bilateral agreements affect the consular officers of specific countries.

    e. The recollections of the parents or child about the parents' status at the time of the child's birth may be imprecise, and the only way to ascertain whether the child was born subject to U.S. jurisdiction is to review the *Diplomatic List* and other records dating from the time of the birth. Therefore, a post that has received an application from a first-time applicant born in the United States to a *member of a diplomatic mission or consular post* or

an inquiry about the citizenship status of such a person should request the Department (CA/OCS/ACS ) by telegram to check the pertinent records [see 7 FAM 1116  Exhibit 1116.2-2 ]. The telegram should give the child's name, date and place of birth, the name of the parent who may have had diplomatic status at the time of the child's birth, and the name of the country represented. The telegram should indicate whether the other parent was a U.S. citizen when the child was born.

## 7 FAM 1116.2-3  Resident Representatives to and Officials of the United Nations

(TL:CON-64;   11-30-95)

a. *The considerations noted in Section 7 FAM 1116.2-2 relating to the children of diplomatic agents also apply to those of the Resident Representatives to and Officials of the United Nations described as follows:*

(1) <u>Resident Representatives.</u> *Under the UN Headquarters Agreement, certain individuals are entitled to the same privileges and immunities accorded to diplomatic envoys. These individuals include:*

(i)  *the principal resident representative to the UN of a member state or a resident representative with the rank of Ambassador or minister plenipotentiary;*

(ii) *resident staffs of members agreed upon by the Secretary-General, the United States, and the member state;*

(iii) *principal resident representatives with the rank of Ambassador or minister plenipotentiary to specialized agencies of the UN with headquarters in the United States;*

(iv) *other principal resident representatives and resident staffs of members to specialized agencies agreed upon by the principal executive officer of the agency, the United States, and the member state.*

(2) <u>High-level UN Officials.</u>  *Under the Convention on the Privileges and Immunities of the United Nations, the Secretary-General and all Assistant Secretaries-General are entitled to the same privileges and immunities as are accorded to diplomatic envoys.*

b. *The U.S. Mission to the United Nations issues a "Blue List" of the resident representatives and staff of the Missions to the United Nations who are entitled to diplomatic privileges and immunities accorded to diplomatic envoys. As in the case of the <u>Diplomatic List</u> for bilateral diplomats, the Blue List should be viewed as a resource, but not the definitive source of information. Upon receipt of a telegram, as  described in 7 FAM 1116  Exhibit 1116.2-2 , modified to indicate the name of the UN Mission or the position of the diplomat with the UN secretariat, CA/OCS/ ACS  will check the relevant records and provide an opinion of the child's claim to citizenship.*

c. *As a rule, children born in the United States to the following members of the UN community acquire U.S. citizenship:*

(1) *Members of the non-diplomatic staff of the UN Missions, e.g., secretaries, administrative clerks and drivers;*

(2) *Employees of the UN secretariat not included in  section 7 FAM 1116.2-3 a.(2);*

(3) *Members of UN Observer Missions;*

    *(4) Members who were accorded diplomatic immunity, but whose functions in the U.S. have ended, and whose privileges and immunities have ceased; and*

    *(5) Members who are U.S. citizens or have the children in question with citizens capable of transmitting U.S. citizenship to children born abroad. A child who acquired U.S. citizenship under such circumstances would be subject to any citizenship retention requirements in effect at the time of birth.*

## 7 FAM 1116.2-4  Representatives to and Officials of Certain Other International Organizations

*(TL:VISA-64;   11-30-95)*

    a. *The considerations noted in* Section 7 FAM 1116.2-2 *relating to the children of diplomatic agents, also apply to those of certain Resident Representatives to and Officials of international organizations including, but not limited to, the Organization of American States, the International Monetary Fund and the World Bank.  The number of such Resident Representatives and Officials entitled to diplomatic immunity is small. Generally, most employees of international organizations with offices in the United States are not entitled to diplomatic immunity and their children born in the United States are U.S. citizens.*

    b. *Because the source of immunity derives from several different conventions or treaties, and because there are not consolidated lists for all of those eligible for diplomatic immunity, consular officers should send a cable, as* described in 7 FAM 1116  Exhibit 1116.2-2 , *modified to indicate the name of the international organization, to CA/OCS/ ACS for an opinion on the child's claim to citizenship.*

## 7 FAM 1116.2-5  Foreign Heads of State

*(TL:CON-64;   11-30-95)*

    *Acquisition of U.S. citizenship by children born to foreign sovereigns or heads of state visiting the United States is a complex issue. Posts should notify the Department (CA/OCS and L/SFP) in any case in which this issue arises.*

### 7 FAM 1116.2-6  Foreign Vessels

(TL:CON-64;   11-30-95)

 a. Foreign *warships, naval auxiliaries, and other vessels or aircraft owned or operated by a state and used for the time being, only on government non-commercial service,* are not subject to jurisdiction of the United States. Persons born on such vessels while in U.S. *internal waters* do not acquire U.S. citizenship at birth.

 b. A child born on a foreign merchant ship *or privately owned vessel* in U.S. internal waters is considered as having been born subject to the jurisdiction of the United States.

### 7 FAM 1116.2-7  Alien Enemies During Hostile Occupation

(TL:CON-64;   11-30-95)

 a. If part of the United States were occupied by foreign armed forces against the wishes of the United States, children born to enemy aliens in the occupied areas would not be subject to U.S. jurisdiction and would not acquire U.S. citizenship at birth.

 b. Children born to others in an area temporarily occupied by hostile forces would acquire U.S. citizenship at birth because sovereignty would not have been transferred to the other country.

### 7 FAM 1116.2-8  Native Americans and Eskimos

(TL:CON-64;   11-30-95)

 a. Before Wong Kim Ark *[*see section 7 FAM 1116.2-1 *],* the only occasion on which the Supreme Court had considered the meaning of the 14th Amendment's phrase "subject to the jurisdiction" of the United States was in Elk v. Wilkins, 112 U.S. 94 (1884). That case hinged on whether a *Native American* who severed ties with the tribe and lived among whites was a U.S. citizen and entitled to vote. The Court held that the plaintiff had been born subject to tribal rather than U.S. jurisdiction and could not become a U.S. citizen merely by leaving the tribe and moving within the jurisdiction of the United States. The Court stated that:

> The Indian tribes, being within the territorial limits of the United States, were not, strictly speaking, foreign States; but they were alien nations, distinct political communities, with whom the United States might and habitually did deal...through treaties...or acts of Congress...They were never deemed citizens of the United States except under explicit provisions of treaty or statute to that effect, either declaring a certain tribe, or such members of it as chose to remain behind on the removal of the tribe westward, to be citizens, or authorizing individuals of particular tribes to become citizens upon application...for naturalization...

 b. The Act of June 2, 1924 (43 Stat. 253) was the first comprehensive law relating to the citizenship of Native Americans. *It provided:*

> That all noncitizen Indians born within the territorial limits of the United States be, and they are hereby, declared to be citizens of the United States:  Provided, That the granting of such citizenship shall not in any manner impair or otherwise affect the right of any Indian to tribal or other property.

    c. Section 201(b) NA, effective January 13, 1941, declared that persons born in the United States to members of an Indian, Eskimo, Aleutian, or other aboriginal tribe were nationals and citizens of the United States at birth. Section 301(b) (formerly Sec. 301(a)(2) INA), in effect from December 24, 1952, restates this provision.

# 7 FAM 1117  LEGISLATION REGARDING CITIZENSHIP BY BIRTH IN THE UNITED STATES

*(TL:CON-64;   11-30-95)*

    a. The citizenship provision of the 14th Amendment is essentially restated in Section 201(a) of the Nationality Act of 1940 (NA) and in Section 301(a) [formerly Section 301(a)(1)] of the Immigration and Nationality Act of 1952 (INA).

    b. The current section of law that governs the acquisition of citizenship by birth in the United States is Section 301 INA, which states:

    Sec. 301. The following shall be nationals and citizens of the United States at birth:

    (a) A person born in the United States, and subject to the jurisdiction thereof;

    (b) a person born in the United States to a member of an Indian, Eskimo, Aleutian or other aboriginal tribe, <u>Provided</u>, that the granting of citizenship under this subsection shall not in any manner impair or otherwise affect the right to tribal or other property;...

    (f) a person of unknown parentage found in the United States while under the age of five years, until shown, prior to his attaining the age of twenty-one years, not to have been born in the United States;...

    c. The provisions of Section 201(a) and (b) NA were identical to those of Section 301(a) and (b) INA. The differences between Section 201(f) NA and Section 301(f) INA are discussed in section 7 FAM 1118 .

    d. All children born in and subject, *at the time of birth*, to the jurisdiction of the United States acquire U.S. citizenship at birth *even if their parents were in the United States illegally at the time of birth.*

# 7 FAM 1118  FOUNDLINGS

*(TL:CON-64;   11-30-95)*

    a. Under Section 301(f) INA (formerly Section 301(a)(6)), a child of unknown parents is conclusively presumed to be a U.S. citizen if found in the United States when under 5 years of age, unless foreign birth is established before the child reaches age 21.

    b. Under Section 201(f) NA, a child of unknown parents, found in the United States, was presumed to have been a U.S. citizen at birth until shown not to have been born in the United States *no matter at what age this might have been demonstrated.*

# 7 FAM 1119  PROOF OF CITIZENSHIP BY BIRTH IN THE UNITED STATES

(TL:CON-64;   11-30-95)

    a. To establish a claim to U.S. citizenship by birth in the United States:

A person born in the United States in a place where official records of birth were kept at the time of his birth shall submit with the application for a passport a birth certificate under the seal of the official custodian of records. [22 CFR 51.43.]

    b. The birth certificate must:

(1) Show the applicant's full name, and date and place of birth;

(2) Have a filing date within 1 year of the birth; and

(3) Bear the signature of the official custodian of birth records and the raised, impressed, or multicolored seal of the issuing office.

    c. Bulletin M-343 (Notice to Applicant Concerning Birth Records) may be given to the applicant to assist in obtaining an acceptable birth certificate.

    d. Information on the availability and cost of birth certificates is published by the Department of Health and Human Services in <u>Where to Write for Vital Records:  Births, Deaths, Marriages, and Divorces</u> (DHHS Publication No. (PHS) 93 -1142; Hyattsville, MD., U.S. Department of Health and Human Services, March l993, revised periodically).

    *e. Consular officers are urged to obtain, with post funds, a copy of this publication which will assist them in advising applicants needing documentation on how to procure birth or other required documents.*

    f. For details on evidence of U.S. citizenship, including information on the documentation that may be presented by U.S.-born applicants who cannot obtain a birth certificate of the type described in 7 FAM 1119 (b), see subchapters 7 FAM 1130 and 7 FAM 1330 .

    *g. Posts are authorized to document, without prior approval from the Department, first-time applicants who present citizenship evidence meeting the requirement of 22 CFR 51.43 and satisfactory evidence of identity, unless it appears that the applicant was not subject to the jurisdiction of the United States at birth, e.g.  because he or she was born to a foreign diplomat or one of the other categories of persons not subject to the jurisdiction of the United States. Any questions regarding this issue should be referred to CA/OCS with a CPAS TAGS.*

# 7 FAM 1116  Exhibit 1116.2-2

## SAMPLE INQUIRY ABOUT THE CITIZENSHIP STATUS OF A CHILD OF A FOREIGN DIPLOMAT

FROM:            Amembassy Cotonou

ACTION:          SecState WASHDC ROUTINE

UNCLAS COTONOU

CLASSIFICATION:           Unclassified

Attention:       CA/OCS/ACS/AF

E.O.  12356:      N/A

TAGS:      CPAS (UMOH, Richard Tombo)

SUBJECT:   Citizenship Status of Child of Foreign Diplomat

REF:       7 FAM 1116.2-2

1.  Richard Tombo Umoh, DPOB 7/025/70, Silver Spring Md, inquired today about his possible claim to U.S. citizenship. He reports that his father, Mr. Friday Eyi Umoh, was assigned to the Nigerian Embassy in Washington from 1970 to 1979 as Attache (Finance). His mother, Veronica Nwoko Umoh, is a Nigerian citizen.

2. Please verify whether Friday Eyi Umoh was on the diplomatic list at the time of Richard's birth and whether Richard was born subject to the jurisdiction of the United States.
COOPER

DRAFTED BY:      CON/SRHydes
DRAFTING DATE:   7/12/95
APPROVED BY:     DCM; AZMaendert