IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| AHMED ALI MUTHANA, individually and as next friend of Hoda Muthana and Minor John Doe initials A.M., | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 1:19-cv-00445-RBW |
| MICHAEL POMPEO, *et al.*, | ) ) | |
| Defendants. | ) | |

**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT**

## TABLE OF CONTENTS

Introduction...................................................................................................................... 1

Argument ........................................................................................................................ 2

   A.  The Court Should Dismiss All of Plaintiff's Next-Friend Claims (Counts 1–8) or, in the Alternative, Grant Summary Judgment to Defendants on Those Claims........................... 2

      1.  Plaintiff Has Not Satisfied the Requirements to Proceed as a Next Friend................. 2

      2.  Muthana Is Not and Was Never a U.S. Citizen ........................................... 6

      3.  Plaintiff Has Not Alleged a Cause of Action to Challenge Muthana's Passport Revocation .......................................................................................... 14

      4.  Defendants Did Not Violate Procedural Due Process In Revoking Muthana's Passport 16

      5.  Courts Lack Authority to Grant Citizenship Claims in Equity.................................... 18

      6.  The United States Does Not Have a Duty to Facilitate Muthana's Return ............... 21

   B.  The Court Should Dismiss Plaintiff's Personal Claim (Count 9) Because Plaintiff Lacks Standing to Seek Declaratory Relief on That Claim........................................................ 24

Conclusion ................................................................................................................... 25

**TABLE OF AUTHORITIES**

Cases

*ACLU v. Mattis*, 286 F. Supp. 3d 53 (D.D.C. 2017) ........................................................ 4

*Ahmed Salem Bin Jaber v. United States*, 155 F. Supp. 3d 70 (D.D.C. 2016) ...................... 3, 5, 6

*Al-Aulaqi v. Obama*, 727 F. Supp. 2d 1 (D.D.C. 2010) ........................................................ 2, 6

*Ali v. Dist. Dir.*, 743 Fed. App'x 354 (11th Cir. 2018) ........................................................ 8, 9

*Ali v. Dist. Dir.*, No. 15-cv-61820 (S.D. Fla. May. 10, 2016) ...................................... 10

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ................................................ 13

*Atem v. Ashcroft*, 312 F. Supp. 2d 792 (E.D. Va. 2004) ................................................ 20

*Babbitt v. Farm Workers*, 442 U.S. 289 (1979) ........................................................ 24, 25

*Chacoty v. Tillerson*, 285 F. Supp. 3d 293 (D.D.C. 2018) ............................................ 15

*Deshaney v. Winnebago County Dep't of Social Services*, 489 U.S. 189 (1989) ................ 21, 22

*Fornaro v. James*, 416 F.3d 63 (D.C. Cir. 2005) ........................................................ 21

*Haig v. Agee*, 453 U.S. 280 (1981) ........................................................................ 17

*Hamdan v. Rumsfeld*, 415 F.3d 33 (D.C. Cir. 2005) ................................................ 23

*Hamdan v. Rumsfeld*, 548 U.S. 557 (2006) ............................................................ 23

*Hizam v. Kerry,* 747 F.3d 107 (2d Cir. 2014) ...................................................... 15, 19

*Holder v. Humanitarian Law Project*, 561 U.S. 1 (2010) .......................................... 25

*INS v. Pangilinan*, 486 U.S. 875 (1988) .................................................................. 19

*Kelso v. U.S. Dep't of State*, 13 F. Supp. 2d 1 (D.D.C. 1998) .................................... 17

*Laningham v. U.S. Navy*, 813 F.2d 1236 (D.C. Cir. 1987) .......................................... 12

*Magnuson v. Baker*, 911 F.2d 330 (9th Cir. 1990) .................................................. 19

*Martinez v. Sec'y of State*, 652 F. App'x 758 (11th Cir. 2016) .................................... 7

*Mathin v. Kerry*, 782 F.3d 804 (7th Cir. 2015) ........................................................ 7

*Medellin v. Texas*, 552 U.S. 491 (2008) .................................................................. 22

*Nat'l Treasury Emps. Union v. United States*, 101 F.3d 1423 (D.C. Cir. 1996) ................ 24

*Nattah v. Bush*, 770 F. Supp. 2d 193 (D.D.C. 2011) ................................................ 22

*Nelson v. Diversied Collection Services, Inc.*, 961 F. Supp. 863 (D. Md. 1997) ................ 17

*Perez v. Brownell*, 356 U.S. 44 (1958) .................................................................... 6

*Proctor v. District of Columbia*, 74 F. Supp. 3d 436 (D.D.C. 2014) .............................. 13

*Raya v. Clinton,* 703 F. Supp. 2d 569 (W.D. Va. 2010) .................................... 7, 8, 9, 12

*Reyes v. Neelly*, 264 F.2d 673 (5th Cir. 1959) ........................................................ 7

*Savage v. Scales*, 310 F. Supp. 2d 122 (D.D.C. 2004) .................................................. 18

*Schilling v. Rogers*, 363 U.S. 666 (1960) ...................................................................... 15

*United States v. Abdulaziz*, 741 F.2d 1328 (11th Cir. 1984) .......................................... 9

*United States v. Al-Hamdi*, 356 F.3d 564 (4th Cir. 2004) .............................................. 9

*Whitmore v. Arkansas*, 495 U.S. 149 (1990) .................................................................. 5

*Xia v. Tillerson*, 865 F.3d 643 (D.C. Cir. 2017) ............................................................ 6

### Statutes

8 U.S.C. § 1401 .............................................................................................................. 18

8 U.S.C. § 1451 ................................................................................................................ 6

8 U.S.C. § 1503 .............................................................................................................. 16

8 U.S.C. § 1504 .............................................................................................................. 20

8 U.S.C. § 1504(a) ........................................................................................... 15, 17, 19, 20

18 U.S.C. § 2339B .......................................................................................................... 24

42 U.S.C. § 1983 ............................................................................................................ 21

### Rules

Fed. R. Civ. P. 12 ............................................................................................................. 2

Fed. R. Civ. P. 12(b)(1) ..................................................................................... 6, 20, 25

Fed. R. Civ. P. 12(b)(6) ........................................................................................... passim

Fed. R. Civ. P. 15(a)(3) .................................................................................................. 16

Fed. R. Civ. P. 56 ........................................................................................................... 14

LCvR 15.1 ...................................................................................................................... 16

### Treatise

5C Charles Alan Wright, *et al.*, Federal Practice & Procedure § 1366 (3d ed. 2012) .................. 14

### Regulations

22 C.F.R. § 51.62 ............................................................................................................ 20

22 C.F.R. §§ 51.70–51.74 ............................................................................................... 17

### Other Authorities

Hague Convention (IV) Respecting the Law and Customs of War on Land, 35 Stat. 2277 ........ 23

Geneva Convention (IV) Relative to the Protections of Civilian Persons in Time of War, 6 U.S.T. 3516 ................................................................................................................. 22

Vienna Convention on Diplomatic Relations, 23 U.S.T. 3227 ................................... 7, 8, 11, 13

## INTRODUCTION

The Court should grant Defendants' motion to dismiss. Plaintiff does not offer any arguments that refute the basis for Defendants' motion.

First, Plaintiff has not demonstrated that he should be permitted to proceed as a next friend, so Counts 1 through 8 must be dismissed. Plaintiff still provides no valid reason why Muthana has not herself brought this action or signed on to the allegations in the complaint. Indeed, Plaintiff's response highlights the flaws in his effort to proceed as next friend. His arguments that Muthana is inaccessible demonstrate the opposite—Muthana is accessible and has the ability to communicate with counsel. And he fails to clearly show that his interests are aligned with Muthana's—particularly given the long history of contradictory statements from Muthana.

Second, because the United States has demonstrated that Muthana is not and never was a U.S. citizen (and thus her son is not a U.S. citizen), all of Plaintiff's next-friend counts independently must be dismissed for failure to state a claim. Plaintiff continues to rely on an insupportable legal position on when diplomatic immunity terminates. Because of this flawed position, Plaintiff cannot dispute the *conclusive* evidence presented by Defendants that Plaintiff enjoyed diplomatic-agent-level immunity at the time of Muthana's birth and, thus, that Muthana never acquired U.S. citizenship. Plaintiff's position that the Department of State's erroneous grant of a passport to Muthana was in fact a grant of citizenship is also legally insupportable and factually inaccurate. The Department of State revoked Muthana's passport when it discovered its prior erroneous issuance. The Department of State has no authority to confer or to cancel citizenship, and so it could no more grant Muthana citizenship than it could have canceled her citizenship when it revoked her a passport.

Third, Plaintiff does not have standing to bring his pre-enforcement declaratory action (Count 9). As Defendants have established, this claim rests on a hypothetical, speculative, and necessarily incomplete version of future events. Plaintiff does not have standing to seek relief based on such speculation, and this Court cannot grant him the advisory opinion that he seeks.

For these reasons, as further explained in Defendants' motion to dismiss and below, the Court should dismiss the complaint in its entirety under Federal Rule of Civil Procedure 12. In the alternative, the Court should grant summary judgment to Defendants on Counts 1 through 8.

## ARGUMENT

### A. The Court Should Dismiss All of Plaintiff's Next-Friend Claims (Counts 1–8) or, in the Alternative, Grant Summary Judgment to Defendants on Those Claims[1]

#### 1. Plaintiff Has Not Satisfied the Requirements to Proceed as a Next Friend

As the government has explained, Plaintiff lacks next-friend standing. *See* Br. 11–16, ECF No. 19. Plaintiff makes several arguments in response. *See* Opp. 8–14, ECF No. 25-1. Each fails.

First, Plaintiff contends that Muthana is inaccessible and that this asserted inaccessibility adequately explains the need for next-friend standing. *See* Opp. 10–12. But Plaintiff's allegations fail to demonstrate that Muthana is unable to access the courts, and the facts that Plaintiff has submitted with his opposition show much more extensive and ongoing communications with Muthana than he suggested in his complaint. *See Al-Aulaqi v. Obama*, 727 F. Supp. 2d 1, 17 n.3 (D.D.C. 2010) ("[I]n the context of 'next friend' standing, courts have refused—even at the pleading stage—to accept unsubstantiated allegations that the real party in interest . . . 'lacks access to the courts'; rather, courts have required that claims pertaining to incompetency or

---

[1] Plaintiff has abandoned Count 2 of his complaint. Opp. 5 n.13. Therefore, the Court indisputably should dismiss that Count.

inaccessibility have some 'support in the record.'") (citations omitted).   To begin with, Plaintiff already acknowledged that both he and his counsel have received "communications" from Muthana.   Compl. ¶ 9.   Another attorney, Hassan Shibly, who purports to represent Plaintiff's family, has also stated publicly that he and Muthana have "had many conversations" regarding her criminal culpability and legal predicament.   Natalie Musumeci, *Hoda Muthana's lawyer: Few people 'resent ISIS' as much as she*, N.Y. Post (Feb. 21, 2019), https://nypost.com/2019/02/21/hoda-muthanas-lawyer-few-people-resent-isis-as-much-as-her. Indeed, Muthana notes that others detained with her also have access to counsel.   Opp., Ex. A, Ex. 2 (noting "[t]here is another lawyer by the name of [redacted] . . . .   He too makes visits here."). *Compare Ahmed Salem Bin Jaber v. United States*, 155 F. Supp. 3d 70, 76 (D.D.C. 2016) (finding inaccessibility when plaintiffs presented sworn statements that communication was "sporadic and difficult" or "nearly impossible").   And Muthana has clearly communicated with the media on more than "a handful of occasions."   Opp. 11; *compare, e.g.,* Enjoli Francis and James Longman, *Former ISIS bride who left for Syria says she 'interpreted everything very wrong*, ABC News (Feb. 19, 2019)   https://abcnews.go.com/International/isis-bride-left-us-syria-interpreted-wrong/story?id=61175508; Stephanie Ruhle, *Alabama ISIS bride Hoda Muthana speaks about returning to U.S.*, MSNBC (Feb. 22, 2019), https://www.msnbc.com/stephanie-ruhle/watch/alabama-isis-bride-hoda-muthana-speaks-about-returning-to-u-s-1446715971829; Nadia Al Faour, Kim Hjelmgaard, Trevor Highes, and Deidre Shesgreen, *The making of an American terrorist: Hoda Muthana joined ISIS.   Now she can't come back.*, USA Today (Apr. 7, 2019),   https://www.usatoday.com/story/news/world/2019/04/06/hoda-muthana-married-isis-fighters-so-trump-wont-let-her-back-usa/3350233002/.   Given all of this, Plaintiff has not alleged the inaccessibility necessary to establish next-friend standing.   To the contrary, the supporting

evidence he offers actually *demonstrates* that Muthana can communicate sufficiently with others outside the camp.

Plaintiff presents a letter from Muthana wherein she states that "communication here is very limited and is only done through the camp's administration phone." Opp., Ex. A, Ex. 2. But this letter does not demonstrate Muthana's inaccessibility. It demonstrates the opposite—that Muthana does have access to communications, including internet access. *Id.* (discussing using WhatsApp); *see* Opp., Ex. A ¶ 39 (Muthana contacts father by "borrowing a phone . . . or using the camp Administration phone"); *id.* ¶ 41 (Muthana received letter via WhatsApp). Muthana has apparently also been communicating with doctors in contact with Plaintiff, and Plaintiff asserts he will be able to transport various goods to Muthana if he obtains a favorable court order. *Id.* ¶¶ 48–50. Defendants can identify no case where a court has approved a next-friend assertion for an adult with this kind of ability to directly access counsel who can act on her behalf, if that were her true wish.

Second, Plaintiff contends that the United States has contributed to Muthana's inaccessibility. Opp. 11–12. That argument cannot be credited, given Muthana's obvious accessibility (as just explained). And Plaintiff cites no case showing that the revocation of Muthana's passport somehow creates inaccessibility that would support next-friend standing. Plaintiff relies (Opp. 12) on *ACLU v. Mattis*, 286 F. Supp. 3d 53 (D.D.C. 2017), where the court ordered the United States to give access to a U.S. citizen it had detained and whom it was undisputed was inaccessible to counsel since "the Department [of Defense] [was] the sole impediment" to the citizen's ability to meet with counsel. *Id.* at 58. The United States is obviously not the "sole impediment" here: Muthana is allegedly held by a third party, the Syrian Democratic Forces, Compl. ¶ 31, not the United States. And if Plaintiff is suggesting that a detainee held

abroad is inaccessible unless returned to the United States, this is not the rule for next-friend standing.

Third, Plaintiff insists that he and Muthana have aligned interests, as next-friend standing requires. Opp. 12–13. But Plaintiff's portrayal of this supposed "harmony in interest" (Opp. 13) relies on a woefully incomplete version of the facts. *See Whitmore v. Arkansas*, 495 U.S. 149, 164 (1990) ("[t]he burden is on the 'next friend' clearly to establish the propriety of his status and thereby justify the jurisdiction of the court"). From 2014 through 2018, Muthana publicly pledged allegiance to ISIS, indicated a desire to never return to the United States, recruited others to commit acts of violence against United States citizens, and solicited money for ISIS. Ellie Hall, *An Alabama "ISIS Bride" Wants To Come Home. Can We Forgive Her Horrifying Social Media Posts?*, BuzzFeedNews (May 4, 2019) https://www.buzzfeednews.com/article/ellievhall/hoda-muthana-isis-instagram-twitter-tumblr-alabama (recounting Muthana's ISIS activities, including her online postings up through 2018, and noting a post in mid-2017 calling for vehicular attacks). Plaintiff's recent communications do not squarely contradict these prior statements. *See* Opp., Ex. A, Ex. 2. The Court cannot just dismiss her prior contradictory statements as irrelevant, as Plaintiff requests. Opp. 12 n.16. The Court should conclude instead that Plaintiff has not adequately established that he and Muthana are aligned. *See Al-Aulaqi,* 727 F. Supp. 2d at 22 (considering party's public statements in determining whether party's putative next friend was aligned with party's interests).

Fourth, Plaintiff argues that the Court should apply next-friend standing outside of the habeas context. Opp. 8–9. Plaintiff invokes *Bin Jaber*, which states that next-friend standing "may be invoked [outside of habeas proceedings] if plaintiffs can sufficiently demonstrate its necessity." 155 F. Supp. 3d at 76. But Plaintiff has not demonstrated necessity here. Muthana

has been in contact with counsel, others detained with her have had access to counsel as well, she has been in contact with the media, she has internet access, and she has access to medical professionals who are in communication with Plaintiff.  Thus, this case is nothing like *Bin Jaber*, where contact with counsel and the outside world was "nearly impossible."  155 F. Supp. 3d at 77. This Court should surely not extend next-friend standing to a new context on such a weak showing of necessity.  *See also* Br. 12–13 (noting that "Plaintiff does not seek" next-friend status "based on any recognized category," and this Court "should not expand the concept of next-friend standing" here).

Accordingly, the Court should dismiss Counts 1 through 8 for lack of jurisdiction because Plaintiff has not established next-friend standing.  *See* Fed. R. Civ. P. 12(b)(1).

## 2.   Muthana Is Not and Was Never a U.S. Citizen

Plaintiff's next-friend claims all rest on a fundamental and dispositive error—the assertion that Muthana is a U.S. citizen.  She is not and never was a U.S. citizen.  *See* Br. 16–30.  Plaintiff presents several arguments in response to Defendants' contention that Muthana is not a U.S. citizen.  *See* Opp. 30–33.  Each is unavailing.

First, Plaintiff argues that the Defendants cannot demonstrate by clear and convincing evidence that Muthana was never a U.S. citizen.  Opp. 30.  But Defendants have no such burden— and in any event, they have satisfied even that burden.  Plaintiff points to dicta from *Xia v. Tillerson*, 865 F.3d 643 (D.C. Cir. 2017), for support that the clear-and-convincing standard applies here.  Opp. 30.  But *Xia* says that that standard applies in cases brought *by* the United States *under 8 U.S.C. § 1451* to set aside illegally procured naturalization.  *See id.* at 656 (citing *Perez v. Brownell*, 356 U.S. 44, 47 n.2 (1958) (holding that the clear and convincing evidence standard applied in a case involving the expatriation of a U.S. citizen who fled the United States to avoid

military service)).  This is not a case involving revocation of naturalized citizenship.  Plaintiff

contends that Muthana was a citizen at the moment of her birth.  And it is well established that in

a case seeking to establish citizenship—when properly brought under 8 U.S.C. § 1503—a plaintiff

bears the burden to demonstrate citizenship by a preponderance of the evidence.  *See, e.g.*, *Reyes

v. Neelly*, 264 F.2d 673, 674–75 (5th Cir. 1959); *Mathin v. Kerry*, 782 F.3d 804, 807 (7th Cir.

2015); *Lee Hon Lung v. Dulles*, 261 F.2d 719, 720 (9th Cir. 1961); *Martinez v. Sec'y of State*, 652

F. App'x 758, 761 (11th Cir. 2016).  Plaintiff cannot avoid that burden or shift it by attempting to

graft a different standard that does not apply here.

  In any event, Defendants have conclusively demonstrated that Muthana did not acquire

U.S. citizenship at birth as a matter of law based on the undisputed facts.  Plaintiff enjoyed

diplomatic-agent-level immunity at that time of Muthana's birth, meaning that she was born not

subject to the jurisdiction of the United States and thus could not and did not acquire U.S.

citizenship at birth.  On February 6, 1995, the U.N. Office of Protocol notified the U.S. Mission to

the United Nations in New York (USUN) of Plaintiff's termination from his diplomatic position.

Compl. ¶ 21, 25, Ex. D.  This date determined when the United States no longer afforded Plaintiff

diplomatic-agent-level immunity.  *See* Vienna Convention on Diplomatic Relations, done April

18, 1961, 23 U.S.T. 3227, T.I.A.S. No. 7502, 500 U.N.T.S. 95 (entered into force with respect to

the United States Dec. 13, 1972), art. 43(a) ("The function of a diplomatic agent comes to an end

. . . on *notification by the sending State to the receiving State that the function of the diplomatic

agent has come to an end*.") (emphasis added); *see also* Br. 5 (describing the application of the

Vienna Convention to U.N. missions).  Thus, at the time of Muthana's birth, ▮▮▮▮▮▮ 1994,

the United States was still affording Plaintiff diplomatic-agent-level immunity.  Br. 17–26.

  Plaintiff tries to undercut this argument by contending that the date of notification is not

the determinative date.  *See* Opp. 32–33.  Plaintiff relies on the United States' statement, in a brief

filed in *Raya v. Clinton,* 703 F. Supp. 2d 569 (W.D. Va. 2010), that "the date of termination for

purposes of privileges and immunities under the Vienna Convention is controlled in this case by

the date of termination reported by the Egyptian Embassy to the Department of State" and "thus,

applying the plain language of the Vienna Convention, Plaintiff's father maintained privilege and

immunities until the date the Egyptian Embassy reported as his termination date."  Opp. 32

(quoting Reply Brief of Gov't 14, ECF No. 31, *Raya*, 703 F. Supp. 2d 569).  But that reliance is

misplaced because *Raya* involved a materially different scenario.  In *Raya*, Egypt provided notice

of termination to the Department of State *before* the actual termination of the relevant diplomatic

position.  *See* 703 F. Supp. 2d at 578 ("The Notice of Final Departure from the Egyptian Embassy

formally notified the State Department that the plaintiff's father's diplomatic service would

terminate on December 13, 1981, and that he would depart the country on January 12, 1982.").

After receiving this notification of termination, the Department of State terminated plaintiff's

father's diplomatic-agent-level immunity when the reasonable period of time to depart the country

expired after December 13, 1981.  703 F. Supp. 2d at 578; *see* Br. 19 (explaining that diplomatic

immunity ends after a reasonable period under Vienna Convention Article 39(2))  Far from

supporting Plaintiff, *Raya* supports *Defendants'* position that the termination of diplomatic

immunity is normally predicated on notification by the sending State.  According to *Raya*, "the

Vienna Convention requires sending countries to provide formal notice of a diplomatic agent's

appointment and termination, and *specifically states that an agent's diplomatic functions come to

an end on notification of termination by the sending country*."  *Id.* (emphasis added); *see also id.*

at 576–77; *see Ali v. Dist. Dir.*, 743 Fed. App'x 354, 359 (11th Cir. 2018) (describing "the date on

which the Syrian government notified the State Department of plaintiff's attaché" status as "the

critical issue" in determining when the Department of State afforded him diplomatic immunity.); Opp. 32 (relying on *Ali*).  And Defendants' position in *Raya* is consistent with its position here: the date of notification of termination is dispositive under the facts presented here.  Br. 18–19 (discussing a receiving State's authority to unilaterally terminate diplomatic immunity).  As the government explained in its brief in *Raya*, under "Article 43(a) of the Vienna Convention, . . . in order for the functions of a person enjoying privileges and immunities to come to an end, the sending State must send notification to the receiving State."  Reply Brief of Gov't 14, ECF No. 31, *Raya*, 703 F. Supp. 2d 569.  Thus, the government said, "the date of termination for purposes of privileges and immunities under the Vienna Convention is controlled in this case by the date of termination reported by the Egyptian Embassy to the Department of State."  *Id.*

Second, Plaintiff argues that the Court is not bound by the Department of State's certification.  Opp. 32.  But the caselaw is to the contrary.  When the Department of State certifies the diplomatic status of an individual, "the courts are bound to accept that determination."  *United States v. Abdulaziz*, 741 F.2d 1328, 1339 (11th Cir. 1984); *see also In re Baiz*, 135 U.S. 403, 421 (1890) (the "certificate of the secretary of state . . . is the best evidence to prove the diplomatic character of a person.").  As the Fourth Circuit has held, a Department of State certification that is "based upon a reasonable interpretation of the Vienna Convention, is conclusive evidence as to the diplomatic status of an individual."  *United States v. Al-Hamdi*, 356 F.3d 564, 573 (4th Cir. 2004) ("[W]e will not review the State Department's factual determination that, at the time of his arrest, Al-Hamdi fell outside the immunities of the Vienna Convention.").  Here, the Department of State has presented the Court with a certification of the dates of Plaintiff's diplomatic-agent-level immunity, Br., Ex. B, and the Court should not look behind the certification.

To resist this conclusion, Plaintiff suggests that *Ali*, "not[ed] that [the] parties dispute[d]

the diplomatic records produced by USCIS" and thus "deferred to the determination made after a full trial on the merits." Opp. 32. Plaintiff's reliance on *Ali* is misplaced. In *Ali*, the district court did not accept the Department of State's certification as "sufficient to *bind* the Court to the State Department's determination" of diplomatic immunity because the court found there was a factual dispute over the date of notification of appointment. Order on Petition for Review, ECF No. 93, *Ali v. Dist. Dir.*, No. 15-cv-61820 (S.D. Fla. May 10, 2016) (emphasis in original). Although Defendants respectfully disagree with that ruling, even if the Court were to look behind the certification as the *Ali* court did, here the Department of State has presented the corroborating records it created and maintained at the time it afforded Plaintiff diplomatic-agency-level immunity—KARDEX and TOMIS, as well as the Termination List sent to USUN Host Country Affairs by the U.N. Office of Protocol[2]—along with the certification. Br., Ex A, Exs. 1–3. As Defendants have explained (Br. 27–30), at the time of Plaintiff's diplomatic service, USUN maintained its privileges-and-immunities records in the KARDEX system. Br., Ex A ¶¶ 7–11. Under this system, each accredited diplomat had a paper card reflecting relevant information, including the diplomat's name and place of birth, information about the diplomat's family members, and dates for the beginning and end of the diplomat's privileges and immunities. The KARDEX card for Plaintiff, *id.*, Ex. 1, is clearly annotated to record the termination of his diplomatic-agent-level privileges and immunities as February 6, 1995, *id.* Unlike in *Ali*, then, the record here contains contemporaneous government records fully consistent with the Department of State's certification showing that Plaintiff enjoyed diplomatic-agent-level immunity at the time

---

[2] Plaintiff refers to the Termination List as the "Blue List." Opp. at 32 (citing to 7 FAM 1116.2-3(b)). The Termination List, published by the U.N. Office of Protocol, is not the "Blue List" referred to in the Foreign Affairs Manual 1116.2-3(b).

of Muthana's birth.   And the Department of State's determination to terminate Plaintiff's diplomatic-agent-level immunity on February 6, 1995, the date of notification of his termination, is consistent with the plain language of the Vienna Convention—"[t]he function of a diplomatic agent comes to an end . . . on *notification by the sending State to the receiving State that the function of the diplomatic agent has come to an end*."   Vienna Convention, art. 43(a).   Thus, the Department of State's certification is conclusive.

Third, Plaintiff argues that the Court should rely on the 2004 Russell F. Graham letter as controlling on when the United States afforded Plaintiff diplomatic-agent-level immunity.[3]   Opp. 14–15, 31.   This argument fails.   As Defendants have explained, the letter: (1) is not addressed to Plaintiff or to the Department of State, but rather to the Bureau of Citizenship and Immigration Services, Compl., Ex. C, a component of the Department of Homeland Security that has no role in passport issuance or the conferral or termination of diplomatic-agent-level immunity; (2) does not state why it was issued; (3) does not purport to state the start or end date of when Plaintiff enjoyed diplomatic-agent-level immunity or analyze when the Department of State no longer afforded Plaintiff diplomatic privileges; and (4) does not address the question at issue here, namely, what immunities Plaintiff enjoyed between September 1, 1994, and the date USUN was formally notified of Plaintiff's termination on February 6, 1995.   Br. 25.   The letter, in other words, indicates only that Plaintiff enjoyed diplomatic immunity during his period of employment.   It does not purport to determine or establish that Plaintiff's immunity ceased prior to the date USUN was

---

[3] Defendants do not concede that Plaintiff submitted this 2004 letter to the Department of State in support of Muthana's passport application.

notified of his termination. *Id.*[4] Further, Plaintiff argues that because the author of the 2004 letter and the certification occupy the same position, the 2004 letter is controlling. Opp. 15. But this argument fails for the reasons noted above—the 2004 letter is not a determination of when the Department of State afforded Plaintiff diplomatic-agency-level immunity.

When confronted with similar evidence provided to contradict a Department of State's certification, district courts have routinely found that the Department of State's certification is dispositive, especially when the certification is corroborated by government records evincing a reasonable application of the Vienna Convention. *See, e.g., Raya*, 703 F. Supp. 2d at 577–78 (finding the Department of State's certification conclusive, despite submission of a "memorandum prepared by the Egyptian Ministry of Defense in December of 2004" supporting plaintiff's contention that the Department of State granted plaintiff diplomatic immunity on different dates). Here, the Department of State has presented corroborating records, and its interpretation of the Vienna Convention is reasonable. Thus, the Court should consider the Department of State's certification as conclusive proof of the dates Plaintiff enjoyed diplomatic immunity.

Fourth, Plaintiff suggests that this Court should not convert Defendant's motion to dismiss to a motion for summary judgment, but should instead allow discovery. Opp. 2 n.2, 8. This argument is without merit. There is no genuine dispute over the dispositive material fact—the date

---

[4] Defendants note that Plaintiff's declaration shows that he had a sophisticated understanding of the impact of his diplomatic status on the citizenship of his family members during the relevant period. Opp., Ex. A ¶ 12. Indeed, Plaintiff apparently admitted to his daughter that he doubted she was a U.S. citizen. *See* Anne Speckhard and Ardian Shajkovci, *American-Born Hoda Muthana Tells All About Joining ISIS and Escaping the Caliphate*, Homeland Security Today.US (Apr. 23 2019) ("[Muthana's] father, however, was aware that issues over her passport could be raised . . . . So, my dad would never let me travel. He'd say until we fix your case, you can't travel . . . . [M]y dad would say you should get naturalized [like your siblings]."), https://www.hstoday.us/subject-matter-areas/terrorism-study/american-born-hoda-muthana-tells-all-about-joining-isis-and-escaping-the-caliphate/.

that the U.N. Office of Protocol notified the USUN of Plaintiff's termination: February 5, 1996.

Br. 16–30, Exs. A, B; *see Laningham v. U.S. Navy*, 813 F.2d 1236, 1241 (D.C. Cir. 1987) ("a

dispute about a material fact is 'genuine' only 'if the evidence is such that a reasonable jury could

return a verdict for the nonmoving party.'") (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 247 (1986)).  Plaintiff is wrong that "the date of official notice" is not "relevant."  Opp. 2 n.2.

As Defendants have explained (Br. 17–21; *supra* at 6–8), the date of notification is typically the

key component of a receiving State's determination of diplomatic immunity under the Vienna

Convention, and the only fact relevant here.  *See* Vienna Convention, art. 10(a) ("The Ministry for

Foreign Affairs of the receiving State, or such other ministry as may be agreed, shall be notified

of . . . the appointment of members of the mission, their arrival and their final departure or the

termination of their functions with the mission"); 43(a) ("The function of a diplomatic agent comes

to an end . . . on notification by the sending State to the receiving State that the function of the

diplomatic agent has come to an end").  Here, Defendants have provided conclusive proof of the

date of notification of termination.  Br. 27–30; Exs. A, B.  Because this dispositive fact is not in

dispute, the Court can convert Defendant's motion into one for summary judgment if necessary.

*See Liberty Lobby, Inc.*, 477 U.S. at 248 ("[O]nly disputes over facts that might affect the outcome

of the suit under the governing law will properly preclude the entry of summary judgment.").

Moreover, Plaintiff has had an opportunity to respond to the evidence presented by

Defendants and does not explain what other relevant facts would be developed through discovery.

*Proctor v. District of Columbia*, 74 F. Supp. 3d 436, 447–48 (D.D.C. 2014) ("When the defendant

expressly moves for summary judgment in the alternative to a motion to dismiss before discovery

has been conducted, and relies upon extra-pleading material, to which the plaintiff has an

opportunity to respond, the Court need not issue separate prior notice of the conversion [to

13

summary judgment].") (citations omitted).   The evidence presented by Defendants is comprehensive and dispositive, making discovery unnecessary. *Proctor*, 74 F. Supp. 3d at 448 ("If extra-pleading evidence 'is comprehensive and will enable a rational determination of a summary judgment motion,' a district court will be more likely to convert to summary judgment, but 'when it is scanty, incomplete, or inconclusive,' the district court is more likely to decline to convert to summary judgment and permit further discovery.") (quoting 5C Charles Alan Wright, *et al.*, Federal Practice & Procedure § 1366 (3d ed. 2012)).   As explained above, district courts rely on the Department of State's reasonable certifications as conclusive. *See supra* at 8–9.  Here, the Department of State has provided a certification, supported by contemporaneous records, that Plaintiff's diplomatic immunity ended on February 6, 1995, after Muthana was born.   This certification is conclusive, and no more discovery is needed.

Plaintiff's next-friend claims all rest on a flawed legal position about the time period during which the Department of State afforded Plaintiff diplomatic-agency-level immunity.  Muthana was born to a father who enjoyed diplomatic-agent-level immunity at the time of her birth and, therefore, was not born "subject to the jurisdiction" of the United States.  As a result, she did not acquire U.S. citizenship at birth (and thus her son is not a U.S. citizen).  Accordingly, the Court should dismiss Counts 1 through 8 for failure to state a claim. *See* Fed. R. Civ. P. 12(b)(6).  In the alternative, the Court should convert Defendants' motion to dismiss and grant Defendants summary judgment on Counts 1 through 8. *See* Fed. R. Civ. P. 56.

3.   Plaintiff Has Not Alleged a Cause of Action to Challenge Muthana's Passport Revocation

Plaintiff does not allege a cause of action to challenge the Department of State's revocation of Muthana's passport.  Br. 31–32.

Despite Plaintiff's acknowledgment that the Department of State's revocation of her

passport affected only the document and not her citizenship (Opp. 17), Plaintiff continues to take the insupportable position that the Department's erroneous prior issuance of a passport to Muthana somehow conferred citizenship on her.  Opp. 14–19.  Plaintiff's argument is unavailing.

Plaintiff argues that issuance of a passport to Muthana conclusively established that she is a U.S. citizen or conferred U.S. citizenship on here.  Opp. 15–16.  That is not what issuance of a passport does.  An unexpired U.S. passport may be proof of U.S. citizenship, but passports "do not confer citizenship; rather they merely provide proof of one's status as a citizen."  *Chacoty v. Tillerson*, 285 F. Supp. 3d 293, 298 (D.D.C. 2018).  Thus, under federal law, "[t]he cancellation" "of any document purporting to show the citizenship status of the person to whom it was issued"— such as a passport—"*shall affect only the document and not the citizenship status of the person in whose name the document was issued*." 8 U.S.C. § 1504(a) (emphasis added).  So if someone was issued a passport but was not a citizen, the issuance of a passport does not make that person a citizen.  *Hizam v. Kerry,* 747 F.3d 107, 110 (2d Cir. 2014) ("[Revocation] did not change [the plaintiff's] citizenship status.  Instead, it withdrew the proof of a status which he did not possess.").  And passports can be revoked when they are issued in error—as Plaintiff recognizes.  *See* Opp. 17.  That is the situation here:  The Department of State revoked Muthana's *passport* and explained that it had been issued in error because Muthana had never been a U.S. citizen.  Compl. ¶ 21, Ex. D.  The error—again—did not make Muthana a U.S. citizen.

Given those points, Plaintiff's revocation argument—and request for declaratory relief regarding the passport revocation—collapses.  Plaintiff argues that this Court should grant declaratory relief, declaring that Muthana is a U.S. citizen, based on the prior erroneous grant of a passport.  Opp. 18.  Because the Department of State revoked only her passport, this claim rests on a completely erroneous premise and Plaintiff has no cause of action for such relief.  Br. 31–32.

A declaratory-judgment cause of action "presupposes the existence of a judicially remediable right." *Schilling v. Roger*s, 363 U.S. 666, 677 (1960). Here, Plaintiff identifies no such right. And by seeking declaratory relief, Plaintiff seeks to circumvent the statutory scheme (and reverse the burden of proof) that Congress created for seeking a judicial declaration of nationality by demanding declaratory judgment outside of 8 U.S.C. § 1503.

Because Counts 1 through 6 of the complaint all rest on the erroneous notion that the Department of State revoked Muthana's citizenship when it revoked her passport, and because Plaintiff has not stated a cause of action to challenge Muthana's passport revocation, the Court should dismiss Counts 1 through 6 for failure to state a claim. *See* Fed. R. Civ. P. 12(b)(6).[5]

4.    Defendants Did Not Violate Procedural Due Process In Revoking Muthana's Passport

As the government has explained, the Department of State afforded Muthana due process when it revoked her passport. Br. 32–34. Plaintiff argues that Defendants failed to provide proper notice to Muthana by sending notification to her "parent's address." Opp. 14 n.18.[6] But his argument lacks merit, particularly given that the Department of State notified Muthana at the

---

[5] Plaintiff seeks leave to amend his complaint to add a claim under 8 U.S.C. § 1503. Opp. 25–30. Plaintiff should not be permitted to make such a request here; rather, the Court should require Plaintiff to file a separate motion for leave to file an amended complaint in compliance with the Federal Rules of Civil Procedure. Indeed, even if the Court were to permit Plaintiff's opposition to serve as a motion to file an amended complaint, Plaintiff failed to attach a copy of his amending pleading. *See* LCvR 15.1 ("A motion for leave to file an amended pleading shall attach, as an exhibit, a copy of the proposed pleading as amended."). If the Court determines that Plaintiff may include a motion for leave to amend in an opposition to a motion to dismiss, Defendants ask that the Court allow for supplemental briefing on Plaintiff's argument under Federal Rule of Civil Procedure 15(a)(3). Defendants respectfully request that the Court not consider such a course without requiring Plaintiff to provide a proposed amended complaint, given that supplemental briefing would need to consider the viability of such a proposed complaint.

[6] This allegation does not appear in the complaint. Plaintiff raises it for the first time in his opposition.

address she provided.

Plaintiff "does not challenge that the Department of State has the right to revoke passports of U.S. citizens." Opp. 14 n.18. Here, the Department of State properly notified Muthana of its decision to revoke her passport and of her opportunity to contest the revocation under 22 C.F.R. §§ 51.70–51.74. Compl. ¶ 25, Ex D ("You have a right to a hearing under Sections 51.70 through 51.74 of Title 22 of the U.S. Code of Federal Regulations . . . . Should you desire such a hearing, you must notify this office in writing within 60 days of receipt of this notice."); *see Haig v. Agee*, 453 U.S. 280, 309 (1981) ("the Government is not required to hold a prerevocation hearing" before revoking a passport); Compl. ¶ 59 (recognizing that "passports may be suspended without a pre-suspension hearing"); *see also Kelso v. U.S. Dep't of State*, 13 F. Supp. 2d 1, 4–5 (D.D.C. 1998) ("[T]he Fifth Amendment's Due Process Clause imposes on the Secretary of State nothing more than a requirement that she inform Mr. Kelso why his passport has been revoked and permit him to contest her decision promptly before a hearing officer.").

Rather, the crux of Plaintiff's due process claim is that Defendants did not provide adequate notice to *Muthana* while she was in Syria with ISIS. Opp. 14 n.18. That argument fails, however, because the U.S. Department of State notified Plaintiff by mail at her last known address, which was her parents' address. *See* 8 U.S.C. § 1504(a) ("The person for or to whom such document has been issued or made shall be given, at such person's *last known address*, written notice of the cancellation of such document, together with the procedures for seeking a prompt post-cancellation hearing.") (emphasis added); Hoda Muthana, Form DS-11, Passport Application (Feb. 14, 2014) (attached hereto as Ex. A); *see* Ellie Hall, *Gone Girl: An Interview With An American In ISIS*, Buzzfeed News (Apr. 17, 2015) (indicating that Muthana lived with her parents until she left the United States to join ISIS), https://www.buzzfeednews.com/article/elliehall/gone-girl-an-

interview-with-an-american-in-isis.  Plaintiff confirms that the notice was sent to Muthana at her parents' address, and despite alleging that Muthana "no longer resided at that address," Opp. 14 n.18, Plaintiff does not allege that another address to contact Muthana.  *See Nelson v. Diversied Collection Services, Inc.*, 961 F. Supp. 863, 689 (D. Md. 1997) ("due process [did] not require that the interested party actually receive the notice . . . [rather, due process requires that] the government acted reasonably in selecting the means to inform [the] person affected") (citations and internal quotations omitted).  Here, Defendants provided sufficient notice to satisfy any due-process requirements.  *See Savage v. Scales*, 310 F. Supp. 2d 122, 133 (D.D.C. 2004) ("Because the defendant had submitted an affidavit and business records . . . indicating that notice was mailed to [the plaintiff's] last known address[,] the Court concluded that the notice was reasonable and satisfied [the plaintiff's] due process rights.") (citations and internal quotations omitted).

The Court should therefore dismiss Count 3 for failure to state a claim.  *See* Fed. R. Civ. P. 12(b)(6).

5.      Courts Lack Authority to Grant Citizenship Claims in Equity

As the government has explained, this Court may not exercise equitable powers in a manner that would contravene statutory requirements regarding citizenship, which the Constitution entrusts to Congress.  *See* Br. 34–35.  Plaintiff presents several arguments in response.  Opp. 33–36.  Each is meritless.

First, Plaintiff argues that estoppel is warranted because of "extraordinary circumstances," including that "[t]here is no evidence to suggest that" Plaintiff or Muthana "acted in bad faith or presented anything but accurate information" in connection with her passport applications.  Opp. 33, 34.  The fundamental problem with this argument is that courts cannot grant citizenship through use of equitable powers.  Congress has further enacted legislation setting the conditions by which

U.S. citizenship shall be granted at birth, including for those persons "born in the United States, and subject to the jurisdiction thereof."  8 U.S.C. § 1401.  And, the Supreme Court has been clear in precluding courts from exercising equitable remedies when doing so would so clearly contravene constitutional and statutory authority regarding citizenship.  "Neither by application of the doctrine of estoppel, nor by invocation of equitable powers, nor by any other means does a court have the power to confer citizenship in violation of [congressionally imposed] limitations." *INS v. Pangilinan*, 486 U.S. 875, 885 (1988).  And even putting aside these bedrock principles for a moment, Plaintiff does not articulate any remotely extraordinary circumstance here.  Plaintiff's allegations establish that the Department of State did exactly what it was statutorily authorized to do when it determines that a passport was issued in error: revoke an erroneous grant of a passport in a routine exercise of the Secretary of State's authority.  *See* 8 U.S.C. § 1504(a) ("The Secretary of State is authorized to cancel any United States passport or Consular Report of Birth, or certified copy thereof, if it appears that such document was illegally, fraudulently, or erroneously obtained from, or was created through illegality or fraud practiced upon, the Secretary.").  (Moreover, Plaintiff has now indicated, for the first time, that he was aware of questions regarding Muthana's citizenship a generation ago.  Opp., Ex. A ¶¶ 12–17.)  A court cannot grant U.S. citizenship through its equitable powers where the Department of State revoked a passport after determining it was erroneously issued.  *Hizam,* 747 F.3d at 110.

Second, Plaintiff contends that the United States' "actions . . . are in bad faith."  Opp. 34–35.  Plaintiff presents no evidence for that assertion, and the assertion is unfounded.  The government issued a passport in error because Muthana was not a U.S. citizen.  Br. 16–30.  It recognized its error and corrected it.  Compl. Ex. D.  That is what the law contemplates.  *See* 8 U.S.C. § 1504(a); 22 C.F.R. § 51.62.

Third, Plaintiff relies on *Magnuson v. Baker*, 911 F.2d 330 (9th Cir. 1990), to contend that the Department of State is collaterally estopped from revoking Muthana's passport absent evidence of fraud or misrepresentation.  Opp. 35–36.  But in 1994, after *Magnuson* was decided and applied collateral estoppel in similar circumstances, Congress enacted 8 U.S.C. § 1504, which permits the Secretary of State to revoke a passport erroneously granted—the clear authority that the *Magnuson* court believed the Department of State lacked.  8 U.S.C. § 1504(a); *see Atem v. Ashcroft*, 312 F. Supp. 2d 792, 799 (E.D. Va. 2004) ("It is significant, therefore, that the legal landscape regarding cancellation of passports has changed substantially since *Magnuson* was decided in 1990.  In 1994, Congress added a section to the Immigration and Nationality Act authorizing the Secretary of State to cancel passports and reports of birth if it appeared that they were obtained illegally, fraudulently, or erroneously.").  The State Department has implemented this statute by providing for revocation of a U.S. passport "when [it] has determined that the bearer of the passport is not a U.S. national." 22 C.F.R. § 51.62.  Clearly, Congress has afforded the Secretary of State the authority to revoke a passport of an individual that never was a U.S. citizen.

Finally, Plaintiff contends that allowing the United States to reconsider prior citizenship determinations "without new facts or due process opens the door for the United States to utilize citizenship and the rights it entails as a weapon against the unpopular or undesirable."  Opp. 36. This misses the mark.  Congress made the question of new facts irrelevant when it enacted 8 U.S.C. § 1504 because that provision makes clear that a revocation is authorized when a passport was "erroneously obtained" from the Department of State, regardless of whether new facts have come to light.  Moreover, the Department of State has no authority to issue a passport to, and has a corollary responsibility to revoke a passport of, any person that it determines not to be a U.S. citizen.  8 U.S.C. § 1504(a).

The Court should dismiss Counts 4 and 5 for lack of subject-matter jurisdiction, *see* Fed. R. Civ. P. 12(b)(1), or, in the alternative, for failure to state a claim, *see* Fed. R. Civ. P. 12(b)(6).

6.      The United States Does Not Have a Duty to Facilitate Muthana's Return

As the government has explained, Defendants do not have an affirmative duty to facilitate Muthana's and A.M.'s return to the United States.  Br. 36–39.  Plaintiff presents several arguments in response.  *See* Opp. 19–23.  Each is meritless.

First, Plaintiff argues that Defendants cannot impede Muthana's return to the United States because U.S. citizens have a right to return.  Opp. 19–20.  But this argument is inapposite, because Muthana is not and was never a U.S. citizen.  Br. 16–30.  And Plaintiff does not identify any action the United States is taking to "impede" Muthana's return beyond an action that was taken years ago—the revocation of her passport.  Further, the United States can and does burden citizens' return to the United States.  Br. 37–38 (collecting cases that discuss the United States' authority to burden a citizen's return).  In any event, even if the United States could be said to have impeded Muthana's return, it would not help Plaintiff:  Plaintiff claims that the United States has an *affirmative duty* to *facilitate* Muthana's return—he asks that this Court issue a writ of mandamus instructing the United States to bring Muthana and A.M. to the United States.  Compl. ¶ 98.  This request fails because Plaintiff cannot point to any duty that requires Defendants to act in such a manner, and, thus, his request fails.  *See Fornaro v. James,* 416 F.3d 63, 69 (D.C. Cir. 2005) (a plaintiff seeking mandamus has the burden to prove that the defendant has a plainly defined and non-discretionary duty to do a ministerial act).

Second, Plaintiff argues that Defendants, by revoking Muthana's passport, incurred an affirmative duty to protect Muthana and A.M.  Opp. 20.  To support this claim of an affirmative duty, Plaintiff cites *Deshaney v. Winnebago County Dep't of Social Services*, 489 U.S. 189 (1989),

an action under 42 U.S.C. § 1983 alleging that a state agency had a duty to protect a child from harm by its parent.  Opp. 20.  Not only does the case provide no rule that applies in these circumstances, the Court held that there was no such duty.  489 U.S. at 201.  Plaintiff also cites to a duty that arises when the state restrains "the individual's freedom to act on his own behalf—through incarceration, institutionalization, or other similar restraint of personal liberty."  *Id.* at 200.  But it is only the "deprivation of liberty" by the government that "trigger[s] the protections of the Due Process Clause, not [the government's] failure to act to protect [a person's] liberty interests against harms inflicted by other means."  *Id.*  Here, Muthana's situation arises not from the actions of the United States, but rather from Muthana's own actions—Muthana voluntarily chose to join a foreign terrorist organization, which has allegedly placed her in the custody of a third party, the Syrian Democratic Forces.

For similar reasons, Plaintiff is also wrong to argue that Defendants "have also blocked Ms. Muthana's right to return through public statements that prevent her repatriation, and thereby owes affirmative duties to Ms. Muthana, including recognizing Ms. Muthana's citizenship and facilitating Ms. Muthana's return to the United States."  Opp. 21.  Plaintiff again identifies no clear and unequivocal duty of the sort that would warrant mandamus relief—particularly because Muthana is not and was never a U.S. citizen.  Br. 16–30; *supra* at 6–9.

Third, Plaintiff argues that Defendants owe Muthana and A.M. good-faith efforts to secure their release and return to the United States pursuant to the requirements of the Fourth Geneva Convention Relative to the Protections of Civilian Persons in Time of War (GC-IV).  Opp. 21–22.  This argument, too, is meritless.  To start, GC-IV is not self-executing and does not create a judicially enforceable individual right.  *See Medellin v. Texas*, 552 U.S. 491, 516 (2008) (holding that a non-self-executing treaty "addresses itself to political, not the judicial department"); *Nattah*

*v. Bush*, 770 F. Supp. 2d 193, 204 (D.D.C. 2011) ("[t]he Geneva Convention does not create a right of action for private individuals to enforce its terms)"; *see also Hamdan v. Rumsfeld*, 415 F.3d 33, 40 (D.C. Cir. 2005) ("We therefore hold that the 1949 Geneva Convention does not confer upon Hamdan a right to enforce its provisions in court."), *rev'd on other grounds Hamdan v. Rumsfeld*, 548 U.S. 557 (2006).

Further, GC-IV applies only in international armed conflicts and situations of occupation, neither of which is the case here.  *See* GC-IV, art. 2.  Plaintiff has not adequately pleaded that the conflict with ISIS is an "international armed conflict."  As the Supreme Court has recognized, an international armed conflict involves a "clash between nations."  *Hamdan*, 548 U.S. at 630.  ISIS, however, is not a State or High Contracting Party to the Geneva Conventions.  The conflict with ISIS is thus a *non*-international armed conflict because it involves a State against a non-state armed group.  *Cf. id.* (describing the conflict with al Qaeda as a "non-international armed conflict").  Plaintiff also has not established that the United States occupies any part of Syria.  Territory is considered occupied "when it is actually placed under the authority" of the hostile force, and occupation "extends only to the territory where such authority has been established and can be exercised."  Hague Convention (IV) Respecting the Law and Customs of War on Land, 35 Stat. 2277, annex, art. 42 .  Occupation is a question of fact, and these factual predicates must be established for the legal regime set forth in GC-IV to apply.  Plaintiff has alleged nothing to show that the United States occupies any part of Syria, as the United States has not taken possession of territory or substituted its authority for that of the Syrian Government.  Given that failure of pleading, Plaintiff has not established that the United States has any obligations under Article 48 of GC-IV.

Plaintiff has not identified a clear and nondiscretionary duty for Defendants to negotiate

with a foreign power and facilitate Muthana's and A.M.'s travel to the United States.  Therefore, the Court should dismiss Counts 7 and 8 for failure to state a claim.  *See* Fed. R. Civ. P. 12(b)(6).

**B.**      **The Court Should Dismiss Plaintiff's Personal Claim (Count 9) Because Plaintiff Lacks Standing to Seek Declaratory Relief on That Claim**

As the government has explained, Plaintiff does not have standing to bring a pre-enforcement challenge to the material-support statute.  Br. 40–41.  Plaintiff presents several arguments in response.  *See* Opp. 36–39.  Each is unavailing.

First, Plaintiff argues that the Court must accept allegations as fact when assessing a pre-enforcement challenge.  Opp. 36–38.  But the problem with this claim is that it rests "on a hypothetical set of necessarily incomplete facts and on outright speculation."  Br. 40.  Plaintiff is not certain of Muthana's current status and involvement with ISIS, nor can Plaintiff attest with confidence how Muthana would use money that he provides to her.  *See id.*  He can only speculate about necessarily contingent and uncertain events.  Indeed, he continues to speculate about how the money he sends will be put to use.  *See* Opp. 37–38.  That speculation defeats his standing to seek a declaration that he will not violate 18 U.S.C. § 2339B.  The Court does not know, and cannot know, if these allegations are true or would be true in the future, nor what additional facts may present themselves.  So the Court cannot issue relief.  *See Nat'l Treasury Emps. Union v. United States*, 101 F.3d 1423, 1431 (D.C. Cir. 1996) (holding that the case was not "fit[] for judicial review" because the facts upon which the case's resolution depended were not "fully crystalized") (citation omitted).

Second, Plaintiff argues that he has established standing for a pre-enforcement challenge because he seeks to protect Muthana's constitutional rights.  Opp. 38–39.  This argument is unavailing.  Plaintiff has not alleged that he has a constitutional right to provide support to Muthana, which is necessary to establish standing under the rule of *Babbitt v. Farm Workers*, 442

U.S. 289 (1979), that a plaintiff must allege "an intention to engage in a course of conduct arguably affected with a *constitutional interest*, but proscribed by a statute, and there exists a credible threat of prosecution thereunder." *Id.* at 298. Plaintiff contends (Opp. 38–39) that *Holder v. Humanitarian Law Project*, 561 U.S. 1 (2010), supports his standing. It does not. In *Holder*, the plaintiffs brought a pre-enforcement *constitutional* challenge alleging that 18 U.S.C. § 2339B violated their constitutional rights. 561 U.S. at 2 ("[P]laintiffs challenge § 2339B's prohibition on providing four types of material support . . . asserting violations of the Fifth Amendment's Due Process Clause on the ground that the statutory terms are impermissibly vague, and violations of their First Amendment rights to freedom of speech and association."). Plaintiff here brings nothing of the kind. And to the extent that Plaintiff claims that Muthana, as a U.S. citizen, has a constitutional right to return to the United States, the claim fails because—as Defendants have extensively explained—Muthana is not and was never a U.S. citizen.

The Court should dismiss Count 9 for lack of subject-matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1).

## CONCLUSION

This Court should dismiss Plaintiff's claims brought as a next friend (Counts 1–8) for lack of jurisdiction or, alternatively, for failure to state a claim. In the alternative, the Court should grant summary judgment to Defendants on Counts 1 through 8 because Muthana is not and never was a U.S. citizen. Furthermore, this Court should dismiss Plaintiff's claim brought on his own behalf (Count 9) for lack of jurisdiction.

Date: May 17, 2019                              Respectfully submitted,

                                               JOSEPH H. HUNT
                                               Assistant Attorney General

                                               SCOTT G. STEWART
                                               Deputy Assistant Attorney General

                                               AUGUST E. FLENTJE
                                               Special Counsel

                                               CHRISTOPHER A. BATES
                                               Senior Counsel

                                               WILLIAM C. PEACHEY
                                               Director

                                               KATHLEEN A. CONNOLLY
                                               Deputy Chief

                                               /s/ Joseph F. Carilli, Jr.
                                               JOSEPH F. CARILLI, JR.
                                               N.H. Bar Identification No. 15311
                                               Trial Attorney
                                               United States Department of Justice
                                               Civil Division
                                               Office of Immigration Litigation
                                               District Court Section
                                               P.O. Box 868, Ben Franklin Station
                                               Washington, D.C. 20044
                                               Telephone: (202) 616-4848
                                               E-mail: joseph.f.carilli2@usdoj.gov

                                               *Attorneys for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 17, 2019, the foregoing was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Joseph F. Carilli, Jr.
JOSEPH F. CARILLI, JR.
N.H. Bar Identification No. 15311
Trial Attorney
United States Department of Justice
Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 616-4848
E-mail: joseph.f.carilli2@usdoj.gov

*Attorney for Defendants*

Exhibit A

No. _19/01767_

# United States of America



### DEPARTMENT OF STATE

## To all to whom these presents shall come, Greeting:

I Certify That __Brykyta K. Shelton,__ _ _ _ _ _ _ _ _ _ _ _ _ _ _

*whose name is subscribed to the document hereunto annexed, was at the time*

*of subscribing the same* __Chief, Records Services Division,__ _ _ _ _ _ _ _ _ _

_ _ _ __Passport Services__ _ _ _ _ _ _, *Department of State, United States*

*of America, and that full faith and credit are due to his acts as such.*

In testimony whereof, I __Michael R. Pompeo__ _ _ _ _ _

*Secretary of State, have hereunto caused the seal of the*

*Department of State to be affixed and my name subscribed by the*

*Authentication Officer of the said Department, at the city of*

*Washington, in the District of Columbia, this* _ __17th__ _ _ _ _

*day of* _ __May__ _ _ _ _, 20 _19_

*Michael R. Pompeo* _ _

*Secretary of State.*

*M Cleveland*

By _ _ _ _ _ _ _ _ _ _ _ _ _ _ _

*Authentication Officer, Department of State*

*Issued pursuant to RS 161.5 USC 22. RS 203.5 USC 158: Sec: 1 of Act of June 25, 1948. 62 St. 946. 28 USC 1733. Sec:4 of Act of Mar. 26, 1949. 63 St. 111, 5 USC 15[sic; and Secs. 104 and 332 of Act of June 27, 1952 66 St. 174 and 253, 8 USC 1104, 1443, and 5 USC 140.*

*This certificate is not valid if it is removed or altered in any way whatsoever*



**United States Department of State**

*Washington, D.C. 20520*

TO WHOM IT MAY CONCERN:

I, Brykyta K. Shelton, Chief, Records Services Division, Office of Technical Operations, Passport Services Directorate, United States Department of State, certify under penalty of perjury that, as Chief of the Records Services Division, I am the custodian of the passport files.

I further certify that: 1) the passport records attached hereto and listed below, consisting of six pages, are true copies of the original records in the custody of the Passport Services Directorate of the United States Department of State; 2) I am the custodian of these files, and 3) the records attached to this certificate were:

A. Made at or near the time of the issuance of a passport, or the occurrence of the matters set forth therein, by the person executing the record with knowledge of the information provided therein;

B. Kept in the course of regularly conducted activity under the authority of the Secretary of State to grant and issue passports; and,

C. Made during the regularly conducted activity as a regular practice under the authority of the Secretary of State to grant and issue passports.

1. Application # ████ 1612 for United States passport book # ████ 7996 issued to Hoda Ahmed Muthana on February 21, 2014, by the United States Department of State. **[Released in Part - Pursuant to the Freedom of Information Act, subsection (b)(6) and section (b) of the Privacy Act (5 U.S.C. § 552a). We have redacted material, the release of which would constitute a clearly unwarranted invasion of personal privacy of a third party, namely the passport acceptance or adjudication clerk.]**

-2-

2. Application # ███ 1612 for United States passport book # ███ 7996
   issued to Hoda Ahmed Muthana on February 21, 2014, by the United
   States Department of State.  This passport was revoked on
   January 15, 2016.  **[Released in Part - Pursuant to the Freedom of
   Information Act, subsection (b)(6) and section (b) of the Privacy
   Act (5 U.S.C. § 552a).  We have redacted material, the release of
   which would constitute a clearly unwarranted invasion of
   personal privacy of a third party, namely the passport acceptance
   or adjudication clerk.]**

I further state that this certification is intended to satisfy the following
provisions:

- Rule 44, Federal Rules of Civil Procedure
- Rule 27, Federal Rules of Criminal Procedure
- Rule 902, Federal Rules of Evidence, under Title 28, United States Code
  Annotated

Sincerely,

Brykyta K. Shelton, Chief
Records Services Division
Office of Technical Operations
Passport Services

Date:     **MAY 1 7 2019**

## 00170065-0780



# APPLICATION FOR A U.S. PASSPORT
*Please Print Legibly Using Black Ink Only*

OMB APPROVAL NO. 1405-0004
EXPIRATION DATE: 12-31-2013
ESTIMATED BURDEN: 85 MIN.

Attention: Read WARNING on page 1 of instructions
**Please select the document(s) for which you are applying:**

☑ U.S. Passport Book    ☐ U.S. Passport Card    ☐ Both

☑ 28 Page Book (Standard)    ☐ 52 Page Book (Non-Standard)

260291612

**1. Name Last**
Muthana

☐ D  ☐ O  ☐ DP  **DOTS Code**
End.#        Exp.

**First**
Hoda

**Middle**
Ahmed

**2. Date of Birth** (mm/dd/yyyy)
[redacted] 1994

**3. Sex** M ☐ F ☑

**4. Place of Birth** (City & State if in the U.S. or City & Country as it is presently known)
Hackensack New Jersey

**5. Social Security Number**
[redacted]

**6. Email Address** (e.g. my_email@domain.com)
8051 hodamuth @uab.edu

**7. Primary Contact Phone Number**
202 492 [redacted]

**8. Mailing Address:** Line 1, Street/RFD#, P.O. Box, or URB

Address Line 2: Clearly label Apartment, Company, Suite, Unit, Building, Floor, In Care Of or Attention if applicable. (e.g. In Care Of - Jane Doe, Apt # 100)
In Care Of K[redacted] S[redacted]

**City**
Hoover

**State**
AL

**Zip Code**
35226

**Country, if outside the United States**

**9. List all other names you have used.** (Examples: Birth Name, Maiden, Previous Marriage, Legal Name Change. Attach additional pages if needed)

A.                                    B.

**10. Parental Information**
Mother/Father/Parent - First & Middle Name
Ahmed

Last Name (at Parent's Birth)
Muthana

Date of Birth (mm/dd/yyyy)
[redacted] 959

Place of Birth
Yemen

Sex ☑ Male ☐ Female
U.S. Citizen? ☑ Yes ☐ No

Mother/Father/Parent - First & Middle Name
Basma Mohamed

Last Name (at Parent's Birth)
EShayri

Date of Birth (mm/dd/yyyy)
[redacted] 967

Place of Birth
Yemen

Sex ☐ Male ☑ Female
U.S. Citizen? ☐ Yes ☑ No

## CONTINUE TO PAGE 2

### DO NOT SIGN APPLICATION UNTIL REQUESTED TO DO SO BY AUTHORIZED AGENT

I declare under penalty of perjury all of the following: 1) I am a citizen or non-citizen national of the United States and have not, since acquiring U.S. citizenship or nationality performed any of the acts listed under "Acts or Conditions" on the reverse side of this application (unless explanatory statement is attached). 2) the statements made on the application are true and correct, 3) I have not knowingly and willfully made false statements or included false documents in support of this application, 4) the photograph submitted with this application is a genuine, current photograph of me, and 5) I have read and understood the warning on page one of the instructions to the application form.

X [signature]
Applicant's Legal Signature - age 16 and older

X
Mother/Father/Parent/Legal Guardian's Signature (if identifying minor)

X
Mother/Father/Parent/Legal Guardian's Signature (if identifying minor)

☐ Accepting Agent   ☐ Vice Consul USA   ☐ Passport Staff Agent

**Identifying Documents** - Applicant or Mother/Father/Parent on Second Signature Line (if identifying minor)
☐ Driver's License   Issue Date 1/04/2011   Exp. Date 5/17/2017   Place of Issue AL
☐ Passport   Name Hoda Ahmed Muthana
☐ Military
☐ Other   ID No. [redacted] 268

**Identifying Documents** - Applicant or Mother/Father/Parent on Third Signature Line (if identifying minor)
☐ Driver's License   Issue Date   Exp. Date   Place of Issue
☐ Passport
☐ Military   Name
☐ Other   ID No.

FOIA: (b)(6)

For Issuing Office Only

DS-11 12-2010

*DS 11 C 12 2010 1 *

Page 1 of 2

## 00170065-0781

**Name of Applicant** (Last, First & Middle)

Muthana, Hoda Ahmed

**Date of Birth** (mm/dd/yyyy)
1994

| 11. Height | 12. Hair Color | 13. Eye Color | 14. Occupation (if age 16 or older) | 15. Employer or School (if applicable) |
|---|---|---|---|---|
| 5'2 | Brown | Brown | Student | UAB |

**16. Additional Contact Phone Numbers**

Home  Cell  Work

Home  Cell  Work

**17. Permanent Address** - If P.O. Box is listed under Mailing Address *or* if residence is different from Mailing Address.
Street/RFD # or URB (No P.O. Box)                                      Apartment/Unit

133 Pine rock lane

City
Hoover

State  Zip Code
AL  35226

**18. Emergency Contact** - Provide the information of a person not traveling with you to be contacted in the event of an emergency
Name                                Address: Street/RFD # or P.O. Box                  Apartment/Unit

City
Hoover

State  Zip Code
AL  35226

Phone Number

Relationship
Friend

**19. Travel Plans**
Date of Trip (mm/dd/yyyy)  Duration of Trip        Countries to be Visited

**20. Have you ever been married?**  Yes ___ No ✓  If yes, complete the remaining items in #20.
Full Name of Current Spouse or Most Recent Spouse        Date of Birth (mm/dd/yyyy)   Place of Birth        U.S. Citizen?  Yes  No

Date of Marriage (mm/dd/yyyy)        Have you ever been widowed or divorced?  Yes  No   Date (mm/dd/yyyy)

**21. Have you ever applied for or been issued a U.S. Passport Book?** ✓ Yes  No  If yes, complete the remaining items in #21.
Name as printed on your most recent passport book        Most recent passport book number

Hoda Ahmed Muthana        CHR _____ 020

Status of your most recent passport book
Submitting with application  Stolen  Lost ✓ In my possession (if expired)        Date most recent passport book was issued or approximate date you applied (mm/dd/yyyy)  01/24/2005

**22. Have you ever applied for or been issued a U.S. Passport Card?**  Yes  No ✓  If yes, complete the remaining items in #22.
Name as printed on your most recent passport card        Most recent passport card number

Status of your most recent passport card
Submitting with application  Stolen  Lost  In my possession (if expired)        Date most recent passport card was issued or approximate date you applied (mm/dd/yyyy)

## PLEASE DO NOT WRITE BELOW THIS LINE

### FOR ISSUING OFFICE ONLY

Sole Parent

Name as it appears on citizenship evidence        Same

Birth Certificate  SR  CR  City  Filed        Issued

Report of Birth  240  545  1350  Filed/City

Nat'l / Citz. Cert.  Date/Place Acquired        AA        photo b/w
                                              religious
Passport (CM) SR  Per PIERS  BIDO   Same as #21   headgear

Other                                      10 b/w per Apt.

Attached

PIC of ID  DS-3053  DS-64  Bio Quest  Ctr W-5  DS-10  DS-66  DS-71  DS-60

DEPARTMENT OF STATE

FOIA: (b)(6)

* DS 11 C 12 2010 2 *

00170065-0782





**00170065-0780**

## APPLICATION FOR A U.S. PASSPORT
*Please Print Legibly Using Black Ink Only*

OMB APPROVAL NO. 1405-0004
EXPIRATION DATE: 12-31-2013
ESTIMATED BURDEN: 85 MIN

Attention: Read WARNING on page 1 of instructions.
Please select the document(s) for which you are applying:

☑ U.S. Passport Book   ☐ U.S. Passport Card   ☐ Both

☑ 28 Page Book (Standard)   ☐ 52 Page Book (Non-Standard)

260291612

**1. Name Last**
Mu~~thana~~

☐ D   ☐ O   ☐ DP   DOTS Code
End #         Exp.

**First**
Hoda

**Middle**
Ahmed

**2. Date of Birth** (mm/dd/yyyy)

**4. Place of Birth** (City & State if in the U.S.; or City & Country as it is presently known)
Hackensack  New Jersey

**5. Social Security Number**

**6. Email Address** (e.g. my_email@domain.com)
[...]odamuth @uab.edu

**7. Primary Contact Phone Number**
202 492 [...]

**8. Mailing Address:** Line 1. Street/RFD, P.O. Box, or URB

**Address Line 2.** Clearly label Apartment, Company, Suite, Unit, Building, Floor, in Care Of or Attention if applicable. (e.g. In Care Of - Jane Doe, Apt # 100)
In Care Of K[...] S[...]

**City**
Hoover

**State**     **Zip Code**
AL  35226

**Country, if outside the United States**

**9. List all other names you have used.** (Examples: Birth Name, Maiden Name, Name Change, Legal Name Change. Attach additional pages if needed)

A.                                    B.

**10. Parental Information**
Mother/Father/Parent - First & Middle Name
Ahmed

Last Name (at Parent's Birth)
Muthana

Date of Birth (mm/dd/yyyy)     Place of Birth
1959     Yemen

Sex       U.S. Citizen?
☑ Male    ☑ Yes
☐ Female  ☐ No

Mother/Father/Parent - First & Middle Name
Basma Moh[...]

Last Name (at Parent's Birth)
[...]shayri

Date of Birth (mm/dd/yyyy)     Place of Birth
1967     Yemen

Sex       U.S. Citizen?
☐ Male    ☐ Yes
☑ Female  ☑ No

— **DO NOT SIGN APPLICATION UNTIL REQUESTED TO DO SO BY AUTHORIZED AGENT** — **CONTINUE TO PAGE 2**

I declare under penalty of perjury all of the following: 1) I am a citizen or non-citizen national of the United States and have not, since acquiring U.S. citizenship or nationality, performed any of the acts listed under "Acts or Conditions" on the reverse side of this application (unless explanatory statement is attached); 2) the statements made on the application are true and correct; 3) I have not knowingly and willfully made false statements or included false documents in support of this application; 4) the photograph submitted with this application is a genuine, current photograph of me; and 5) I have read and understood the warning on page one of the instructions to the application form.

X _____
**Applicant's Legal Signature - age 16 and older**

X _____
Mother/Father/Parent/Legal Guardian's Signature (if identifying minor)

X _____
Mother/Father/Parent/Legal Guardian's Signature (if identifying minor)

☐ Acceptance Agent   ☐ (Vice) Consul USA   ☐ Passport Staff Agent

**Identifying Documents** - Applicant or Mother/Father/Parent on Second Signature Line (if identifying minor)
Driver's License   Issue Date   Exp. Date   Place of Issue
Passport           Name    Hoda [...]mel[...] Muthana
Military
Other

**Identifying Documents** - Applicant or Mother/Father/Parent on Third Signature Line (if identifying minor)
Driver's License   Issue Date   Exp. Date   Place of Issue
Passport           Name
Military
Other               ID No.

FOIA: (b)(6)

For Issuing Office Only

DS-11 12-2010

Page 1 of 2

* DS 11 C 12 2010 1 *

00170065-0781

**Name of Applicant** *(Last, First & Middle)*   **Date of Birth** *(mm/dd/yyyy)*

Muthana, Hoda Ahmed    1994

| 11. Height | 12. Hair Color | 13. Eye Color | 14. Occupation *(if age 16 or older)* | 15. Employer or School *(if applicable)* |
|---|---|---|---|---|
| 5'2 | Brown | Brown | Student | UAB |

**16. Additional Contact Phone Numbers**

Home  Cell          Home  Cell
Work          Work

**17. Permanent Address** *... is listed ...  Mailing Address **or** if residence is different from Mailing Address.*
Street/RFD # or URB *(No P.O. Box)*          Apartment/Unit

133 Pine roek Lane

City          State   Zip Code

Hoover          AL    35226

**18. Emergency Contact** - *Provide the ... person ... traveling with you to be contacted in the event of an emergency.*
Name          Address: Street/RFD # or P.O. Box          Apartment/Unit

█          S█████

City          State   Z█████   Phone Number          Relationship

Hoover          AL  █5226          Friend

**19. Travel Plans**
Date of Trip *(mm/dd/yyyy)*  Duration of Trip          Countries to b...

**20. Have you ever been married?**   Yes ✓No   If yes, comple... items in #20
Full Name of Current Spouse or Most Recent Spouse          Dat... rth *(mm/dd...)*   Place of Birth          U.S. Citizen?
          Yes   No

Date of Marriage
*(mm/dd/yyyy)*          Have you ev... een widowed or d... d?   Yes   Date *(mm/dd/yyyy)*
          No

**21. Have you ever applied for or been issued a U.S. Passport Book...**   No   If yo... complete the remaining items in #21
Name as printed on your most recent passport book          Most recent passport book number

Hoda Ahmed Muthana          ...020

Status of your most recent passport book          Date... port book was issued
Submitting with application   Stolen   Lost ✓in my possession *(if expired)*   or ap... roximate date y... applied *(mm/dd/yyyy)*   ... 01/24/2005

**22. Have you ever applied for or been issued a U.S. Passport Card?**   Yes ✓...   If yes, complete the remaining items in #22
Name as printed on your most recent passport card          M... rt passport card number

Status of your most recent passport card          Date ... cent pa... rt card w... ssued
Submitting with application   Stolen   Lost   in my possession *(if expired)*   or app... mate date y... applied *(m... dd/yyyy)*

## PLEASE DO NOT WRITE BELOW THIS LINE
### FOR ISSUING OFFICE ONLY

☐ Sole Parent

Name as it appears on citizenship evidence          Same

☐ Birth Certificate   SR   CR   City   Filed          Issued

☐ Report of Birth   240   545   1350   Filed/City

☐ Nat. / Citz. Cert.   Date/Place Acquired          At

☒ Passport  (CR)  S/R   Per PIERS   #/DOI  Same as #21          photo (ok)
religious
☐ Other          headgear

☑ Attached          10 (ok) per Apt.

DEPARTMENT OF STATE

FOIA: (b)(6)

☑ P... / R.D.   DS 3053   DS 64   Sig Guar   Ctr W-9   DS-86   DS-71   DS-60

*DS 11 C 12 2010 2 *

REVOKED

00170065-0782

