APPEAL,CLOSED,MANDAMUS,TYPE–L

# U.S. District Court
## District of Columbia (Washington, DC)
## CIVIL DOCKET FOR CASE #: <u>1:19–cv–00445–RBW</u>

MUTHANA v. POMPEO et al
Assigned to: Judge Reggie B. Walton
Cause: 28:1331 Fed. Question

Date Filed: 02/21/2019
Date Terminated: 11/18/2019
Jury Demand: None
Nature of Suit: 440 Civil Rights: Other
Jurisdiction: U.S. Government Defendant

**<u>Plaintiff</u>**

**AHMED ALI MUTHANA**
*individually, and as next friend of Hoda Muthana and Minor John Doe initials A.M.*

represented by  **Charles Davidson Swift**
CONSTITUTIONAL LAW CENTER
FOR MUSLIMS IN AMERICA
833 – E. Arapaho Rd.
Suite 102
Richardson, TX 75081
(972) 914–2507
Fax: (972) 692–7454
Email: cswift@clcma.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Christina A. Jump**
CONSTITUTIONAL LAW CENTER
FOR MUSLIMS IN AMERICA
833 – E. Arapaho Rd.
Suite 102
Richardson, TX 75081
(972) 9142507
Email: cjump@clcma.org
*ATTORNEY TO BE NOTICED*

V.

**<u>Defendant</u>**

**MICHAEL RICHARD POMPEO**
*in his official capacity as Secretary of the Department of State*

represented by  **Scott Grant Stewart**
U.S. DEPARTMENT OF JUSTICE
950 Pennsylvania Avenue, NW
Washington, DC 20530
(202) 307–6482
Fax: (202) 514–8071
Email: scott.g.stewart@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Joseph F. Carilli , Jr.**
U.S. DEPARTMENT OF JUSTICE

Civil Division
P.O. Box 868
Ben Franklin Station
Washington, DC 20044
202−616−4848
Email: joseph.f.carilli2@usdoj.gov
*ATTORNEY TO BE NOTICED*

**Defendant**

**DONALD J. TRUMP**                 represented by   **Scott Grant Stewart**
*in his official capacity as President of the*              (See above for address)
*United States*                                             *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*

                                                  **Joseph F. Carilli , Jr.**
                                                  (See above for address)
                                                  *ATTORNEY TO BE NOTICED*

**Defendant**

**WILLIAM P. BARR**                 represented by   **Scott Grant Stewart**
*in his official capacity as Attorney*                      (See above for address)
*General*                                                   *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*

                                                  **Joseph F. Carilli , Jr.**
                                                  (See above for address)
                                                  *ATTORNEY TO BE NOTICED*

**Amicus**

**CENTER FOR CONSTITUTIONAL**       represented by   **John C. Eastman**
**JURISPRUDENCE**                                    CENTER FOR CONSTITUTIONAL
                                                     JURISPRUDENCE
                                                     C/O Chapman University School of Law
                                                     One University Drive
                                                     Orange, CA 92866
                                                     877−855−3330 ext 2
                                                     Fax: (714) 844−4817
                                                     Email: jeastman@chapman.edu
                                                     *LEAD ATTORNEY*
                                                     *PRO HAC VICE*
                                                     *ATTORNEY TO BE NOTICED*

                                                  **Julie B. Axelrod**
                                                  CENTER FOR IMMIGRATION
                                                  STUDIES
                                                  1629 K Street, NW
                                                  Suite 600
                                                  Washington, DC 20006
                                                  (703) 888−2442
                                                  Fax: (202) 466−8076
                                                  Email: jba@cis.org

*ATTORNEY TO BE NOTICED*

**Amicus**

**CENTER FOR IMMIGRATION STUDIES**

represented by **Julie B. Axelrod**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

**IMMIGRATION REFORM LAW INSTITUTE**

represented by **Christopher Joseph Hajec**
IMMIGRATION REFORM LAW
INSTITUTE
25 Massachusetts Avenue, NW
Suite 335
Washington, DC 20001
(202) 232–5590
Email: chajec@irli.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Page | Docket Text |
|---|---|---|---|
| 02/21/2019 | 1 | | COMPLAINT *Seeking Expedited Relief* against WILLIAM P. BARR, MICHAEL R. POMPEO, DONALD J. TRUMP ( Filing fee $ 400 receipt number 0090–5959743) filed by AHMED ALI MUTHANA. (Attachments: # 1 Civil Cover Sheet, # 2 Summons, # 3 Affidavit Exhibit A to Complaint, # 4 Exhibit Birth Certificate, # 5 Exhibit United States Mission to United Nations Letter, # 6 Exhibit Department of State Letter, # 7 Exhibit Letter from Charles D. Swift, # 8 Exhibit Letter from U.S. Attorney ND AL)(Jump, Christina) (Entered: 02/21/2019) |
| 02/21/2019 | 2 | | Emergency MOTION to Expedite by AHMED ALI MUTHANA (Attachments: # 1 Text of Proposed Order)(Jump, Christina) (Entered: 02/21/2019) |
| 02/22/2019 | | | Case Assigned to Judge Reggie B. Walton. (zef, ) (Entered: 02/22/2019) |
| 02/22/2019 | | | SUMMONS Not Issued as to WILLIAM PELHAM BARR, MICHAEL POMPEO, DONALD J. TRUMP (zef, ) (Entered: 02/22/2019) |
| 02/22/2019 | 3 | | ERRATA *Correcting Page 1 of Complaint and Requests for Summons* by AHMED ALI MUTHANA 1 Complaint,, filed by AHMED ALI MUTHANA. (Attachments: # 1 Errata Revised Page One of Complaint, # 2 Errata Summons)(Jump, Christina) (Entered: 02/22/2019) |
| 02/22/2019 | 4 | | SUMMONS (5) Issued Electronically as to WILLIAM PELHAM BARR, MICHAEL POMPEO, DONALD J. TRUMP, U.S. Attorney and U.S. Attorney General. (Attachments: # 1 Notice and Consent)(zef, ) (Entered: 02/22/2019) |
| 02/26/2019 | 5 | | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed on United States Attorney General. Date of Service Upon United States Attorney General 02/25/2019., RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed as to the United States Attorney. Date of Service Upon United States Attorney on 2/25/2019. ( Answer due for ALL FEDERAL |

| | | |
|---|---|---|
| | | DEFENDANTS by 4/26/2019.), RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed. WILLIAM PELHAM BARR served on 2/25/2019; MICHAEL POMPEO served on 2/25/2019; DONALD J. TRUMP served on 2/25/2019 (Jump, Christina) (Entered: 02/26/2019) |
| 02/26/2019 | | MINUTE ORDER. Upon consideration of the 2 Plaintiff's Motion for Expedited Hearing, and for good cause shown, it is hereby ORDERED that the parties shall appear before the Court for a hearing on the plaintiff's Expedited Complaint for Declaratory Judgment, Injunctive Relief and Petition for Writ of Mandamus on March 4, 2019, at 11:00 a.m. Signed by Judge Reggie B. Walton on February 26, 2019. (lcrbw2) (Entered: 02/26/2019) |
| 02/26/2019 | 6 | GENERAL ORDER FOR CIVIL CASES BEFORE THE HONORABLE REGGIE B. WALTON. Signed by Judge Reggie B. Walton on February 26, 2019. (lcrbw2) (Entered: 02/26/2019) |
| 02/27/2019 | 7 | NOTICE of Appearance by Charles Davidson Swift on behalf of AHMED ALI MUTHANA (Swift, Charles) (Entered: 02/27/2019) |
| 02/27/2019 | | Set/Reset Hearings: Motion Hearing set for 3/4/2019 at 11:00 AM in Courtroom 16 before Judge Reggie B. Walton. (hs) (Entered: 02/27/2019) |
| 02/28/2019 | 8 | NOTICE of Appearance by Joseph F. Carilli, Jr on behalf of WILLIAM PELHAM BARR, MICHAEL POMPEO, DONALD J. TRUMP (Carilli, Joseph) (Entered: 02/28/2019) |
| 02/28/2019 | 9 | MOTION for Leave to File *Memorandum of Law* by AHMED ALI MUTHANA (Attachments: # 1 Text of Proposed Order, # 2 Exhibit Memorandum of Law)(Swift, Charles) (Entered: 02/28/2019) |
| 03/01/2019 | | MINUTE ORDER. Upon consideration of the 9 Plaintiff's Motion for Leave to File Memorandum of Law in Support of Plaintiff's Expedited Complaint for Declaratory, Injunctive and Mandamus Relief, and for good cause shown, it is hereby ORDERED that the motion is GRANTED. It is further ORDERED that the Plaintiff's Memorandum of Law in Support of Expedited Complaint for Declaratory, Injunctive and Mandamus Relief, ECF No. 9–2, is ACCEPTED AS FILED, and the Clerk of the Court shall file it as a separate entry on the docket. It is further ORDERED that the defendants shall file a response to the plaintiff's Complaint, if any, on or before March 4, 2019, at 8:00 a.m. Signed by Judge Reggie B. Walton on March 1, 2019. (lcrbw2) (Entered: 03/01/2019) |
| 03/01/2019 | 10 | NOTICE of Appearance by Scott Grant Stewart on behalf of All Defendants (Stewart, Scott) (Entered: 03/01/2019) |
| 03/01/2019 | 11 | MOTION for Leave to File *Amicus Brief* by Center for Constitutional Jurisprudence (Attachments: # 1 Exhibit A– Proposed Amicus Brief, # 2 Text of Proposed Order)(Axelrod, Julie) (Entered: 03/01/2019) |
| 03/01/2019 | 12 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– John C. Eastman, :Firm– Center for Constitutional Jurisprudence, :Address– One University Drive, Orange, CA 92866. Phone No. – 877–855–3330 ext 2. Fax No. – 714–844–4817 Filing fee $ 100, receipt number 0090–5976684. Fee Status: Fee Paid. by Center for Constitutional Jurisprudence (Attachments: # 1 Declaration of John Eastman, # 2 Text of Proposed Order)(Axelrod, Julie) (Entered: 03/01/2019) |

| 03/01/2019 | 15 | | SUPPLEMENTAL MEMORANDUM to re 1 Complaint,, filed by AHMED ALI MUTHANA. (ztd) (Entered: 03/04/2019) |
| 03/03/2019 | 13 | | MOTION for Leave to Appear by Telephone *Request to Appear Telephonically* by Center for Constitutional Jurisprudence (Axelrod, Julie) Modified on 3/14/2019 (znmw). (Entered: 03/03/2019) |
| 03/04/2019 | 14 | | RESPONSE TO ORDER OF THE COURT re Order on Motion for Leave to File,, filed by WILLIAM PELHAM BARR, MICHAEL POMPEO, DONALD J. TRUMP. (Attachments: # 1 Exhibit Index, # 2 Exhibit A, # 3 Exhibit B)(Carilli, Joseph) (Entered: 03/04/2019) |
| 03/04/2019 | | | MINUTE ORDER. The Court having considered the Center for Constitutional Jurisprudence's 12 Motion for Admission of Attorney Pro Hac Vice, and it appearing to the Court that the attorney referenced therein meets the requirements for pro hac vice admission under this Court's rules, it is hereby ORDERED that the motion is GRANTED. It is further ORDERED that John C. Eastman, Center for Constitutional Jurisprudence, Chapman University Fowler School of Law, One University Drive, Orange, CA 92866, is ADMITTED to practice before the Court pro hac vice. Signed by Judge Reggie B. Walton on March 4, 2019. (lcrbw2) (Entered: 03/04/2019) |
| 03/04/2019 | | | MINUTE ORDER. Upon consideration of the Center for Constitutional Jurisprudence's 13 Request to Appear Telephonically, and for good cause shown, it is hereby ORDERED that the request is GRANTED. It is further ORDERED that John Eastman may appear telephonically at the hearing scheduled for March 4, 2019. The Clerk of the Court shall provide Dr. Eastman with instructions for his telephonic appearance. Signed by Judge Reggie B. Walton on March 4, 2019. (lcrbw2) (Entered: 03/04/2019) |
| 03/04/2019 | | | MINUTE ORDER. Upon consideration of the Center for Constitutional Jurisprudence's 11 Motion for Leave to File Amicus Curiae Brief and Proposed Brief of Amicus Curiae Center for Constitutional Jurisprudence, and for good cause shown, it is hereby ORDERED that the motion is GRANTED. It is further ORDERED that the Brief of Amicus Curiae Center for Constitutional Jurisprudence in Support of Defendants/Respondents, ECF No. 11–1, is ACCEPTED AS FILED, and the Clerk of the Court shall file it as a separate entry on the docket. Signed by Judge Reggie B. Walton on March 4, 2019. (lcrbw2) (Entered: 03/04/2019) |
| 03/04/2019 | 16 | | AMICUS BRIEF by CENTER FOR CONSTITUTIONAL JURISPRUDENCE. (ztd) (Entered: 03/04/2019) |
| 03/04/2019 | | | Minute Entry; for proceedings held before Judge Reggie B. Walton: Oral Argument held on 3/4/2019. Plaintiff's 2 Motion for Expedited Consideration; heard and denied. (Court Reporter Jeff Hook) (hs) (Entered: 03/04/2019) |
| 03/04/2019 | 17 | | TRANSCRIPT OF MOTIONS HEARING before Judge Reggie B. Walton held on March 4, 2019. Page Numbers: 1 – 46. Date of Issuance: March 4, 2019. Court Reporter: Jeff Hook. Telephone number: 202–354–3373. Transcripts may be ordered by submitting the Transcript Order Form<br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other |

| | | |
|---|---|---|
| | | transcript formats, (multi–page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty–one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 3/25/2019. Redacted Transcript Deadline set for 4/4/2019. Release of Transcript Restriction set for 6/2/2019.(Hook, Jeff) (Entered: 03/04/2019) |
| 03/11/2019 | 18 | ORDER. In accordance with the attached Order, it is hereby ORDERED that the plaintiff's request for expedited consideration of this case raised in the plaintiff's 1 Expedited Complaint for Declaratory Judgment, Injunctive Relief and Petition for Writ of Mandamus is DENIED. Signed by Judge Reggie B. Walton on March 11, 2019. (lcrbw2) (Entered: 03/11/2019) |
| 04/26/2019 | 19 | MOTION to Dismiss for Lack of Jurisdiction by WILLIAM PELHAM BARR, MICHAEL POMPEO, DONALD J. TRUMP (Attachments: # 1 Exhibit Index, # 2 Exhibit A, # 3 Exhibit B, # 4 Text of Proposed Order)(Carilli, Joseph). Added MOTION for Partial Summary Judgment on 4/29/2019 (ztd). (Entered: 04/26/2019) |
| 05/03/2019 | 20 | MOTION for Leave to File *Amicus Brief* by CENTER FOR IMMIGRATION STUDIES (Attachments: # 1 Exhibit Proposed Amicus Brief)(Axelrod, Julie) (Entered: 05/04/2019) |
| 05/06/2019 | | MINUTE ORDER. Upon consideration of the 20 Motion for Leave to File Amicus Curiae Brief and Proposed Brief of Amicus Curiae Center for Immigration Studies, and for good cause shown, it is hereby ORDERED that the motion is GRANTED. It is further ORDERED that the Brief of Amicus Curiae Center for Immigration Studies in Support of Defendants/Respondents, ECF No. 20–1, is ACCEPTED AS FILED, and the Clerk of the Court shall file it as a separate entry on the docket. Signed by Judge Reggie B. Walton on May 6, 2019. (lcrbw2) (Entered: 05/06/2019) |
| 05/06/2019 | 21 | AMICUS BRIEF by CENTER FOR IMMIGRATION STUDIES. (ztd) (Entered: 05/06/2019) |
| 05/07/2019 | 22 | Unopposed MOTION for Leave to File *Amicus Curiae Brief in Support of Defendants* by IMMIGRATION REFORM LAW INSTITUTE (Attachments: # 1 Exhibit Brief of Amicus Curiae in Support of Defendants, # 2 Text of Proposed Order Granting Motion for Leave to File Amicus Curiae Brief)(Hajec, Christopher) (Entered: 05/07/2019) |
| 05/07/2019 | | MINUTE ORDER. Upon consideration of the 22 Unopposed Motion of Immigration Reform Law Institute for Leave to File Amicus Curiae Brief in Support of Defendants, and for good cause shown, it is hereby ORDERED that the motion is GRANTED. It is further ORDERED that the Brief of Amicus Curiae Immigration Reform Law Institute in Support of Defendants, ECF No. 22–1, is ACCEPTED AS FILED, and the Clerk of the Court shall file it as a |

| | | | |
|---|---|---|---|
| | | | separate entry on the docket. Signed by Judge Reggie B. Walton on May 7, 2019. (lcrbw2) (Entered: 05/07/2019) |
| 05/07/2019 | 23 | | AMICUS BRIEF by IMMIGRATION REFORM LAW INSTITUTE. (ztd) (Entered: 05/08/2019) |
| 05/10/2019 | 24 | | RESPONSE re 19 MOTION to Dismiss for Lack of Jurisdiction MOTION for Partial Summary Judgment filed by AHMED ALI MUTHANA. (Attachments: # 1 Exhibit Exhibit Inddex, # 2 Exhibit Exhibit A – Declaration of Plaintiff, # 3 Exhibit Exhibit B – Raya B. Clinton Reply Brief, # 4 Exhibit Exhibit C – 7 FAM 1100, # 5 Text of Proposed Order)(Jump, Christina) (Entered: 05/10/2019) |
| 05/13/2019 | 25 | | ERRATA *with Corrected Memorandum in Opposition to Defendants' Motion to Dismiss or in the Alternative Motion for Partial Summary Judgment* by AHMED ALI MUTHANA 24 Response to motion, filed by AHMED ALI MUTHANA. (Attachments: # 1 Exhibit Corrected Plaintiff's Memorandum in Opposition)(Jump, Christina) (Entered: 05/13/2019) |
| 05/17/2019 | 26 | | REPLY to opposition to motion re 19 MOTION to Dismiss for Lack of Jurisdiction MOTION for Partial Summary Judgment filed by WILLIAM PELHAM BARR, MICHAEL POMPEO, DONALD J. TRUMP. (Attachments: # 1 Exhibit A)(Carilli, Joseph) (Entered: 05/17/2019) |
| 11/01/2019 | 27 | | SEALED MOTION filed by AHMED ALI MUTHANA (Attachments: # 1 Exhibit Declaration, # 2 Exhibit Exhibit B, # 3 Text of Proposed Order Proposed Order)(Jump, Christina) (Entered: 11/01/2019) |
| 11/01/2019 | 28 | | MOTION for Leave to File *Renewed Motion for Expedited Ruling (Doc. 27) Under Seal* by AHMED ALI MUTHANA (Attachments: # 1 Text of Proposed Order Proposed Order)(Jump, Christina) (Entered: 11/01/2019) |
| 11/01/2019 | 29 | | REDACTED DOCUMENT– Redacted Renewed Motion for Expedited Ruling to 27 SEALED MOTION filed by AHMED ALI MUTHANA, 28 MOTION for Leave to File *Renewed Motion for Expedited Ruling (Doc. 27) Under Seal* by AHMED ALI MUTHANA. (Attachments: # 1 Exhibit Declaration, # 2 Exhibit Exhibit B, # 3 Text of Proposed Order Proposed Order)(Jump, Christina) (Entered: 11/01/2019) |
| 11/05/2019 | | | MINUTE ORDER. Upon consideration of the 28 Plaintiff's Motion for Leave to File Documents Under Seal, and for good cause shown, it is hereby ORDERED that the motion is GRANTED. It is further ORDERED that the Plaintiff's Renewed Motion for Expedited Ruling, ECF No. 27, is ACCEPTED AS FILED, and shall remain under seal until further order of the Court. It is further ORDERED that the parties shall appear before the Court for a hearing on the defendants' motion to dismiss on November 14, 2019, at 11:30 a.m. Signed by Judge Reggie B. Walton on November 5, 2019. (lcrbw2) (Entered: 11/05/2019) |
| 11/06/2019 | | | Set/Reset Hearings: Motion Hearing set for 11/14/2019 at 11:30 AM in Courtroom 16 before Judge Reggie B. Walton. (hs) (Entered: 11/06/2019) |
| 11/14/2019 | | | Minute Entry; for proceedings held before Judge Reggie B. Walton: Motion Hearing held on 11/14/2019. (Court Reporter Lisa Griffith) (hs) (Entered: 11/14/2019) |
| 11/15/2019 | 30 | | ORDER. See attached Order for details. Signed by Judge Reggie B. Walton on November 15, 2019. (lcrbw2) (Entered: 11/15/2019) |

| 12/09/2019 | 31 | | SEALED MEMORANDUM OPINION, Signed by Judge Reggie B. Walton on 12/9/2019.(This document is SEALED and only available to authorized persons.)(hs) (Entered: 12/09/2019) |
| 12/09/2019 | | | MINUTE ORDER. It is hereby ORDERED that, on or before December 16, 2019, the parties shall meet and confer and file a proposed redacted version of the Court's sealed December 9, 2019 Memorandum Opinion, ECF No. 31, to be filed on the public docket. Signed by Judge Reggie B. Walton on December 9, 2019. (lcrbw2) (Entered: 12/09/2019) |
| 12/16/2019 | 32 | | NOTICE *of Lodging* by WILLIAM P. BARR, MICHAEL RICHARD POMPEO, DONALD J. TRUMP (Attachments: # 1 Exhibit)(Carilli, Joseph) (Entered: 12/16/2019) |
| 12/17/2019 | 33 | | REDACTED MEMORANDUM OPINION. Signed by Judge Reggie B. Walton on December 9, 2019. (lcrbw2) (Entered: 12/17/2019) |
| 12/18/2019 | 34 | | ENTERED IN ERROR. . . . .NOTICE *of Appeal* by AHMED ALI MUTHANA (Jump, Christina) Modified on 12/19/2019 (ztd). (Entered: 12/18/2019) |
| 12/19/2019 | | | NOTICE OF ERROR re 34 Notice (Other); emailed to cjump@clcma.org, cc'd 12 associated attorneys –– The PDF file you docketed contained errors: 1. Incorrect event used, 2. FYI, on future filing of appeals, use the event Notice of Appeal under Appeal Documents. (ztd, ) (Entered: 12/19/2019) |
| 12/19/2019 | | | NOTICE OF ERROR re 34 Notice (Other); emailed to cjump@clcma.org, cc'd 12 associated attorneys –– The PDF file you docketed contained errors: 1. Incorrect event used, 2. Please refile document, 3. Incorrect event used and the fee can be paid when the correct Appeal event is selected. (ztd, ) (Entered: 12/19/2019) |
| 12/20/2019 | 35 | | NOTICE OF APPEAL TO DC CIRCUIT COURT by AHMED ALI MUTHANA. Fee Status: Paid; Receipt Number: ADCDC–6663736. Parties have been notified. (Jump, Christina) Modified on 12/23/2019 to enter payment information.(ztnr) (Entered: 12/20/2019) |
| 12/23/2019 | 36 | | Transmission of the Notice of Appeal, Order Appealed (Memorandum Opinion), and Docket Sheet to US Court of Appeals. The fee remains to be paid and another notice will be transmitted when the fee has been paid in the District Court re 35 Notice of Appeal to DC Circuit Court. (ztd) (Entered: 12/23/2019) |

CHARLES D. SWIFT (D.C. ID No. 987353)
        cswift@clcma.org
CHRISTINA A. JUMP (D.C. ID No. TX151)
        cjump@clcma.org
Constitutional Law Center for Muslims in America
833 E. Arapaho Rd., Ste. 102
Richardson, TX 75081
Tel: (972) 914-2507; Fax: (972) 692-7454

*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **AHMED ALI MUTHANA, individually, and as next friend of Hoda Muthana and Minor John Doe** [initials A.M.] | Cause No. 1:19-cv-00445-RBW |
| *Plaintiff/Petitioner,* | CIVIL ACTION |
| vs. | |
| **MICHEAL POMPEO, in his official capacity as Secretary of the Department of State; DONALD J. TRUMP, in his official capacity as President of the United States; and WILLIAM PELHAM BARR, in his official capacity as Attorney General.** | NOTICE OF APPEAL |
| *Defendants/Respondents.* | |

## PLAINTIFF'S NOTICE OF APPEAL

Plaintiff Ahmed Ali Muthana, individually and as Next Friend of Hoda Muthana and Minor John Doe, by and through undersigned counsel, files this Notice of Appeal of this matter to the Court of Appeals for the District of Columbia Circuit. Plaintiff appeals based on the Order of this Court dated November 15, 2019, and the Memorandum issued by this Court dated December 9, 2019.

Dated this 20th day of December, 2019.

/s/ Christina Jump
Charles D. Swift
D.C. ID No. 987353
cswift@clcma.org
Christina A. Jump
D.C. ID No. TX151
cjump@clcma.org
Constitutional Law Center for Muslims in America
833 E. Arapaho Rd, Suite 102
Richardson, TX 75081
Phone: (972) 914-2507; Fax: (972) 692-7454

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 20th day of December, 2019, I electronically filed the foregoing

with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing

to all counsel of record.

/s/ Christina Jump
Christina A. Jump
*Attorney for Plaintiff*

| | |
|---|---|
| AHMED ALI MUTHANA, individually, and as next friend of Hoda Muthana and Minor John Doe, | ) ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) Civil Action No. 19-445 (RBW) |
| MICHAEL POMPEO, in his official capacity as Secretary of the Department of State, et al., | ) ) ) ) |
| Defendants. | ) ) ) |

## ORDER

In accordance with the oral rulings issued by the Court at the motions hearing held on November 14, 2019, it is hereby

**ORDERED** that the Plaintiff's Renewed Motion for Expedited Ruling, ECF No. 27, is **GRANTED**. It is further

**ORDERED** that the defendants' Motion to Dismiss or, in the Alternative, for Partial Summary Judgment, ECF No. 19, is **GRANTED IN PART AND DENIED IN PART**. The motion is **GRANTED** to the extent that it seeks (1) summary judgment on Counts One to Eight of the plaintiff's Expedited Complaint for Declaratory Judgment, Injunctive Relief and Petition for Writ of Mandamus (the "Complaint") pursuant to Federal Rule of Civil Procedure 56 and (2) dismissal of Count Nine of the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1). The motion is **DENIED** in all other respects. It is further

**ORDERED** that summary judgment is **ENTERED** for the defendants on Counts to Eight of the Complaint. It is further

**ORDERED** that Count Nine of the Complaint is **DISMISSED WITHOUT PREJUDICE**.  It is further

**ORDERED** that this case is **CLOSED**.[1]

**SO ORDERED** this 15th day of November, 2019.

                                        REGGIE B. WALTON
                                        United States District Judge

---

[1] This Order is a final Order subject to appeal.  The Court will expeditiously issue a Memorandum Opinion consistent with this Order.

_____

)
AHMED ALI MUTHANA, individually,                    )
and as next friend of Hoda Muthana and              )
Minor John Doe,                                     )
                                                    )
          Plaintiff,                                )
                                                    )
     v.                                             )          Civil Action No. 19-445 (RBW)
                                                    )
MICHAEL POMPEO, in his official                     )          **UNDER SEAL**
capacity as Secretary of the Department of          )
State, et al.,                                      )
                                                    )
          Defendants.                               )
_____           )

## MEMORANDUM OPINION

The plaintiff, Ahmed Ali Muthana, brings this civil action individually and as the next

friend of his daughter, Hoda Muthana, and minor grandson, John Doe, against the defendants,

Michael Pompeo, in his official capacity as the Secretary of the United States Department of

State ("the "State Department"); Donald J. Trump, in his official capacity as the President of the

United States; and William Barr, in his official capacity as the Attorney General of the United

States (collectively, the "defendants"), seeking expedited declaratory, injunctive, and mandamus

relief, see Expedited Complaint for Declaratory Judgment, Injunctive Relief and Petition for Writ

of Mandamus ("Compl." or the "Complaint") ¶ 1, in his attempt to have the Court order that his

daughter and grandson be permitted to enter the United States and that he be permitted to provide

financial support to them while they are in Syria.

After denying the plaintiff's first request for expedited consideration of the relief

requested by the plaintiff on March 11, 2019, see Order at 4 (Mar. 11, 2019), ECF No. 18, on

November 14, 2019, the Court granted the Plaintiff's Renewed Motion for Expedited Ruling

("Pl.'s Mot." or the "renewed motion for expedited consideration") and granted in part and denied in part the defendants' Motion to Dismiss or, in the Alternative, for Partial Summary Judgment ("Defs.' Mot." or the "motion to dismiss"),[1] see Order at 1–2 (Nov. 15, 2019), ECF No. 30. This Memorandum Opinion provides the legal basis for the Court's November 15, 2019 Order.

## I.     BACKGROUND

According to the plaintiff, "[p]rior to his daughter's birth, [the plaintiff] worked as a diplomat for the United Nations." Compl. ¶ 18. However, "[o]n June 2, 1994, the Yemeni Ambassador Al-Aashtal required [the plaintiff] to surrender his diplomatic identity card." Id. Thereafter, his daughter, Hoda Muthana, was born in New Jersey on ████████ 1994. See id. ¶ 20. The plaintiff initially applied for a United States passport for his daughter in 2004. See id. ¶ 21. The State Department "initially questioned whether Ms. Muthana was eligible for a [United States] passport, based on [its] records showing her father's diplomatic status remained in effect until February 6, 1995," but after the plaintiff provided the State Department with a letter "confirm[ing] that the diplomatic status he had due to his employment at the [United Nations] was terminated prior to the time of Ms. Muthana's birth," Ms. Muthana's passport application was granted. Id.

In November 2014, Ms. Muthana withdrew from the university she was attending in Alabama and traveled to Syria. See id. ¶ 22. "After arriving in Syria, Ms. Muthana made her

---

[1] In addition to the filings already identified, the Court considered the following submissions in rendering its decision: (1) the Declaration of James B. Donovan ("Donovan Decl."); (2) the Brief of Amicus Curiae Center for Immigration Studies in Support of Defendants/Respondents ("CIS Brief"); (3) the Brief of Amicus Curiae Immigration Reform Law Institute in Support of Defendants ("IRLI Brief"); (4) the Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss or in the Alternative Motion for Partial Summary Judgment ("Pl.'s Opp'n"); (5) the first Declaration of Ahmed Ali Muthana (May 10, 2019) ("1st Muthana Decl."); (6) the Reply in Support of Defendants' Motion to Dismiss or, in the Alternative, for Partial Summary Judgment ("Defs.' Reply"); (7) the Plaintiff's Renewed Motion for Expedited Ruling ("Pl.'s Mot."); and (8) the second Declaration of Ahmed Ali Muthana (Oct. 31, 2019) ("2d Muthana Decl.").

2

way into [Islamic State in Iraq and Syria ('ISIS')]-controlled territory."  Id. ¶ 23.  She married

twice and had a son, John Doe, by her second husband.  Id. ¶¶ 23–24.  "On January 15, 2016, the

United States issued a letter addressed to Ms. Muthana at her parents' residence, purporting to

revoke her passport under 22 C.F.R. [§] 51.7 and 51.66[,]"

> assert[ing] for the first time that because the [United States] Permanent Mission to
> the United Nations [the ("United States Mission")], Host Country Affairs Section,
> had not been officially notified of [the plaintiff's] termination until February 6,
> 1995, [Ms. Muthana] was not "within the jurisdiction of the United States" at the
> time of her birth, and therefore [is] not a United States citizen pursuant to the
> Fourteenth Amendment to the Constitution.

Id. ¶ 25.

In December 2018, "Ms. Muthana fled ISIS-controlled territory," id. ¶ 30, and

"subsequently surrendered to Kurdish forces, who transferred her to Camp al-Hawl in northeast

Syria," id. ¶ 31.  On January 15, 2019, the plaintiff's counsel wrote a letter to the United States

Attorney for the Northern District of Alabama, "communicating [Ms. Muthana's] desire to return

[to the United States] as well as her willingness to surrender to United States authorities for any

contemplated charges."  Id. ¶ 33.

> On February 20, 2019, the . . . State Department declared on its website that "Ms.
> Hoda Muthana is not a [United States] citizen and will not be admitted into the
> United States.  She does not have any legal basis, no valid [United States] passport,
> no right to a passport, nor any visa to travel to the United States."

Id. ¶ 35.  That same day, President Trump "tweeted that 'I have instructed Secretary of State

Mike Pompeo, and he fully agrees, not to allow Hoda Muthana back into the Country!'"  Id.

¶ 36.  Ms. Muthana and her son are "currently detained in Syria by Kurdish forces at Camp Roj,

after being transferred from Camp al-Hol (also spelled al-Hawl)."  Pl.'s Mot. at 2.

On February 21, 2019, the plaintiff instituted this civil action against the defendants,

seeking expedited consideration "because of the precarious position of [the] [p]laintiff['s] [ ]

3

daughter and grandson at Camp al-Hawl in Syria, under the authority of Kurdish forces" and the President's "intent to withdraw [United States] forces from the Syrian conflict." Compl. ¶ 15. On March 4, 2019, the Court denied the plaintiff's first request for expedited relief. See Order at 4 (Mar. 11, 2019), ECF No. 18. Thereafter, on April 26, 2019, the defendants filed their motion to dismiss. See Defs.' Mot. at 1. On November 1, 2019, the plaintiff filed his renewed motion for expedited consideration, "re-urg[ing] the need for expedited relief in this matter, based on updated circumstances and newly discovered facts[,]" Pl.'s Mot. at 1, and the Court subsequently scheduled a hearing on the defendants' motion to dismiss, see Min. Order (Nov. 5, 2019). At the hearing on November 14, 2019, the Court granted the plaintiff's renewed motion for expedited consideration and granted in part and denied in part the defendants' motion to dismiss. See Order at 1 (Nov. 15, 2019), ECF No. 30. These motions are the subject of this Memorandum Opinion.

## II.    STANDARDS OF REVIEW

### A.    Motion for Expedited Consideration

Temporary restraining orders and preliminary injunctions[2] are "extraordinary remed[ies] that should be granted only when the party seeking the relief, by a clear showing, carries the burden of persuasion." Chaplaincy of Full Gospel Churches v. Eng., 454 F.3d 290, 297 (D.C. Cir. 2006) (quoting Cobell v. Norton, 391 F.3d 251, 258 (D.C. Cir. 2004)). In determining whether to issue a temporary restraining order or preliminary injunction, see Hall v. Johnson, 599 F. Supp. 2d 1, 3 n.2 (D.D.C. 2009) (noting that the same standard applies to both), a plaintiff must establish "[(1)] that he is likely to succeed on the merits, [(2)] that he is likely to suffer

---

[2] As the Court previously explained, although the plaintiff does not fashion his renewed request for expedited consideration of this case in the form of a motion for a temporary restraining order or preliminary injunction, the Court finds it appropriate to apply the same framework used to evaluate those types of motions to requests for expedited consideration. See Order at 3 (Mar. 11, 2019), ECF No. 18.

4

irreparable harm in the absence of preliminary relief, [(3)] that the balance of equities tips in his favor, and [(4)] that an injunction is in the public interest,[,]" <u>Sherley v. Sebelius</u>, 644 F.3d 388, 392 (D.C. Cir. 2011) (quoting <u>Winter v. Nat. Res. Def. Council, Inc.</u>, 555 U.S. 7, 20 (2008)).

## B.     Rule 12(b)(1) Motion to Dismiss

"Federal [district] courts are courts of limited jurisdiction[,]" <u>Kokkonen v. Guardian Life Ins. Co. of Am.</u>, 511 U.S. 375, 377 (1994), and "[a] motion for dismissal under [Federal Rule of Civil Procedure] 12(b)(1) 'presents a threshold challenge to the [C]ourt's jurisdiction[,]'" <u>Morrow v. United States</u>, 723 F. Supp. 2d 71, 75 (D.D.C. 2010) (Walton, J.) (quoting <u>Haase v. Sessions</u>, 835 F.2d 902, 906 (D.C. Cir. 1987)).  Thus, the Court is obligated to dismiss a claim if it "lack[s] [ ] subject-matter jurisdiction[.]" Fed. R. Civ. P. 12(b)(1).  Because "[i]t is to be presumed that a cause lies outside [the Court's] limited jurisdiction," <u>Kokkonen</u>, 511 U.S. at 377, the plaintiff bears the burden of establishing by a preponderance of the evidence that the Court has subject-matter jurisdiction, <u>see</u> <u>Lujan v. Defs. of Wildlife</u>, 504 U.S. 555, 561 (1992).

In deciding a motion to dismiss for lack of subject-matter jurisdiction, the Court "need not limit itself to the allegations of the complaint."  <u>Grand Lodge of the Fraternal Order of Police v. Ashcroft</u>, 185 F. Supp. 2d 9, 14 (D.D.C. 2001).  Rather, the "[C]ourt may consider such materials outside the pleadings as it deems appropriate to resolve the question [of] whether it has jurisdiction to hear the case."  <u>Scolaro v. D.C. Bd. of Elections & Ethics</u>, 104 F. Supp. 2d 18, 22 (D.D.C. 2000); <u>see</u> <u>Jerome Stevens Pharms., Inc. v. Food & Drug Admin.</u>, 402 F.3d 1249, 1253 (D.C. Cir. 2005).  Additionally, the Court must "assume the truth of all material factual allegations in the complaint and 'construe the complaint liberally, granting [the] plaintiff the benefit of all inferences that can be derived from the facts alleged.'"  <u>Am. Nat'l Ins. Co. v. Fed. Deposit Ins. Corp.</u>, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting <u>Thomas v. Principi</u>, 394 F.3d

5

970, 972 (D.C. Cir. 2005)).  However, "the [p]laintiff's factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim."  Grand Lodge, 185 F. Supp. 2d at 13–14 (alterations in original) (internal quotation marks omitted).

## C.        Rule 12(b)(6) Motion to Dismiss

A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Thus, to survive a motion to dismiss under Rule 12(b)(6) for "failure to state a claim upon which relief may be granted[,]" Fed. R. Civ. P. 12(b)(6), the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face[,]'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the [C]ourt to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id. (citing Twombly, 550 U.S. at 556); see Kowal v. MCI Commc'ns Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994) (noting that the plaintiff is entitled to "the benefit of all inferences that can be derived from the facts alleged").  Although the Court must accept the facts pleaded as true, legal allegations devoid of factual support are not entitled to this presumption.  See Kowal, 16 F.3d at 1276.  Along with the allegations made within the four corners of the complaint, the Court may also consider "any documents either attached to or incorporated in the complaint and matters of which [it] may take judicial notice."  Equal Emp't Opportunity Comm'n v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 624 (D.C. Cir. 1997).

6

**D.      Rule 56 Motion for Summary Judgment**

The Court must "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  When ruling on a Rule 56 motion for summary judgment, the Court must view the evidence in the light most favorable to the non-moving party.  See Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006) (citing Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000)).  The Court must therefore draw "all justifiable inferences" in the non-moving party's favor and accept the non-moving party's evidence as true.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  The non-moving party, however, cannot rely on "mere allegations or denials[.]"  Burke v. Gould, 286 F.3d 513, 517 (D.C. Cir. 2002) (quoting Anderson, 477 U.S. at 248).  Thus, "[c]onclusory allegations unsupported by factual data will not create a triable issue of fact."  Pub. Citizen Health Research Grp. v. Food & Drug Admin., 185 F.3d 898, 908 (D.C Cir. 1999) (Garland, J., concurring) (alteration in original) (quoting Exxon Corp. v. Fed. Trade Comm'n, 663 F.2d 120, 126–27 (D.C. Cir. 1980)).  If the Court concludes that "the non[-]moving party has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof[,]" then the moving party is entitled to summary judgment.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

### III.      ANALYSIS

The Court will first address the plaintiff's motion for expedited consideration and will then address the defendants' motion to dismiss or, in the alternative, for summary judgment.

**A.      The Plaintiff's Renewed Motion for Expedited Consideration**

The plaintiff seeks "expedited relief in this matter, based on updated circumstances and newly discovered facts[.]"  Pl.'s Mot. at 1.  Specifically, the plaintiff alleges that "[t]he President

7

of the United States most recently announced the withdrawal of [United States] troops from the

area" where Ms. Muthana and her son are currently detained, id. ¶ 5, and argues that "the failure

of the United States to urgently facilitate the return of Ms. Muthana and her son will cause

immediate and irreparable harm by jeopardizing their ability in the future to return to the United

States[,]" id. ¶ 6. The plaintiff further argues that "Ms. Muthana and Minor John Doe are in

immediate danger of both physical violence and the already fragile health of Minor John Doe

further declining." Id. ¶ 26.

The Court denied the plaintiff's previous request for expedited consideration in this

matter on the ground that "the plaintiff ha[d] not submitted any competent evidence into the

record (i.e., affidavits, exhibits) that would permit the Court to assess whether [his daughter]

[and grandson], in fact, face[] irreparable harm[.]" Order at 4 (Mar. 11, 2019), ECF No. 18 (first

alteration in original) (internal quotation marks omitted). In contrast, the plaintiff has now

submitted evidence into the record demonstrating that Ms. Muthana and her son face ongoing

threats to their health and safety, including a declaration by the plaintiff detailing

communications with his daughter, see 2d Muthana Decl. ¶¶ 11, 14 (indicating that ▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ); id. ¶ 16 ("My daughter

has also communicated to me that because she made statements on video since she has been

detained in Syria, which make it clear that she denounces ISIS, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ), and ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮



, see Pl.'s Mot., Ex. B (

) at 1 (

).  Based on the evidence now before the Court, and

considering the perilous conditions that Ms. Muthana and her son are experiencing, the Court is

now satisfied that irreparable harm does exist.[3]  See Vo Van Chu v. U.S. Dep't State, 891 F.

Supp. 650, 656 (D.D.C. 1995) ("The cumulative effect of these potential injuries—the ongoing

threat to [the plaintiff's wife's] health and safety, the ongoing threat of repatriation, and the

strong possibility that, should [the plaintiff's] be repatriated, she could not secure an exit visa—is

---

[3] As to the remaining factors of the expedited consideration inquiry, the Court finds that expedited consideration of this matter would not prejudice the defendants in this case or harm the public at large, and therefore the third and fourth factors, the balance of the equities and the public interest, weigh in favor of expedited consideration.  As to the first factor, the likelihood of success on the merits, although the Court ultimately finds that the plaintiff cannot prevail on the merits in this case, see Part III.B, infra, it nevertheless concludes that expedited consideration of this matter is appropriate, considering the demonstrated potential for irreparable injury to Ms. Muthana and her son.  See Cigar Ass'n of Am. v. U.S. Food & Drug Admin., 317 F. Supp. 3d 555, 560–61 (D.D.C. 2018) ("[T]he Court may grant [the] [p]laintiffs' motion and issue an injunction if a 'serious legal question is presented, . . little if any harm will befall other interest persons or the public, and . . . denial of the order would inflict irreparable injury on [the] [plaintiffs].'" (fourth and fifth alterations in original) (quoting Wash. Metro. Area Transit Comm'n v. Holiday Tours, Inc., 559 F.2d 841, 844 (D.C. Cir. 1977))); see id. at 563 (concluding that low likelihood of success on the merits was not fatal to the plaintiffs' motion for an injunction "[b]ecause [the] [p]laintiffs' appeal present[ed] serious legal questions on the merits, and because the likelihood of irreparable harm, the balance of the equities, and the public interest strongly favor[ed] interim relief" (internal quotation marks omitted)); Akiachak Native Cmty. v. Jewell, 995 F. Supp. 2d 7, 14 (D.D.C. 2014) ("find[ing] that [the plaintiff's] low likelihood of success on the merits [was] not fatal to its motion for a stay and injunction" where "the other factors weigh[ed] heavily in favor of [the plaintiff]").

enough the satisfy this Court that irreparable harm would exist here.").  Accordingly, the Court grants the plaintiff's renewed motion for expedited consideration.

**B.      The Defendants' Motion to Dismiss**

In analyzing the defendants' motion to dismiss, the Court will first address Counts One to Eight of the Complaint, which are brought by the plaintiff in his next friend capacity and relate to Ms. Muthana's and her son's claims to citizenship, and will then address Count Nine, which is brought by the plaintiff in his individual capacity and relates to the plaintiff's request for a declaratory judgment authorizing him to send money to Ms. Muthana to facilitate her return to the United States with her son without incurring liability pursuant to 18 U.S.C. § 2339B (2018).[4]

**1.      Counts One to Eight**

The defendants seek to dismiss Counts One to Eight of the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1), arguing that "[t]he Court lacks jurisdiction over [the] [p]laintiff's next-friend claims" because the plaintiff has provided "no valid reason why [Ms.] Muthana has not herself brought this action or signed on to the allegations in the [C]omplaint." Defs.' Mot. at 2.  The defendants also seek dismissal of Counts One to Eight pursuant to Federal Rule of Civil Procedure 12(b)(6), or alternatively, entry of summary judgment for the defendants on Counts One to Eight pursuant to Federal Rule of Civil Procedure 56, arguing that Counts One to Eight "rest on a fundamental and dispositive error—the assertion that [Ms.] Muthana is a [United States] citizen." Defs.' Mot. at 16.  The Court will first address whether the Court has jurisdiction over these claims.

---

[4] Section 2339B makes it unlawful to "provide[] material support or resources to a foreign terrorist organization[.]" 18 U.S.C. § 2339B(a).

### a. Whether the Court Lacks Jurisdiction over the Plaintiff's Next Friend Claims

The defendants argue that dismissal of Counts One to Eight is appropriate pursuant to Rule 12(b)(1) because the "[p]laintiff does not satisfy either of Whitmore[v. Arkansas]'s requirements" for next friend status. Defs.' Mot. at 13 (citing Whitmore v. Arkansas, 495 U.S. 149 (1990)). The plaintiff responds that he "demonstrates appropriate grounds for next friend status in this case." Pl.'s Opp'n at 10 (capitalization removed). The Court agrees with the plaintiff that he has standing to bring claims as Ms. Muthana's next friend.

> The traditional prerequisites for next friend standing were laid out by the Supreme Court in Whitmore v. Arkansas: "First, a 'next friend' must provide an adequate explanation—such as inaccessibility, mental incompetence, or other disability— why the real party in interest cannot appear on h[er] own behalf to prosecute the action. Second, the 'next friend' must be truly dedicated to the best interests of the person on whose behalf he seeks to litigate, and it has been further suggested that a 'next friend' must have some significant relationship with the real party in interest. The burden is on the 'next friend' clearly to establish the propriety of his status and thereby justify the jurisdiction of the court." Although it is true that Whitmore focused largely on the habeas context, . . . it recognized that courts have applied it in other settings . . . . As such, the most natural reading of Whitmore is that next friend standing is not limited to habeas cases, but instead may be invoked if plaintiffs can sufficiently demonstrate its necessity.

Ali Jaber v. United States, 155 F. Supp. 3d 70, 75–76 (D.D.C. 2016) (citation omitted) (quoting Whitmore v. Arkansas, 495 U.S. 149, 163–64 (1990)), aff'd sub nom. Jaber v. United States, 861 F.3d 241 (D.C. Cir. 2017).

As to the first prong of the Whitmore test, the defendants argue that the "[p]laintiff rests his assertion that he should be entitled to sue as his daughter's next friend on the claim that [Ms.] Muthana has had difficulty communicating with counsel[,]" Defs.' Mot. at 13 (internal quotation marks omitted), but the "[p]laintiff acknowledges that both he and his counsel have received communications from [Ms.] Muthana, and further acknowledges that [Ms.] Muthana has

11

repeatedly [been interviewed] by Western news media," id. (third alteration in original) (citation and internal quotation marks omitted). The plaintiff responds that

> Ms. Muthana is being held by Kurdish forces and has little to no control over her ability to communicate with the outside world. She is not able to text or call home freely, and both [the] [p]laintiff and counsel for [the] [p]laintiff have no ability to initiate contact with her.

Pl.'s Opp'n at 10 (citation omitted). Additionally, in his first declaration submitted to this Court, the plaintiff states that "[w]henever [he] do[es] hear from [his] daughter, it is almost always from a new phone number, and she identifies that she is borrowing a phone from someone, or using the camp Administration phone[,]" 1st Muthana Decl. ¶ 39, and that he "ha[s] tried to reach her subsequently at each number from which [he] ha[s] received a message from her, but it has not been successful[,]" id. ¶ 40. Based on the plaintiff's representations, the Court concludes that Ms. Muthana is "sufficiently inaccessible to invoke next friend standing, at least at this stage of the proceedings." Ali Jaber, 155 F. Supp. 3d at 76 (concluding that, "on a motion to dismiss, [the] defendants' speculation [that the plaintiffs might be able to participate in court proceedings, even though they could not leave Yemen,] c[ould] [not] defeat [the] plaintiffs' sworn statement that[] . . . telephone contact was sporadic and difficult from Khashamir, and that [t]eleconferencing, internet[,] and other forms of communication were nearly impossible" (eighth alteration in original) (internal quotation marks omitted)).

As to the second prong of the Whitmore test, the defendants argue that the "[p]laintiff has not made an adequate showing that he is acting in accord with [Ms.] Muthana's interests." Defs.' Mot. at 14. Specifically, they argue that the "[p]laintiff alleges that [Ms.] Muthana wishes to return to the United States and is ready to face the consequences of her actions[,] . . . [b]ut [Ms.] Muthana's own past statements raise questions regarding whether [Ms.] Muthana and [the] [p]laintiff are aligned on this point." Id. The plaintiff responds that the "[d]efendants rely on

12

statements made by Ms. Muthana in 2015, nearly four years ago[,]" and that "[i]n all communications since leaving ISIS-controlled territory, Ms. Muthana has been clear and consistent that she regrets her actions and wishes to return to the United States [to] face justice." Pl.'s Opp'n at 12. Additionally, in his first declaration, the plaintiff states that his "daughter began communicating with [him] in late 2018 that she wishes to surrender to United States authorities, and is willing to be subject to any legal consequences under the United States judicial system" and "also communicated to [him] at that time that she wants to return to the United States[] with her son[,]" and that he "want[s] her to return to the United States with her son ([his] grandson) as well." 1st Muthana Decl. ¶¶ 31–33.

> Although [t]he existence of a significant relationship enhances the probability that a putative next friend knows and is dedicated to the [absent party's] individual best interests, courts have refused to infer—simply on the basis of a close familial tie— that a putative next friend actually represents the absent party's best interests. In other words, where a party's own views as to his best interests appear to conflict with those of a putative next friend, a court cannot substitute the views of the would- be next friend for those of the absent party, even where the purported next friend is a loving parent who only wants what he rationally believes to be in the best interests of his adult child.

Al-Aulaqi v. Obama, 727 F. Supp. 2d 1, 22 (D.D.C. 2010) (alterations in original) (citations and internal quotation marks omitted).

Here, however, not only has the plaintiff demonstrated that he has a significant relationship with Ms. Muthana, but he has also demonstrated that, since at least late 2018, their interests have been aligned. See 1st Muthana Decl. ¶¶ 31–33 (representing that Ms. Muthana has expressed a desire to return to the United States); see also Pl.'s Mot., Ex. B (Muthana Ltr.) at 4 (letter signed by Ms. Muthana stating that "[c]oming to Syria was a mistake" and making "a plea[] to be rescued"); cf. Al-Aulaqi, 727 F. Supp. 2d at 22–23 (concluding that the plaintiff lacked standing to bring claims as his son's next friend where his son was "mentally competent,

13

and . . . ha[d] access to the courts within the meaning of <u>Whitmore</u>[,] [a]nd yet, during the past ten months that his name ha[d] allegedly appeared on 'kill lists,' [his son] ha[d] neither filed suit on his own behalf nor expressed any desire to do so").  Accordingly, based on the record in this case, the Court finds that the plaintiff, as Ms. Muthana's father, has a significant relationship with Ms. Muthana and that he is also representing Ms. Muthana's best interests.

Because the plaintiff has satisfied the two prongs of the test for next friend standing articulated in <u>Whitmore</u>, the Court concludes that the plaintiff has standing to bring Counts One to Eight as the next friend of Ms. Muthana and her son and therefore denies the defendants' motion to dismiss Counts One to Eight pursuant to Rule 12(b)(1).

### b. Whether Ms. Muthana was Subject to the Jurisdiction of the United States at the Time of Her Birth

The defendants argue that dismissal of Counts One to Eight of the Complaint pursuant to Rule 12(b)(6), or alternatively, entry of summary judgment for the defendants on Counts One to Eight pursuant to Rule 56, is appropriate because Counts One to Eight "all rest on a fundamental and dispositive error—the assertion that [Ms.] Muthana is a [United States] citizen."  Defs.' Mot. at 16.  Specifically, they argue that the

> [p]laintiff alleges that he was terminated from his diplomatic position with the Yemeni Mission to the United States no later than September 1, 1994.  It is undisputed that [(the "United States Mission")] was not formally notified of his termination, however, until February 6, 1995.  Thus, under the plain terms of the Vienna Convention, and consistent with the practice of the United States regarding individuals accredited to permanent missions to the United Nations, [the] [p]laintiff's diplomatic status ceased on February 6, 1995—the date the receiving State (the United States, through [the United States Mission]), received notice of his termination.  In the meantime, [Ms.] Muthana was born in New Jersey on ███████ 1994.

Defs.' Mot. at 19–20 (citations and internal quotation marks omitted).  The plaintiff disputes the defendants' interpretation of the Vienna Convention, arguing that "[i]mmunity for a diplomat

14

and family members lasts only as long as the diplomatic position itself." Compl. ¶ 41; see Pl.'s Opp'n at 2 n.2 ("[The] [p]laintiff does not believe the date of official notice to be relevant to the end of his duties and therefore his entitlement to immunity[.]").  The plaintiff alternatively argues that, even if Ms. Muthana did not become a citizen at birth, "[t]he [United States] government should be equitably estopped from disputing Ms. Muthana's previously recognized citizenship based on its earlier determination."  Pl.'s Opp'n at 33.

As a preliminary matter, the Court addresses whether the defendants' motion should be treated as a motion to dismiss Counts One to Eight pursuant to Rule 12(b)(6), or as one for summary judgment pursuant to Rule 56.  As support for their Rule 12b(b)(6) motion to dismiss, the defendants submitted the declaration of James B. Donovan, the current Minister for Host Country Affairs at the United States Mission; supporting exhibits to Mr. Donovan's declaration; and a State Department certification executed by Mr. Donovan.  See generally Donovan Decl.; Defs.' Mot., Exhibit ("Ex.") B (certification by James B. Donovan (Mar. 1, 2019) ("Donovan Cert." or the "State Department certification")).  Rule 12(d) instructs that, "[i]f, on a motion under Rule 12(b)(6) . . . , matters outside the pleadings are presented to and not excluded by the [C]ourt, the motion must be treated as one for summary judgment under Rule 56.  All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d); see 3M Co. v. Boulter, 842 F. Supp. 2d 85, 100 (D.D.C. 2012) ("The . . . Circuit agrees that Federal Rules 12 and 56 are properly construed to require that a speaking motion to dismiss must be treated as a motion for summary judgment."); see also id. at 97 (defining a "speaking motion" as a "motion[] attacking the merits of a pleader's claim by relying on matters outside the pleadings, such as affidavits or other factual material").  "A motion may be treated as one for summary judgment even if the parties have not been provided with notice or

an opportunity for discovery if they have had a reasonable opportunity to contest the matters outside of the pleadings such that they are not taken by surprise."  Beach TV Props., Inc. v. Solomon, 324 F. Supp. 3d 115, 123 (D.D.C. 2018) (quoting Bowe-Connor v. Shinseki, 845 F. Supp. 2d 77, 85 (D.D.C. 2012)).  Because it is impossible for the Court to evaluate the merits of the defendants' Rule 12(b)(6) motion to dismiss without considering the materials submitted by the defendants, and because the plaintiff was not "taken by surprise[,]" id., by the defendants' intention to convert their Rule 12(b)(6) motion to dismiss into a Rule 56 motion for summary judgment, see Defs.' Mot. at 3 ("[T]he Court should dismiss the [C]omplaint in its entirety under Rule 12.  In the alternative, the Court should grant summary judgment to [the][d]efendants on Counts [One] t[o] [Eight]."), the Court finds it appropriate to convert the defendants' Rule 12(b)(6) motion to dismiss Counts One to Eight into a Rule 56 motion for summary judgment on those counts of the Complaint.

The Court next addresses whether the plaintiff enjoyed diplomatic immunity at the time of Ms. Muthana's birth, and whether Ms. Muthana was therefore subject to the jurisdiction of the United States at the time of her birth.  The Fourteenth Amendment to the United States Constitution provides that "[a]ll persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States[.]"  U.S. Const. amend. XIV; see also 8 U.S.C. § 1401(a) (2018).  "The jurisdiction clause 'was intended to exclude from its operation children of ministers . . . of foreign States born within the United States.'"  Nikoi v. Att'y Gen. of the U.S., 939 F.2d 1065, 1066 (D.C. Cir. 1991) (alteration in original) (first quoting Slaughter-House Cases, 83 U.S. 36, 73 (1873); then citing United States v. Wong Kim Ark., 169 U.S. 649, 693 (1898)).  Thus, children born in the United States to a parent with diplomatic immunity at the time of their birth are not "subject to the jurisdiction" of the United States at the time of their

16

birth.  See id. ("Because one parent was a foreign official with diplomatic immunity when each child was born, the births did not confer United States citizenship."); see also Raya v. Clinton, 703 F. Supp. 2d 569, 576 (W.D. Va. 2010) ("[I]f the plaintiff's father was entitled to diplomatic privileges and immunities in this country on the date the plaintiff was born, the plaintiff is not a United States citizen.").  "Pursuant to the Diplomatic Relations Act of 1978, 22 U.S.C. §§ 254a–254e, the governing law in the United States on the issue of diplomatic privileges and immunities is the Vienna Convention on Diplomatic Relations" (the "Vienna Convention").  Raya, 703 F. Supp. 2d at 576.

> The determination of whether a person has diplomatic immunity is a mixed question of law and fact.  [The Court] review[s] such questions under a hybrid standard, applying to the factual portion of each inquiry the same standard applied to questions of pure fact and examining de novo the legal conclusions derived from those facts.  Interpretation of an international treaty is an issue of law subject to de novo review.

United States v. Al-Hamdi, 356 F.3d 564, 569 (4th Cir. 2004) (citations and internal quotation marks omitted).

In determining whether the plaintiff enjoyed diplomatic immunity at the time of Ms. Muthana's birth, the Court must first determine whether the defendants' interpretation of the Vienna Convention, i.e., that the plaintiff's diplomatic immunity extended until the date when the United States Mission was notified of his termination, is reasonable.  See id. at 570 ("[The Court] first must ensure that the State Department's certification was not based on an impermissible interpretation of the Vienna Convention.  Then, [the Court] will examine the evidentiary effect of the State Department's certification made pursuant to that interpretation.").  The Vienna Convention provides that "[t]he Ministry for Foreign Affairs of the receiving State, or such other ministry as may be agreed, shall be notified of: [ ] the appointment of members of the mission, their arrival and their final departure or the termination of their functions with the

17

mission[.]"  Vienna Convention, art. 10(1)(a), Apr. 18, 1961, 23 U.S.T. 3227 (emphasis added).

It further provides that

> [w]hen the <u>functions</u> of a person enjoying privileges and immunities have come to an end, such privileges and immunities shall normally cease at the moment when he leaves the country, or on expiry of a reasonable period in which to do so, but shall subsist until that time, even in case of armed conflict.

<u>Id.</u> art. 39(2) (emphasis added).  Article 43 of the Vienna Convention provides that

> [t]he function of a diplomatic agent comes to an end, <u>inter alia</u>:
> (a) on <u>notification</u> by the sending State to the receiving State that the function of the diplomatic agent has come to an end;
> (b) on <u>notification</u> by the receiving State to the sending State that, in accordance with paragraph 2 of Article 9, it refuses to recognize the diplomatic agent as a member of the mission.

<u>Id.</u> art. 43 (emphasis added); <u>see</u> <u>Raya</u>, 703 F. Supp. 2d at 576.

> When interpreting a treaty or memorandum of understanding, [the Court] [is] guided by principles similar to those governing statutory interpretation.  [The Court] must, of course, begin with the language of the [t]reaty itself.  At this level, [t]he clear import of treaty language controls unless application of the words of the of the treaty according to their obvious meaning effects a result inconsistent with the intent or expectations of its signatories.  To the extent that the meaning of treaty terms are not plain, [the Court] give[s] great weight to the meaning attributed to treaty provisions by the [g]overnment agencies charged with their negotiation and enforcement . . . . <u>[W]here an agency has wide latitude in interpreting the [treaty], . . . [the Court] will defer to its reasonable interpretation.</u>

<u>Iceland S.S. Co. Ltd.-Eimskip v. U.S. Dep't of Army</u>, 201 F.3d 451, 458 (D.C. Cir. 2000) (fifth and twelfth alterations in original) (emphasis added) (citations and internal quotation marks omitted).

Here, the Court must "give 'substantial deference' to the State Department's interpretation of [the Vienna Convention], and in the context of diplomatic immunity, the receiving state always has had 'broad discretion to classify diplomats.'"  <u>Al-Hamdi</u>, 356 F.3d at 571 (quoting <u>Abdulaziz v. Metro. Dade Cty.</u>, 741 F.2d 1328, 1331 (11th Cir. 1984)).  Moreover, the plaintiff in this case "has failed to show how the [defendants'] interpretation violates the

dictates of the Vienna Convention or infringes on the [Vienna] Convention's purpose of ensur[ing] the efficient performance of the functions of diplomatic missions as representing States." Id. (third alteration in original) (internal quotation marks omitted). Indeed, it is the plaintiff's—not the defendants'—interpretation of the Vienna Convention that "violates the dictates of the Vienna Convention." Id. The plaintiff's interpretation of the Vienna Convention, i.e., that the plaintiff's diplomatic function came to an end on September 1, 1994, the date when his diplomatic position was terminated, violates traditional canons of construction by rendering Article 43 of the Vienna Convention, which states that "[t]he function of a diplomatic agent comes to an end[] . . . on notification by the sending State to the receiving State that the function of the diplomatic agent has come to an end[,]" Vienna Convention art. 43(a) (emphasis added), "insignificant, if not wholly superfluous[,]" Duncan v. Walker, 533 U.S. 167, 174 (2001) (stating that it is the Court's "duty to give effect, if possible, to every clause and word of a statute" (internal quotation marks omitted)); see Pielage v. McConnell, 516 F.3d 1282, 1288 (11th Cir. 2008) ("[T]reaties, like statutes, should be construed so that no words are treated as being meaningless, redundant, or mere surplusage."). Accordingly, the Court concludes that the defendants' interpretation of the Vienna Convention is reasonable.

Having concluded that the defendants' interpretation of the Vienna Convention is reasonable, the Court next turns to whether the defendants have provided conclusive proof of the date of notification of the plaintiff's termination, or whether further discovery is required. The defendants argue that "the Court should consider the [State] Department['s] . . . certification as conclusive proof of the dates [the] [p]laintiff enjoyed diplomatic immunity." Defs.' Reply at 12. The plaintiff responds that "[t]his Court, and [the] [p]laintiff, are not obligated to accept the determination made by [the] [d]efendants regarding [the plaintiff's] diplomatic status,

19

particularly when the [State] Department . . . documents contradict themselves and the [State] Department['s] . . . own prior determination." Pl.'s Opp'n at 32. The Supreme Court has "stated that because Article II of the Constitution gave the executive branch the power to send and receive ambassadors, 'the certificate of the [S]ecretary of [S]tate . . . is the best evidence to prove the diplomatic character of a person accredited as a minister.'" Al-Hamdi, 356 F.3d at 571 (quoting In re Baiz, 135 U.S. 403, 421 (1890)). Additionally, "[i]n cases of more recent vintage, circuit courts have continued to find the State Department's certification conclusive." Id. at 572 (collecting cases); see id. at 573 ("hold[ing] that the State Department's certification, which [was] based upon a reasonable interpretation of the Vienna Convention, [was] conclusive evidence as to the diplomatic status of an individual").

As support of their alternative motion for summary judgment in this case, the defendants submitted the State Department certification, executed by Mr. Donovan, which states that "[o]n February 6, 1995, the United Nations provided the [United States] Mission with official notification of [the plaintiff's] termination from the Yemeni Mission . . . . [The plaintiff] and his family enjoyed diplomatic agent level immunity until February 6, 1995." Defs.' Mot., Ex. B (Donovan Cert.); see Pl.'s Opp'n at 2–3 n.2. This certification, which, as the Court has already concluded, "is based upon a reasonable interpretation of the Vienna Convention, is conclusive evidence as to the diplomatic status" of the plaintiff. Al-Hamdi, 356 F.3d at 573. Moreover, the defendants have provided additional records corroborating the State Department certification. See Donovan Decl., Ex. 1 (KARDEX Record for Ahmed Ali Muthana) (indicating that the plaintiff's diplomatic status was terminated on February 6, 1995); id., Ex. 2 (TOMIS Record for Ahmed Ali Muthana) (same). Despite this documentation, the plaintiff responds that "the documents provided by [the] [d]efendants do not conclusively reveal the date on which the

20

United States first learned of the end of [the plaintiff's] duties." Pl.'s Opp'n at 2 n.2. To counter the State Department certification, the plaintiff relies on a certification executed by Russell F. Graham, who previously served as the Minister Counsel of Host Country Affairs at the United States Mission, the position currently occupied by Mr. Donovan, "certify[ing] that . . . [the plaintiff] was notified to the United States Mission as a diplomatic member to the Permanent Mission of Yemen to the United Nations from October 15, 1990 to September 1, 1994." Pl.'s Opp'n at 2 n.2; see Compl., Ex. C (certification by Russell F. Graham (Oct. 18, 2004)) (the "Graham certification")). Additionally, the plaintiff argues that one of the exhibits submitted with Mr. Donovan's declaration raises a question as to the date when the United States Mission received official notification of the plaintiff's termination because it indicates that the plaintiff "left the [United States] Mission in September 1994[.]" Donovan Decl., Ex. 3 (termination list sent from United Nations Office of Protocol to United States Mission) (the "termination list")). However, both the Graham certification and the termination list speak to the date of the plaintiff's termination from the United States Mission, not the date when the United States Mission was notified of the plaintiff's termination from the United States Mission. As discussed supra, it is the date of notification of the plaintiff's termination—not the date of the termination itself—that governs the diplomatic immunity inquiry, and thus the Graham certification and the termination list do not undermine the determination in the State Department certification that the United States Mission did not receive notice of the plaintiff's termination until February 6, 1995. Therefore, because the defendants have offered "conclusive evidence as to the diplomatic status" of the plaintiff at the time of Ms. Muthana's birth, Al-Hamdi, 356 F.3d at 573, which the plaintiff has failed to rebut, "th[e] Court may not go behind the State Department's determination that the plaintiff's father enjoyed diplomatic privileges and immunities . . . through [February 6, 1995],

21

or permit the plaintiff to engage in further discovery on this issue." Raya, 703 F. Supp. 2d at

578. And, "[b]ecause the certification from the State Department conclusively establishes that

the plaintiff[] [ ] enjoyed diplomatic privileges and immunities in the United States on the date

that [Ms. Muthana] was born, [the Court is compelled to conclude that] [Ms. Muthana] is not a

United States citizen" by virtue of having been born in the United States,[5] id., and John Doe is

not a United States citizen by virtue of being Ms. Muthana's child.[6]

Relying on Magnuson v. Baker, a Ninth Circuit case, see Pl.'s Opp'n at 35–36 (citing

Magnuson v. Baker, 911 F.2d 330 (9th Cir. 1989)), the plaintiff argues that even if Ms. Muthana

did not become a United States citizen at the time of her birth, the defendants "should be

equitably estopped from disputing Ms. Muthana's previously recognized citizenship based on

[the State Department's] earlier determination" that Ms. Muthana was a United States citizen.

Id. at 33. Specifically, he alleges that "the United States, in recognition of Ms. Muthana's

birthright citizenship, granted Ms. Muthana a United States passport in January 2005, and later

---

[5] In Count Two, the plaintiff argues that Ms. Muthana became a citizen at birth based on "her mother's pending legal residency and prior legal entry into the United States." Compl. at 13 (emphasis added). However, this claim has no merit because, at the time of Ms. Muthana's birth, Ms. Muthana's mother was not a United States citizen and therefore, as the plaintiff's wife, she too enjoyed diplomatic immunity at the time of Ms. Muthana's birth. See Vienna Convention art. 37(1) ("The members of the family of a diplomatic agent forming part of his household shall, if they are not nationals of the receiving State, enjoy the privileges and immunities specified in articles 29 to 36."); see also Nikoi, 939 F.2d at 1066 ("Because one parent was a foreign official with diplomatic immunity when each child was born, the births did not confer United States citizenship." (emphasis added)).

[6] The following would be the legal basis for Ms. Muthana's son acquiring United States citizenship at birth:

> A person born abroad in wedlock to a [United States] citizen and an alien acquires [United States] citizenship at birth if the [United States] citizen parent has been physically present in the United States or one of its outlying possessions prior to the person's birth for the period required by the statute in effect when the person was born ([Immigration and Nationality Act] [§] 301(g), formerly [Immigration and Nationality Act] [§] 301(a)(7)[]). For birth on or after November 14, 1986, the [United States] citizen parent must have been physically present in the United States or one of its outlying possession for five years prior to the person's birth, at least two of which were after the age of fourteen.

Acquisition of U.S. Citizenship by a Child Born Abroad, U.S. Dep't of State – Bureau of Consular Affairs, https://travel.state.gov/content/travel/en/legal/travel-legal-considerations/us-citizenship/Acquisition-US-Citizenship-Child-Born-Abroad.html (last visited Dec. 9, 2019). However, this means of acquiring United States citizenship at birth does not apply here since Ms. Muthana is not a United States citizen.

22

renewed that passport in 2014." Id. at 34.  He argues that the "defendants are prevented by

estoppel from now disputing Ms. Muthana's citizenship[,]" id. at 33 (capitalization removed),

because "[the plaintiff] and his daughter relied on this representation, and as a result did not take

further action to procure or clarify her status in the United States, as they would have otherwise,

and as [the plaintiff] did for [his] older children[,]" id. at 34.  Additionally, he contends that

"[t]here is no evidence to suggest that [the plaintiff] or his daughter (who was a minor at the

time) acted in bad faith or presented anything but accurate information to the United States."  Id.

at 34.  The defendants respond that "courts cannot grant citizenship through use of equitable

powers[,]" Defs.' Reply at 18, and the "[p]laintiff's allegations establish that the [State]

Department . . . did exactly what it was statutorily authorized to do: revoke an erroneous grant of

a passport in a routine exercise of the Secretary of State's authority[,]" id. at 19.

At the outset, the Court notes that the plaintiff's reliance on Magnuson is misplaced.

Although the Ninth Circuit in Magnuson concluded that the Secretary of State could not revoke a

previously-issued United States passport with a pre-revocation hearing "solely on the basis of

'second thoughts[,]'" Magnuson, 911 F.2d at 336,

> the legal landscape regarding cancellation of passports has changed substantially
> since Magnuson was decided in 1990.  In 1994, Congress added a section to the
> Immigration and Nationality Act authorizing the Secretary of State to cancel
> passports and reports of birth if it appeared that they were obtained illegally,
> fraudulently, or erroneously.

Atem v. Ashcroft, 312 F. Supp. 2d 792, 799 (E.D. Va. 2004).  Section 1504 of Title 8 of the

United States Code provides that "[t]he Secretary of State is authorized to cancel any United

States passport or Consular Report of Birth, or certified copy thereof, if it appears that such

document was illegally, fraudulently, or erroneously obtained from, or was created through

illegality or fraud practiced upon, the Secretary."  8 U.S.C. § 1504(a).  "In light of Congress'[s]

23

enactment of § 1504, the Ninth Circuit's conclusion [in <u>Magnuson</u>] . . . is no longer persuasive. This is so because Congress has now expressly authorized the Secretary of State to revoke passports in certain instances[.]" <u>Atem</u>, 312 F. Supp. 2d at 799.

Moreover, equitable relief is not otherwise available to Ms. Muthana in this instance. "Courts cannot grant citizenship through their equitable powers." <u>Hizam v. Kerry</u>, 747 F.3d 102, 110 (2d Cir. 2014) (citing <u>Immigration & Nationality Serv. v. Pangilinan</u>, 486 U.S. 875, 885 (1988)); <u>see also</u> <u>Pangilinan</u>, 486 U.S. at 885 ("Neither by application of the doctrine of estoppel, nor by invocation of equitable powers, nor by any other means does a court have the power to confer citizenship in violation of these limitations."). "When the State Department issues a [passport] it does not grant citizenship—it simply certifies that a person was a citizen at birth. Issuing or revoking a [passport] does not change the underlying circumstances of an individual's birth and does not affect an individual's citizenship status." <u>Hizam</u>, 747 F.3d at 107 (citing 8 U.S.C. § 1504(a)); <u>see</u> <u>Chacoty v. Tillerson</u>, 285 F. Supp. 3d 293, 298 (D.D.C. 2018) ("The issuance or rescission of a [passport] [ ], 'affect[s] only the document and not the citizenship status of the person.' That is because . . . passports[] do not confer citizenship; rather, they merely provide proof of one's status of as a citizen." (quoting 8 U.S.C. § 1504(a)). Therefore, the State Department's "[r]evo[cation] [of] [Ms. Muthana's] [passport] did not change h[er] citizenship status. Instead, it withdrew the proof of a status [that] [s]he did not possess." <u>Hizam</u>, 747 F.3d at 108. Thus,

> [b]ecause the [passport] does not confer citizenship, and because [Ms. Muthana] is plainly not a citizen, . . . [an] order [by this Court] that the State Department re-issue the [passport] [would] allow[] [Ms. Muthana] to maintain proof of citizenship without actually being a citizen . . . . Such an incongruous result cannot stand.

<u>Id.</u> at 110; <u>see</u> <u>Pangilinan</u>, 486 U.S. at 884 ("Once it has been determined that a person does not qualify for citizenship, . . . the district court has no discretion to ignore the defect and grant

citizenship." (quoting <u>Fedorenko v. United States</u>, 449 U.S. 490, 517 (1988))). The Court must therefore deny the plaintiff's request for equitable relief.

Accordingly, because the defendants have offered conclusive evidence that the plaintiff enjoyed diplomatic immunity at the time of Ms. Muthana's birth and therefore Ms. Muthana did not acquire citizenship by birth and her son did not acquire citizenship as a child born abroad to a United States citizen, and equitable relief is not available to Ms. Muthana, the Court must grant summary judgment to the defendants on Counts One to Eight of the Complaint pursuant to Rule 56.

### 2. Count Nine

The defendants argue that Count Nine should be dismissed pursuant to Rule 12(b)(1) because the "[p]laintiff has not established standing" on Count Nine and "improperly seeks an advisory opinion." Defs.' Mot. at 40. Specifically, the defendants argue that the "[p]laintiff has not alleged that he has a constitutional right to provide support to [Ms.] Muthana, which is necessity to establishing standing under the rule of <u>Babbitt v. [United] Farm Workers</u>." Defs.' Reply at 24 (citing <u>Babbitt v. United Farm Workers</u>, 442 U.S. 289 (1979)). The plaintiff counters that "he wishes to provide assistance to his daughter and grandson to assist with his daughter's exercise of her constitutional right to return to the United States[,] [ ] [which] fits within the framework contemplated in <u>Holder v. Humanitarian Law Project</u>[.]" Pl.'s Opp'n at 38 (citing <u>Holder v. Humanitarian Law Project</u>, 561 U.S. 1 (2010)). However, the Court agrees with the defendants that the plaintiff does not have standing to bring Count Nine in his individual capacity.

> Where a plaintiff has yet to face prosecution under a statute he seeks to challenge, the Supreme Court, in <u>Babbitt v. United Farm Workers</u>, requires that he establish Article III standing by (1) "alleg[ing] an intention to engage in a course of conduct

25

arguably affected with a constitutional interest, but proscribed by a statute," and (2) demonstrating that "there exists a credible threat of prosecution thereunder."

Ord v. District of Columbia, 587 F.3d 1136, 1140 (D.C. Cir. 2009) (alteration in original) (quoting Babbitt, 442 U.S. at 299).

The plaintiff's reliance on Holder is misplaced. As the defendants correctly note, unlike the plaintiffs in Holder, who "brought a pre-enforcement constitutional challenge alleging that 18 U.S.C. § 2339B violated their constitutional rights," Defs.' Reply at 25; see Holder, 561 U.S. at 10–11 ("claim[ing] that the material-support statute was unconstitutional . . . [because] it violated their freedom of speech and freedom of association under the First Amendment" and "was unconstitutionally vague"), the plaintiff in this case does not challenge the legality of the statute; he merely seeks a declaratory judgment "that he may send money to ensure the survival of his daughter and grandson . . . without incurring liability under § 2339B[,]" Compl. at 27. Moreover, even assuming that the plaintiff is challenging the legality of the statute, he has not identified any personal constitutional right of his that would be affected. As the defendants correctly argue, the "[p]laintiff does not allege a constitutional right to transfer money abroad to an adult child." Defs.' Mot. at 41. And, because the plaintiff brings Count Nine individually, not in a next friend capacity, he cannot claim a violation of Ms. Muthana's purported constitutional rights to establish his own standing on this claim. Thus, the plaintiff fails to satisfy the first prong of the Babbitt pre-enforcement standing test. The Court therefore grants the defendants' motion to dismiss Count Nine of the Complaint pursuant to Rule 12(b)(1).

## IV. CONCLUSION

Every judge at some point in his or her career will have to decide a case he or she wishes had not been assigned to him or her. This is one of those cases.

As the father of a daughter, the undersigned can appreciate the anguish the plaintiff is experiencing resulting from his daughter's conduct.  Unfortunately, children all too often make bad decisions, and sometimes those decisions can be life-altering, which is the consequence in this case.  And, as the father of a daughter, the undersigned, if sympathy could rule the day, would have been tempted to provide at least some of the relief requested.  However, emotions cannot play a role in the judicial decision-making process.  Rather, adherence to law must control.  That command—not the thousands of written, electronic, and telephonic communications directed to the undersigned, some of which can reasonably be construed as threats if the Court ruled in the plaintiff's favor, nor compassion for the plaintiff, his daughter, or his grandson—caused the Court to rule as it has.  While these rulings provide no sense of gratification to the undersigned, the analysis of the current state of the law precludes reaching any other conclusions on the issues raised in this case.

Accordingly, for the foregoing reasons, the Court grants the plaintiff's renewed motion for expedited relief.  The Court also grants in part and denies in part the defendants' motion to dismiss.  Specifically, the Court grants the defendants' motion to dismiss to the extent that it seeks (1) entry of summary judgment for the defendants on Counts One to Eight for the Complaint pursuant to Rule 56 and (2) dismissal of Count Nine of the Complaint pursuant to Rule 12(b)(1), and denies the motion in all other respects.

**SO ORDERED** this 9th day of December, 2019.

REGGIE B. WALTON
United States District Judge

27